**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DBRAND INC., a Canadian Corporation, | |
| *Plaintiff,* | CASE NO. 24-cv-1919 |
| v. | |
| CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, and WESTSIDE LAB, INC., a California corporation, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND COPYRIGHT**
**MANAGEMENT INFORMATION VIOLATIONS**

Plaintiff dbrand inc. ("dbrand") brings the following claims against Defendants Casetagram Limited *dba* Casetify ("Casetagram") and Westside Lab, Inc. ("Westside") (collectively, "Casetify") for copyright infringement and copyright management information violations.

**SUMMARY OF THE ACTION**

1.      dbrand is a Canadian company that designs, manufactures, and sells premium cases, screen protectors, and other accessories for phones, tablets, laptops, and more.  dbrand makes all of its original designs at its facilities in Toronto.

2.      dbrand also partners with prominent influencers and other reputable brands to market its premium products.  Since 2017, dbrand has partnered with the famous YouTube content creator Zack Nelson, who posts videos under the username JerryRigEverything ("JRE"), and who currently has 8.5 million subscribers on YouTube.  *See* https://youtu.be/IS0SItAzEXg?t=603.

1

3.     In one early dbrand-sponsored video (*see* https://youtu.be/qEWO68Tegf8?t=344), JRE demonstrated how to make the back panel of some phones transparent by exposing the clear glass exterior ("Clear Mods").  This video and others published by JRE covering similar subject matter have received tens of millions of views on YouTube.

4.     Many viewers have made particular mention of how much they like the aesthetic of the Clear Mods:



5.     However, as noted by JRE and many of his viewers, creating a Clear Mod voids the phone's warranty, risks damaging the phone's internals, and makes the phone's rear glass panel susceptible to shattering into dangerous shards.

6.     Following the success of JRE's Clear Mod videos, dbrand began a partnership with JRE to design and market a new line of products for phones and other electronics that achieves the desirable aesthetic of Clear Mods in a consumer-ready format through printed vinyl decals applied directly to devices or to customizable impact-resistant cases ("Original Teardowns"):

    

7.      dbrand's Original Teardowns comprise hundreds of different models for phones and other electronics from various manufacturers and were an immediate commercial success. In less than 15 hours after launch, dbrand sold over 14,000 Original Teardowns—approximately one purchase every four seconds.

8.      dbrand's designs in the Original Teardowns are inherently protected by copyright.

9.      After the Original Teardowns had already achieved substantial fame and recognition, Defendant Casetify—a Chinese-based manufacturer of phone cases and related products—began to directly copy dbrand's most popular Original Teardowns to create its own line of cases for phones and other electronics called "Inside Out" (the "Infringing Teardowns"):

    

10.     Casetify's Infringing Teardowns incorporate direct copies of dbrand's copyright-protected works. Every Infringing Teardown begins as an unauthorized copy of one of the Original Teardowns. Casetify then digitally removes and adds some elements (including other copyright-protected elements from other Original Teardowns) in an attempt to hide its infringements.

11.     Evidence of Casetify's blatant copyright theft is apparent upon inspection of the Infringing Teardowns.  Indeed, large swathes of the Original Teardowns are still present, unedited, in the Infringing Teardowns.

12.     Casetify also left various symbols, messages, logos, and trademarks in the Infringing Teardowns that dbrand added to the Original Teardowns for the dual purposes of increasing engagement with consumers and detecting infringers (collectively, the "Easter Eggs"). A few examples of dbrand's Easter Eggs found on the Infringing Teardowns are shown below, alongside corresponding examples from dbrand's Original Teardowns:

 

 

 

 

13. Although Casetify *unintentionally* left a trail of infringement by failing to identify and eliminate all of dbrand's Easter Eggs, it *intentionally* tried to cover its tracks by removing and altering dbrand's copyright management information ("CMI") from the Original Teardowns and by adding its own false CMI to the Infringing Teardowns, including the QR codes shown below:

 

**dbrand's QR Code**            **Casetify's QR Code**

14. Casetify sells the Infringing Teardowns across the United States through its own website and through third-party retailers like Amazon and Best Buy.

15. Casetify's egregious and intentional misconduct constitutes copyright infringement and CMI violations pursuant to the United States Copyright Act. Among other relief, dbrand seeks a permanent injunction preventing Casetify from further infringing dbrand's copyrighted works, as well as actual and statutory damages.

## PARTIES

16. Plaintiff dbrand inc. is a Canadian corporation with a principal business address at 500 King Street West, 3rd Floor, Toronto, ON M5V 1L9, Canada.

17. Defendant Casetagram Limited *dba* Casetify is a Hong Kong limited company with a principal business address at 18/F NEO 123 Hoi Bun Rd, Kwun Tong, Hong Kong. Casetagram advertises that it can be contacted "anytime" by email at hello@casetify.com, that "[y]ou can also contact us on Instagram, Facebook or Twitter," and further provides a contact form on its website. *See* https://www.casetify.com/faq/contact. Casetagram's executive team can also be contacted directly at legal.comsec@casetagram.com, owner@casetagram.com, wes@casetagram.com, ron@casetagram.com, mike@casetagram.com, and sharon.lam@casetagram.com. Casetagram can also be contacted by phone at 1 (908) 295-5831 and at 00852-34640488.

18. Defendant Westside Lab, Inc. is a California corporation with a registered business address at 3705 W Pico Blvd #2637, Los Angeles, CA 90019 and a 1505 registered corporate agent—Northwest Registered Agent, Inc.—at 2108 N Street, Ste N, Sacramento, CA 95816.

19. On information and belief, Defendants Casetagram and Westside are, for the purpose of the misconduct alleged herein, alter egos of each other and effectively a single entity.

6

20.     The only two executives identified in Westside's state business filings are Mike Jia (CEO, Secretary, and Director) and Sharon Lam (CFO).

21.     On information and belief, Mike Jia is the Head of Growth at Casetagram and is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/mikejia4/

22.     On information and belief, Sharon Lam is the CFO at Casetagram and is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/sharonwylam/

23.     Wesley Ng—co-founder and CEO of Casetagram—admitted in another infringement lawsuit filed against Casetagram in this District that in addition to Casetagram, he also owns Westside.  *Uncommon LLC v. Casetagram Limited*, No. 1:16-CV-04691, Dkt. No. 16 (N.D. Ill., June 23, 2016) (the "Ng Decl.") ¶ 5.

24.     On information and belief, Wesley Ng is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/wesleyng/

25.     On information and belief, Ronald Yeung—the co-founder and Managing Director of Casetify—is also physically based out of Casetify's corporate office in Hong Kong:



https://www.linkedin.com/in/rcyyeung/

26.     On information and belief, Westside has no actual employees of its own.

27.     On information and belief, any purported employees of Westside are, in reality, employees or contractors of Casetagram.

28.     On information and belief, substantially all full-time employees of Casetagram, including all corporate decision-makers and those who exercise control over Westside, are based in Hong Kong.  As admitted by Wesley Ng, "All decisions about [management responsibilities for

Casetify and . . . authority or control over Casetify's agreements with other companies] are made by Casetify personnel in Hong Kong." Ng Decl. ¶ 7.

29.     On information and belief, Casetagram does not have employees in the U.S. *See* Ng. Decl. ¶ 3 ("Casetify does not have any employees in the U.S., though it has independent contractors who reside in California and provide business development and marketing services.").

30.     On information and belief, executives for Casetagram including Wesley Ng, Ronald Yeung, Mike Jia, and Sharon Lam exercise exclusive and total control over Westside, including over all of Westside's hiring decisions, substantive business decisions, and over the design, manufacture, importation, marketing, distribution, and sale of all products, including the Infringing Teardowns.

31.     On its website, social media, and elsewhere Casetagram lists a Los Angeles office:



https://www.casetify.com/about-us



https://www.linkedin.com/company/casetify/



https://www.influencermarketingsociety.com/jobs/238236099

32.     On information and belief, Casetagram is not registered to do business in the state of California or the city of Los Angeles, and this office advertised by Casetagram refers, in fact, to Westside's registered business address.

33.     On information and belief, the Los Angeles "headquarters" advertised by Casetify—which Wesley Ng asserts is an international company worth nearly one billion dollars—comprises a mail-only address and vacant office space on the outskirts of Los Angeles:




https://www.virtualdomicile.com/

34.     On information and belief, Casetagram imports products into the United States, including the Infringing Teardowns, exclusively through Westside.

35.     On information and belief, Westside imports, markets, sells, and distributes exclusively Casetagram products.

10

36.     On information and belief, in the past year Casetagram has imported at least 10 shipments of phone cases and related products into the United States, totaling nearly 150,000 pounds of freight and including the Infringing Teardowns, through Westside.  *See* Exhibit I.  On information and belief, Casetify's cases (including packaging) weigh approximately 0.2 pounds.

37.     In user manuals for Casetagram's products, Westside is identified as the "Responsible Party" and lists a Casetagram email address:

> Contact information for the US:
> Responsible Party:
> Company name: Westside Lab, Inc
> Address: 3705 W Pico Blvd #2637Los Angeles, CA 90019
> Tel:  415-735-5423
> E-mail: Mei@casetagram.com

http://tinyurl.com/ctfymanual

38.     Casetagram is the owner of the registered trademark CASETIFY.  *See* Reg. No. 4,707,090.  On Amazon.com and elsewhere, Westside operates under the CASETIFY mark, including to sell products in the United States, and including the Infringing Teardowns:



https://www.amazon.com/sp?ie=UTF8&seller=A38ND1U5XKP6P

11

39.     On information and belief, Westside is the only seller permitted by Casetagram to sell products bearing the CASETIFY mark on Amazon.

40.     On information and belief, the majority of Casetagram's sales in the United States occur through its Amazon listings operated by Westside.

41.     On information and belief, Casetagram and Westside commingle their funds and other assets—including for the Infringing Teardowns—and including their physical products, intellectual property, business property, supply chain, sales revenue, and more.

42.     On information and belief, Westside is a sham corporation, is Casetagram's corporate alter-ego, and was created by Casetagram and its executives, including Wesley Ng, Ronald Yeung, Mike Jia, and Sharon Lam in a fraudulent attempt to avoid direct liability for illegal misconduct in the United States, including the intentional and egregious infringements and CMI violations alleged herein.

### JURISDICTION AND VENUE

43.     Pursuant to 28 U.S.C. §§ 1331 and 1338, this Court has original jurisdiction over dbrand's claims for copyright infringement and copyright management information violations, which arise under of the Copyright Act of the United States, 17 U.S.C. § 101, *et seq*.

44.     Venue in a copyright case is governed by 28 U.S.C. § 1400(a), under which a claim "may be instituted in the district in which the defendant or his agent resides or may be found."  For purposes of the statute, "[a] defendant 'may be found' in any district in which he is subject to personal jurisdiction."  *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd*., 767 F. Supp. 181, 185 (N.D. Ill. 1991).  "Thus, if a court has personal jurisdiction over the defendants in a copyright infringement action, venue in that court's district is proper."  *Id.*

12

45.     In a copyright case, this Court has personal jurisdiction over defendants who market infringing products to a nationwide audience on their own website and stand "ready and willing to do business with Illinois residents." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010).  Similarly, this Court has personal jurisdiction over copyright defendants who market or sell infringing products through third-party online retailers to "residents of all fifty states, including Illinois." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015).  The same applies for infringing products sold through Illinois brick-and-mortar stores. *Id.* at 908.  This is true regardless of whether a defendant sends infringing products directly into Illinois, or merely "move[s] them along a stream of commerce destined for retail sale throughout the United States." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983).  This is also true even if a defendant's infringing "sales in Illinois are very minimal in comparison to overall sales," or even if a defendant merely advertised infringing products in Illinois and "no [actual] sale was made to an Illinois resident." *Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14-CV-134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015); *Monster Energy*, 136 F. Supp. 3d at 906.  Indeed, "the commission of a single tortious act in Illinois brings a defendant within the scope of [personal jurisdiction] even if the defendant has no other contact with Illinois and has never been to Illinois." *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus.*, Ltd., 767 F. Supp. 181, 184 (N.D. Ill. 1991).

46.     As described in more detail below, this Court has personal jurisdiction over both Casetagram and Westside at least because they market, sell, and distribute a substantial number of products to Illinois consumers—including a substantial number of the Infringing Teardowns—through their interactive website, through third-party online retailers, and through hundreds of Illinois brick-and-mortar stores.

13

47.     As used herein, "Casetify" refers to both Casetagram and Westside.

48.     On information and belief, some of Casetify's products, including some of the Infringing Teardowns, are marketed and sold by Casetagram on its interactive website (www.casetify.com) directly to consumers, including in Illinois.

49.     On information and belief, some of Casetify's products, including some of the Infringing Teardowns, are marketed and sold by Westside through third-party online retailers like Amazon.com, including in Illinois.

50.     On information and belief, some of Casetify's products, including some of the Infringing Teardowns, are marketed and sold by Westside through brick-and-mortar retailers in Illinois, including at 45+ Illinois Best Buy stores and 235+ Illinois Verizon stores:



https://www.bestbuy.com/

51.     Indeed, when Casetify first started selling its products through brick-and-mortar stores in the United States in 2017, it selected a location "in the heart of Chicago." *See* journal.casetify.com/online-to-offline-casetify-pops-up-in-at-t-flagship-stores-3079cee870b7.

14

52.     Casetify also sells products specifically targeting Illinois consumers.  For example, Casetify has one product line called "Heart Map Chicago," which features a map of Chicago, one called "Chicago, Illinois" which features the Chicago skyline, and another called "Pangram Chicago" which features a recreation of a plane ticket from the O'Hare Airport—and each of which comprises dozens of variations for different phone models:

  

https://www.casetify.com

53.     Casetify also has product lines for famous Illinois sports teams like the Chicago Bulls, the Chicago Blackhawks, and the Chicago White Sox—comprising hundreds of different models of phone cases, headphone cases, wireless chargers, and more:



https://www.casetify.com

54.     On information and belief, products sold by Casetagram on its interactive website, including the Infringing Teardowns, are shipped directly to consumers, including in Illinois.

55.     On information and belief, some products sold by Westside through online third-party retailers are shipped by Westside directly to consumers, including in Illinois, while all others are first distributed by Westside directly to third-party warehouses, including in Illinois.

56.     On information and belief, all products sold by Westside through third-party brick-and-mortar stores, including in Illinois, are first distributed directly to third-party businesses, including in Illinois.

57.     On information and belief, Westside ships products, including the Infringing Teardowns, from at least four warehouses across the United States located at 120 E 8th Street, Los Angeles, CA 90014; 9860 40th Ave S, Unit B, Seattle, WA 98118; 1541 S 92nd Pl, Ste A, Seattle, WA 98108; and 2a Corn Road, Dayton, NJ 08810, including directly to Illinois consumers.

58.     On information and belief, all Casetify products, including all of the Infringing Teardowns, were and/or currently are advertised and marketed to Illinois consumers by Casetagram and Westside through their interactive website, through social media, through online retailers like Amazon, and through brick-and-mortar stores like Best Buy.

59.     On information and belief, all Casetify products sold by Casetagram and Westside, including all of the Infringing Teardowns, were and/or currently are available for purchase in Illinois through their interactive website, third-party online retailers, and brick-and-mortar stores.

60.     On information and belief, Casetagram and Westside have each marketed and sold a substantial number of products, including a substantial number of Infringing Teardowns, to

16

consumers in Illinois through their interactive website, third-party online retailers, and brick-and-mortar stores.

61.     For the foregoing reasons, both Casetagram and Westside have substantial contacts in Illinois, have purposefully availed themselves to the benefits and protections of this forum, and are subject to personal jurisdiction in Illinois.

## BACKGROUND

62.     dbrand is an innovative company located in Toronto, Canada that creates premium skins, cases, screen protectors, and other accessories for phones, tablets, laptops, and more.  dbrand makes all of its original designs at its proprietary facilities in Toronto.  dbrand's products are known for their unique aesthetics, quality, and durability.

63.     Casetify is a Chinese-based manufacturer of phone cases and related products. Casetify manufactures its products in China and imports them into the United States for sale across the country through its own website and through third-party retailers.

64.     When asked about Casetify's valuation in 2021, Casetify CEO Wesley Ng stated that it is "close to a billion" dollars.  *See* https://www.cnbc.com/2022/11/28/ceo-of-casetify-shares-his-no-1-super-underrated-business-tip.html.  He also stated that Casetify was "on track to bring in $300 million in revenue" in that year and that it had already sold "more than 15 million phone cases worldwide."  *Id.*  In the three years since, Casetify has grown even larger.  *See* https://www.modernretail.co/operations/casetify-ramps-up-global-expansion-launches-new-retail-concept-in-osaka/.

65.     Despite Casetify's apparent deep pockets, it consistently seeks to cut corners by stealing the protected designs of others.  Indeed, Casetify is a serial intellectual property thief that

has had several lawsuits filed against it in the United States and elsewhere around the world for patent and copyright infringement. Recently, for example, Casetify was permanently enjoined from selling one of its products accused of infringing the design of a small company based in Georgia. *See Case-Mate Inc. v. Casetagram Limited*, No. 1:17-CV-01074-MHC, Dkt No. 25 (N.D. Ga. Sep. 6, 2017).

66. Starting in 2019, dbrand created a new product line featuring the Original Teardowns. In addition to dbrand's own advertising, the Original Teardowns were promoted through a collaboration with the famous YouTube content creator JRE.

67. To create the Original Teardowns, dbrand starts by removing the back panel of various electronic devices, deconstructing the assembled internal components, and taking photographs of the individual layers. dbrand's photographers make significant creative choices concerning placement, orientation, background, exposure, and more to take these photographs. Next, dbrand's team of graphic designers make thousands of creative choices concerning every aspect of the resulting photographs, including to digitally enhance them for color, hue, reflectiveness, alignment, shadowing, brightness, contrast, and more. dbrand's graphic designers further create new digital artwork from scratch to cover certain components, including to recreate visually appealing elements that are hidden by comparably unappealing elements in the original photographs and to repair other elements damaged by the deconstruction process. dbrand's graphic designers also add various creative Easter Eggs to the works. dbrand's graphic designers ultimately modify every surface of the photographs, such that by the end of the process, no original surface—indeed not a single pixel—from the original photograph remains.

68. The result is a final image that is an original, creative, and visually appealing work

18

of two-dimensional art (the "Original Teardown Image"):



69.     Creating an Original Teardown Image requires many dozens, sometimes hundreds, of hours of work by dbrand photographers, graphic designers, and other creators.  dbrand has created Original Teardown Images for over 100 unique devices, representing tens of thousands of hours of work by dbrand's employees.

70.     An Original Teardown is completed by printing the Original Teardown Image and permanently affixing the Original Teardown Image to an adhesive-backed decal through a printing and lamination process, which can then be applied directly to a device or impact-resistant case. "Original Teardowns" and "Original Teardown Images" are collectively referred to herein as "Original Teardown Artworks."  Original Teardown Images are also used to promote the Original Teardowns on dbrand's website, social media, and elsewhere:



https://dbrand.com/shop/special-edition/teardown

71.     Every Original Teardown Artwork also contains multiple Easter Eggs.  dbrand adds these Easter Eggs because consumers use them to identify dbrand's products and confirm that they are genuine.  The dbrand Easter Eggs also increase engagement with consumers who feel a sense of loyalty and affiliation to dbrand and the YouTube content creator JRE who promotes the Original Teardowns.  The dbrand Easter Eggs were also created as a digital fingerprint to detect infringers of dbrand's copyright-protected Original Teardown Artworks.

72.     Examples of the dbrand Easter Eggs include the following (*see also* Exhibit A):





73.    The "db" and corresponding "db" logo Easter Eggs refer directly to dbrand.  The db logo is dbrand's trademark-protected logo that it has used in interstate commerce in the United States and around the world for over a decade.  The abbreviation "db" is also used by dbrand, including as a URL for its website (www.db.io) and in other advertising.  dbrand has heavily promoted these marks and consumers recognize them as source-identifiers for dbrand.  These marks identify dbrand as the owner of the designs in the Original Teardown Artworks.

74.    The dbrand QR code Easter Eggs are digital signatures that embed information concerning the source of the Original Teardown Artworks.  Consumers scan the QR codes using a modern cell phone or similar device and are immediately redirected to the product page for the Original Teardowns on the dbrand website and other promotional materials for the Original Teardowns.  The general consuming public uses QR codes as a source identifier for a broad range of goods and services, including food products, consumer goods, medical devices, industrial equipment, pharmaceuticals, and more.  Consumers use dbrand's QR codes to identify dbrand as the owner of the designs in the Original Teardown Artworks.

75.    The "2011mAh/11.11Wh" and "11 - 11 - 11" Easter Eggs each refer to the founding date of dbrand (November 11, 2011).  This date constitutes a significant aspect of dbrand's advertising and is recognized by consumers as a source identifier for dbrand.  Consumers use these

Easter Eggs to identify dbrand as the owner of the designs in the Original Teardown Artworks.

76.     The "JRE," "SUBSCRIBE," and "Glass is Glass and Glass Breaks" Easter Eggs refer to the famous YouTube content creator Zack Nelson and his affiliation with dbrand.  Mr. Nelson uploads his videos under the username JerryRigEverything and also uses the abbreviation "JRE."  In every video, JRE encourages his viewers to "subscribe" to his channel.  JRE has also coined the phrase "Glass is Glass and Glass Breaks" in his videos, including to promote dbrand's products and including the Original Teardowns.  JRE currently has 8.5 million subscribers and dbrand's collaboration with JRE is its most successful form of advertising to date.  Consumers recognize and look for these JRE identifiers and use them to identify dbrand's original products.

77.     The "All Seeing Eye" Easter Eggs are incorporated across many of dbrand's products, including the Original Teardowns.  dbrand uses this mark on its products, packaging, website, social media, and other marketing materials, including for the Original Teardown Artworks.  Consumers recognize that the "All Seeing Eye" symbol refers to dbrand and its products, including the Original Teardown Artworks.

78.     The "R0807" (i.e. "ROBOT") Easter Eggs refer to dbrand's "robot" persona that constitutes a significant aspect of dbrand's advertising.  For example, dbrand uses the Twitter/X handle "@robot," uses the email address robot@dbrand.com for its customer support, uses the moniker "robot" to refer to all of its employees, and further uses the term across its advertising. The R0807 mark is recognized by consumers as a source identifier for dbrand and consumers use the R0807 mark to identify dbrand as the owner of the designs in the Original Teardown Artworks.

79.     Every Original Teardown Artwork includes multiple of the above Easter Eggs, including at least the dbrand QR Codes.  *See* Exhibit A.

80.     The Easter Eggs present in the Infringing Teardowns evidence that Casetify uses unauthorized copies of the Original Teardown Images to make the Infringing Teardowns.

81.     dbrand has registered its copyrights in each of its Original Teardown Images in Canada with the Canadian Intellectual Property Office (collectively, the "Canadian Teardown Copyrights"). *See* Exhibit B.

82.     Every Original Teardown Artwork is a creative piece of copyright-protected art. Indeed, every portion of every surface of every Original Teardown Image was created by dbrand's experienced team of graphic designers.

83.     On information and belief, every phone case, tablet case, and computer case in Casetify's Inside Out line incorporates direct, unauthorized copies of dbrand's Original Teardown Artworks and is included in the definition of Infringing Teardowns. *See* Exhibits G and H.

84.     On information and belief, Casetify creates the Infringing Teardowns by first downloading and/or creating "screenshots" of original, unedited copies of the Original Teardown Images from the dbrand website. Casetify's copying and use of the Original Teardown Images to create the Infringing Teardowns is unauthorized and therefore infringing.

85.     On information and belief, Casetify next digitally adds components to, and/or removes components from, its infringing copies of the Original Teardown Images to create the final Infringing Teardowns. Each unauthorized copy of the Original Teardown Images and each copy of the Infringing Teardowns constitutes a separate instance of copyright infringement.

86.     Casetify's infringement is evident upon inspection of the Infringing Teardowns, which reveals that many of dbrand's Easter Eggs are found on the infringing copies:

87.    In addition to unintentionally copying many of dbrand's Easter Eggs, Casetify also left other evidence of its blatant copyright theft in the Infringing Teardowns.  In one instance, for example, the unauthorized copy of the Original Teardown Image used by Casetify incorporates camera lens graphics that were created by dbrand's team of artists.  These original graphics are found *only* in dbrand's Original Teardown Image.  The fact that Casetify's Infringing Teardown incorporates a feature that is ***only present*** in dbrand's Original Teardown Image further proves that Casetify incorporates direct, unauthorized copies of dbrand's Original Teardown Images to create the Infringing Teardowns:

 

88.    In addition to directly copying the Original Teardown Images from the dbrand website and using them to create the Infringing Teardowns, Casetify uses digital copies of the Infringing Teardowns on its website, social media, and in other advertising to promote its products (the "Infringing Teardown Images").  The Infringing Teardown Images and the Infringing Teardowns are collectively referred to herein as the "Infringing Teardown Copies."

25

89.     Casetify's Infringing Teardown Copies identified by SKUs 16003471, 16004743, 16005988, 16004742, 16004399, 16004400, 16004724, 16004725, 16004726, 16004727, 16004732, 16004733, 16004734, 16004735, 16004740, 16004741, 16000206, 16003438, 16003460, 16005967, 16003536, 16003537, 16003538, 16003539, 16003767, 16003768, 16003769, 16003770, 16004397, 16004398, 16001566, 16001655, 16001659, 16001663, 16001667, 16002699, 16002700, 16002701, 16002702, 16003262, 16003282, 16000086, 16004749, 16004750, 16004751, 16004760, 16004761, 16004762, 16004763, 16004772, 16004773, 16004774, 16004775, 16004812, 16004813, 16004814, 16004815, 16005140, 16005141, 16005142, 16005143, 16005144, 16005145, 16005964, 16005970, 16005973, 16005976, 16005979, 16005982, 16005985, 16005986, 16005987, 16000092, 16005989, 16005992, 16005995, 16005996, 16005999, 16006002, 16006005, 16006008, 16006152, 16006153, 16005961, and 16005924 incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 1; Casetify's Infringing Teardown Copies identified by SKUs 16004965 and 16006201 incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 17; Casetify's Infringing Teardown Copies identified by SKUs 16006209 and 16004967 incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 18; Casetify's Infringing Teardown Copies identified by SKUs 16005659, 16005661, and 16005660 incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 15; Casetify's Infringing Teardown Copies identified by SKUs 16004158, 16005646, 16005647, 16004159, 280200, 280300, 284000, 2812400, 16001831, 16004535, and 16005427 incorporate direct copies of at least dbrand's Original Teardown Image shown in Exhibit A at p. 13; Casetify's Infringing Teardown Copies identified by SKUs 16005645, 16002092, 16005425,

16005643, 16005644, 16001237, and 16005429 incorporate direct copies of at least dbrand's Original Teardown Image shown in Exhibit A at p. 30; Casetify's Infringing Teardown Copies identified by SKUs 16004959, 16004960, 16005838, and 16005839 incorporate direct copies of at least dbrand's Original Teardown Image shown in Exhibit A at p. 28.

90. In addition to infringing dbrand's copyrights in the Original Teardown Artworks by copying, selling, displaying, distributing, and advertising the Infringing Teardown Copies and unauthorized copies of the Original Teardown Images, Casetify removes, alters, and falsifies copyright management information ("CMI") used in connection with these works.

91. As defined by statute, "'copyright management information' means, [*inter alia*], any of the following information conveyed in connection with copies . . . of a work . . . or displays of a work, including in digital form":

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> (7) Identifying numbers or symbols referring to such information or links to such information.

17 U.S.C. § 1202(c).

92. "[A] complaining party may elect to recover an award of statutory damages for **each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. 1203(c)(3)(B). "[T]he removal of copyright management information and the addition of false copyright management information [are] two separate violative acts." *Notte, v. New Sushi LLC*, No. 22-CV-6394, 2024 WL 706783, at *4 (D.N.J. Feb. 20, 2024). "Moreover, each time the work is wrongfully distributed constitutes its own discrete violative act, *i.e.*, wrongfully

distributing a work ten times amounts to ten violative acts."  *Id.* at *3; *see also Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016) ("if the Defendants shared the same image *multiple times,* that would be multiple acts in violation of the DMCA") (emphasis in original).

93.     As alleged herein, many of the dbrand Easter Eggs constitute CMI, including the references to dbrand's founding date and the use of dbrand's ROBOT persona, because they are "identifying information about the copyright owner of the work."  The "db" mark and corresponding "db" logo are also CMI, because they are trademark-protected marks used in commerce as shorthand for dbrand.  The dbrand QR codes (i.e. "symbols referring to [identifying] information or links to [identifying] information") are used by consumers to identify the source of dbrand's products and are also CMI.  Indeed, the general consuming public uses QR codes to identify products in nearly every class of goods.

94.     Additional CMI for the Original Teardown Images on dbrand's webpages includes:

- The titles of the works (i.e. "Teardowns");

- The file names for the Original Teardown Images (*e.g.* "teardown-gloss_0.jpg");

- dbrand's name and logos used on the webpages for the Original Teardown Images;

- dbrand's URLs for the webpages for the Original Teardown Images;

- dbrand's use of the copyright registration symbol "©" on the webpages for the Original Teardown Images;

*See* Exhibits C-E.  dbrand's CMI is collectively referred to herein as the "Original CMI."

95.     For every Infringing Teardown Copy, Casetify removed or altered dbrand's Original CMI.  Casetify removed most of dbrand's Easter Eggs, many of which serve as source-identifiers for dbrand and its products.  For all of the Easter Eggs that Casetify failed to remove,

28

the Easter Eggs were substantially altered through the poor image quality of the Infringing Teardown Copies, such that they are barely recognizable.

96.     Casetify similarly altered dbrand's trademark-protected logo, which directly identifies dbrand:



97.     Casetify also removed dbrand's QR codes, which are digital signatures used to identify dbrand's products, including the Original Teardown Artworks:



98.     For the unauthorized copies of the Original Teardown Images that it stole from dbrand's website, Casetify also removed dbrand's name, logos, file names, titles, URLs, and use of the copyright registration symbol "©" that dbrand uses in connection with the original works.

99.     In addition to removing and altering dbrand's Original CMI, Casetify also added

false CMI used in connection with its unauthorized copies of the Original Teardown Artworks ("False CMI"). For example, Casetify replaced dbrand's QR codes with QR codes for Casetify:



| dbrand's QR Code | Casetify's QR Code |

100. Indeed, on every Infringing Teardown Copy, Casetify includes its full name, and in most instances also includes an abbreviated form of its name, in multiple locations. Every Infringing Teardown Copy also contains one of two QR codes for Casetify, which direct users to either https://www.qrfy.com/IT2a43524dQR or https://www.qrfy/com/Fpy-pZDpiJ. These links are currently deactivated, but before dbrand notified Casetify that it had uncovered Casetify's copyright theft, these links redirected to Casetify's website.



*See also* Exhibit F.

101.     On information and belief, every Infringing Teardown comes from Casetify with a verification label physically connected to it.  As shown below, one side of this verification label includes the text: "CASETIFY - AUTHENTIC - VERIFIED."  The reverse side of the verification label includes a QR code (which redirects to Casetify's website) and encourages consumers to "SCAN TO VERIFY" that the Infringing Teardown is an authentic "CASETIFY" product:



102.     For the Infringing Teardown Images that Casetify displays on its website, social media, and other promotional materials, Casetify's False CMI also includes Casetify's name, logos, file names, titles (i.e. "Inside Out"), URLs, and use of the copyright registration symbol "©" that Casetify uses in connection with the Infringing Teardown Images.  *See* Exhibits G-H.

103.     It was expensive and time consuming for dbrand to create the Original Teardown Artworks—comprising tens of thousands of hours of labor from dbrand's professional photographers, artists, and other creators.

104.     On information and belief, executives for Casetify, including executives for both Casetagram and Westside, and including Wesley Ng, Ronald Yeung, Mike Jia, and Sharon Lam (collectively the "Casetify Executive Infringers"), knowingly sought to bypass this expense while still deriving the financial benefits of the Original Teardown Artworks by willfully infringing dbrand's copyrights in the Original Teardown Artworks.

105.    On information and belief, the Casetify Executive Infringers had full knowledge of Casetify's infringements of dbrand's copyrights in the Original Teardown Artworks.

106.    On information and belief, the Casetify Executive Infringers purposefully directed their employees and/or other agents under their control to steal unauthorized copies of the Original Teardown Images from the dbrand website and to use these unauthorized copies to create the Infringing Teardown Copies.

107.    On information and belief, the Casetify Executive Infringers knew that Casetify could not get away with such a massive scale of infringement and other misconduct if dbrand's CMI was used in connection with the Infringing Teardown Copies, and so the Casetify Executive Infringers purposefully and intentionally directed their employees and/or other agents under their control to remove, alter, and falsify the CMI associated with the Infringing Teardown Copies with the fraudulent intent to conceal Casetify's infringements from dbrand, Casetify's own customers, and other third parties.

108.    On information and belief, the Casetify Executive Infringers knowingly and intentionally directed their employees and/or other agents under their control to lower the image quality of the Infringing Teardown Copies to make it more difficult for dbrand, Casetify's own customers, and other third parties to discover that every Infringing Teardown Copy incorporates an identical, unauthorized copy of an Original Teardown Image, and to further conceal any remaining Original CMI that Casetify failed to remove from the Infringing Teardown Copies.

109.    dbrand has been harmed by Casetify's infringements and other misconduct as alleged herein in the form of lost sales, lost market share, decreased goodwill, and a decreased ability to distinguish itself from Casetify and other competitors. Casetify, on the other hand, has

been unjustly enriched through infringing sales and the promotion and legitimization of its business associated with its use of the Infringing Teardown Copies.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement**
**17 U.S.C. § 501(a)**

*Against Defendants Casetagram and Westside*

110. dbrand incorporates preceding paragraphs 1-15, 19-42, 47-51, 54-60, 62-90, and 93-109 as if fully set forth herein.

111. dbrand owns all copyrights in the Original Teardown Artworks.

112. The creators of the Original Teardown Artworks are all full-time employees of dbrand, are all Canadian citizens, and were all living and working in Canada when the Original Teardown Artworks were created. The Original Teardown Artworks were first published in Canada between December 2019 and June 2023. For these reasons, pursuant to 17 U.S.C. § 104(b), the Original Teardown Artworks are exempt from the registration requirement of § 411(a). *See Rudnicki v. WPNA 1490 AM All. Commc'ns, Inc.*, No. 04-C 5719, 2006 WL 59368, at *1 (N.D. Ill. Jan. 4, 2006) ("Generally, registration is a prerequisite for an infringement action, but section 411(a) specifically exempts foreign works from this requirement.")

113. dbrand's copyrights in the Original Teardown Artworks are registered as artistic works in Canada under the Canadian Teardown Copyrights. *See* Exhibit B.

114. The Original Teardown Artworks are creative works inherently entitled to copyright protection. dbrand's photographers and designers make many creative choices to create the Original Teardown Artworks.

115. Casetify's Infringing Teardown Copies and unauthorized copies of the Original

33

Teardown Images incorporate direct, unauthorized copies of the Original Teardown Artworks.

116. On information and belief, Casetify downloaded and/or created unauthorized screenshots of the Original Teardown Images from dbrand's website to create the unauthorized Infringing Teardown Copies.

117. Casetify's unauthorized use of the Original Teardown Images ultimately gave rise to the copyright infringement alleged herein, as well as the harm suffered by dbrand as a consequence of Casetify's copyright infringement.

118. On information and belief, Casetify uses unauthorized copies of the Original Teardown Images to create the Infringing Teardown Copies.

119. On information and belief, each Infringing Teardown Copy incorporates an unauthorized copy of an Original Teardown Image that was directly copied by Casetify from dbrand's website.

120. On information and belief, an unauthorized copy of an Original Teardown Image forms the basis of every Infringing Teardown Copy.

121. On information and belief, Casetify digitally added components to, or removed components from, its unauthorized copies of the Original Teardown Images to create the Infringing Teardown Copies. Each copy of Casetify's Infringing Teardown Copies—including every copy of the Infringing Teardown Images and every copy of the Infringing Teardowns—constitutes a separate instance of copyright infringement.

122. Casetify's infringements violate dbrand's exclusive copyrights in the Original Teardown Artwork, including its exclusive rights to produce, reproduce, distribute, sell, and publicly display its works.

123. On information and belief, Casetify's infringement is undertaken willfully and with the intent to financially benefit from, and with full knowledge of, dbrand's copyright-protected works—which Casetify steals directly from dbrand's website—including by the Casetify Executive Infringers.

124. dbrand is entitled to its actual damages and disgorgement of Casetify's profits attributable to the infringement in an amount to be proved at trial, together with all other relief allowed under the Copyright Act.

125. Casetify's infringement has caused and continues to cause irreparable harm to dbrand, for which it has no adequate remedy at law. Unless this Court restrains Casetify from infringing dbrand's copyrighted works, the harm will continue to occur in the future. Accordingly, dbrand is entitled to a preliminary and permanent injunction.

## SECOND CLAIM FOR RELIEF
### Removal and Alteration of Copyright Management Information
### 17 U.S.C. § 1202(b)

### *Against Defendants Casetagram and Westside*

126. dbrand incorporates preceding paragraphs 1-15, 19-42, 47-51, 54-60, 62-125 as if fully set forth herein.

127. dbrand owns all copyrights in the Original Teardown Artworks.

128. Casetify has removed and altered, and continues to remove and alter, dbrand's CMI used on and in connection with each of its unauthorized copies of the Original Teardown Artworks, including the Infringing Teardown Copies and the unauthorized copies of the Original Teardown Images.

129.    Every copy of the Infringing Teardown Copies and every unauthorized copy of the Original Teardown Images constitutes a separate violation of 17 U.S.C. § 1202(b) for removal or alteration of CMI.

130.    Casetify has also distributed, and continues to distribute, unauthorized copies of the Original Teardown Artworks after removing and altering dbrand's CMI used on and in connection with each of the unauthorized copies of the Original Teardown Artworks.

131.    On information and belief, the Casetify Executive Infringers knowingly engage in this misconduct with the intent to induce, enable, facilitate, and conceal Casetify's infringements of the Original Teardown Artworks.

132.    Casetify's unlawful acts have caused and continue to cause irreparable harm to dbrand for which it has no adequate remedy at law.  Unless this Court restrains Casetify from removing and altering CMI used on and in connection with the Original Teardown Artworks, the harm will continue to occur in the future.  Accordingly, dbrand is entitled to an injunction against future infringement.

### THIRD CLAIM FOR RELIEF
**Falsification of Copyright Management Information**
**17 U.S.C. § 1202(a)**

*Against Defendants Casetagram and Westside*

133.    dbrand incorporates preceding paragraphs 1-15, 19-42, 47-51, 54-60, 62-132 as if fully set forth herein.

134.    dbrand owns all copyrights in the Original Teardown Artworks.

135.    Casetify has falsified, and continues to falsify, its own CMI used on and in connection with each of its Infringing Teardown Copies.

136.    Every copy of the Infringing Teardown Copies constitutes a separate violation under 17 U.S.C. § 1202(a) for falsification of CMI.

137.    Casetify has also distributed, and continues to distribute, unauthorized copies of the Infringing Teardown Copies after falsifying Casetify's CMI used on and in connection with Infringing Teardown Copies.

138.    On information and belief, the Casetify Executive Infringers knowingly engage in this misconduct with the intent to induce, enable, facilitate, and conceal Casetify's infringements of the Original Teardown Artworks.

139.    Casetify's unlawful acts have caused and continue to cause irreparable harm to dbrand for which it has no adequate remedy at law.  Unless this Court restrains Casetify from falsifying CMI used in connection with Casetify's unauthorized copies of the Original Teardown Artworks, the harm will continue to occur in the future.  Accordingly, dbrand is entitled to an injunction against future CMI violations.

## DEMAND FOR JURY TRIAL

dbrand hereby demands a jury trial with respect to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, dbrand respectfully prays that the Court enter judgment in its favor and award the following relief against Casetify:

A.    A judgment that Casetify has directly infringed dbrand's copyrights in the Infringing Teardown Copies;

B.    A judgment that Casetify removed and altered dbrand's CMI used in connection with the Infringing Teardowns;

C.　　A judgment that Casetify falsified its own CMI used in connection with the Infringing Teardowns;

D.　　A judgment that Casetify's infringement of dbrand's copyrights in the Infringing Teardowns was willful;

E.　　A judgment that Casetify's CMI violations as alleged herein were done knowingly and with the intent to conceal its copyright infringement;

F.　　A judgment that dbrand is entitled to its actual damages and Casetify's profits attributable to Casetify's copyright infringement, in an amount to be proved at trial, pursuant to 17 U.S.C. § 504(b);

G.　　A judgment that dbrand is entitled to either its actual damages and Casetify's profits attributable to Casetify's CMI violations, in an amount to be proved at trial pursuant to 17 U.S.C. § 1203(c)(2), or at dbrand's election, statutory damages as provided in 17 U.S.C. § 1203(c)(3);

H.　　A judgment that dbrand is entitled to recover its costs in this action pursuant to 17 U.S.C. §§ 505 and 1203(b)(4);

I.　　A judgment that dbrand is entitled to recover its reasonable attorneys' fees in this action pursuant to 17 U.S.C. §§ 505 and 1203(b)(5);

J.　　Pursuant to 17 U.S.C. §§ 502(a) and 1203(b)(1), an order enjoining Casetify and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, successors, and assigns, and any persons acting in privity or in concert with any of them, from further infringing dbrand's copyrights and from committing any CMI violations against dbrand;

K.　　Any other and further relief as this court deems appropriate in law and in equity.

DATED March 6, 2024.

Respectfully submitted,

By /s/ *Collin D. Hansen*
    Collin D. Hansen (ARDC#: 6335991)
    Email: chansen@wnlaw.com
    **WORKMAN NYDEGGER**
    840 S Northwest Hwy, Suite 10
    Barrington, IL 60010
    (815) 353-4438 (Telephone)

    Brian N. Platt (UT# 17099)
    Email: bplatt@wnlaw.com
    **WORKMAN NYDEGGER**
    60 East South Temple, Suite 1000
    Salt Lake City, UT  84111
    (801) 533-9800 (Telephone)

    *Attorneys for Plaintiff dbrand inc.*