IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| DBRAND INC., a Canadian Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>CASETAGRAM LIMITED dba CASETIFY, a Hong Kong limited liability company,<br><br>and<br><br>WESTSIDE LAB, INC., a California corporation,<br><br>*Defendants*. | CASE NO. 24-cv-1919<br><br>DEFENDANTS' MOTION TO FOR JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c)<br><br>**JURY TRIAL DEMANDED** |

**MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c)**

Defendants Casetagram Limited ("Casetagram") and Westside Lab, Inc. ("Westside") (collectively, "Casetify"), hereby move for judgment in favor of the Defendant based on the pleadings pursuant to FRCP 12(c). Casetify, through its attorneys, states as follows:

**I.     Introduction**

This litigation involves the subject of "teardown images," that is, images depicting the interiors of electronic devices, such as mobile phones and laptops when the outer housings are removed. Numerous online videos, online articles, and repair guides create device teardowns, typically in a step-by-step manner, to allow consumers to see the device interiors. These teardowns help consumers make informed device purchases or assist them in device repair.

1

Plaintiff dbrand and Defendant Casetify are both engaged in the design and sale of protective cases for mobile phones. Among the many designs for mobile phone cases are designs in which a case back depicts interior electrical components, thus appearing as if one were directly viewing the inside of a mobile phone. Teardown images are so ubiquitous that they constitute "scènes à faire" for this image genre. Neither party owns the underlying design layout of the interior components of Apple iPhones, Samsung phones, or Google Pixel phones, whose images are the subjects of this lawsuit.

Plaintiff dbrand touts its teardown images as being faithfully identical to phone interiors. On its website, dbrand states, "Every single Teardown skin is guaranteed to be a 99% accurate representation of your device's internals." In contrast, Casetify merely selects and arranges electrical components in a design which is suggestive of the actual device interior. An example of the mobile phone case images involved in this lawsuit are depicted below for the Apple iPhone 14 (Complaint Exhibit A, page 1). Plaintiff states, without more, that this dbrand iPhone 14 image is somehow "copied" in 85 Casetify iPhone products. As seen in the below images, this dbrand teardown image depicts the iPhone 14 interior identically depicting the components of the actual phone, including the Apple logo trademark; in contrast, the Casetify phone case image is merely reminiscent of the arrangement of the iPhone components and is considerably less detailed, avoiding any use of Apple logos. It further "reimagines" the central large copper NFC coil as a large "C" for "Casetify" leaving off so many of the peripheral magnets that it could no longer function as an Apple MagSafe coil.

Plaintiff dbrand does not plead substantial similarity in its complaint. As seen below, the Casetify mobile phone case is neither "substantially similar" nor "virtually identical" to the dbrand image:



| Accused Casetify product | dbrand image |

Since none of the accused Casetify mobile phone cases is "virtually identical" (the standard for this genre of copyrights) or even "substantially similar" to the dbrand images, Casetify seeks judgment on the pleadings pursuant to FRCP 12(c) for all three of dbrand's claims for relief as outlined below:

1. dbrand's claim that Casetify's Inside Out line of cases infringe dbrand's copyrights under 17 U.S.C. § 501(a) fails the Seventh Circuits extrinsic test as a matter of law as the designs are not substantially similar, let alone "virtually identical," nor does dbrand even plead substantial similarity.

2. Casetify's accused case designs are original works and, as such, cannot possibly remove or alter any of dbrand's alleged copyright management information (CMI). It is well settled law that, without being exact copies of a plaintiff's work, there can be no "removal" of

3

CMI. As such, there is no cause of action under 17 U.S.C. § 1202(b). Similarly, since Casetify's original case designs are independent creations, placing its own CMI on its own products does not constitute falsification of CMI under 17 U.S.C. § 1202(a). Therefore, as a matter of law, there is no cause of action under 17 U.S.C. § 1202(a).

II. **There is No Copyright Infringement Under 17 U.S.C. § 501(a)**

A. Analysis of Substantial Similarity is Proper on the Pleadings

The 7th Circuit has stated that it is appropriate to address issues of substantial similarity on a Rule 12(b)(6) motion; as Rule 12(b)(6) uses the same standard as Rule 12(c), the case law is applicable here. In *Design Basics, LLC v. WK Olson* this court held that:

> The Seventh Circuit in recent years has made clear that district courts can address substantial similarity on a Rule 12(b)(6) motion, considering in great detail whether a plaintiff has plausibly alleged that a defendant's work infringes on a copyright. *See Hobbs*, 722 F.3d at 1096 (holding, "as a matter of law," that two songs are not "substantially similar," affirming dismissal of copyright claims on a motion to [*9] dismiss); *Peters*, 692 F.3d at 636 (concluding that plaintiff's "claim for copyright infringement fails as a matter of law" at the motion to dismiss stage); *Culver Franchising Sys., Inc. v. Steak N Shake Inc.*, No. 16 C 72, 2016 U.S. Dist. LEXIS 103091, 2016 WL 4158957, at *8 (N.D. Ill. Aug. 5, 2016) (collecting cases). This does not impose a heightened pleading standard on Plaintiffs, however. *Carter v. Pallante*, 256 F. Supp. 3d 791, 798 (N.D. Ill. 2017).

*Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2019 U.S. Dist. LEXIS 21873, at *8-9 (N.D. Ill. Feb. 11, 2019).

In the present litigation, Plaintiff's copyrighted images and the Defendant's accused products are presented in the Exhibits of the Complaint. Therefore, it is proper for this court to determine the issue of substantial similarity in this Motion to Dismiss as a matter of law. It is noted that plaintiff fails to plead substantial similarity between its copyrighted images and the accused products.

B.     <u>Plaintiff's Copyrights are Product Images with Only a *Thin* Copyright; the Doctrines of *Scènes à Faire* and Merger Require the Accused Products to be "Virtually Identical" to Constitute Infringement</u>

It is well-established that images of commercial products possess a thin copyright requiring that any accused images or products must be "virtually identical" to the copyrighted images in order to infringe. In *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003), a copyright for a photograph of a vodka bottle was found not to cover other images of the same bottle since the accused photographs were not "virtually identical" to the copyrighted photograph. The court stated:

> Ets-Hokin argues that Skyy's photographs are substantially similar to those in which he holds the copyrights and that they are therefore infringing. However, his claim fails upon application of the defensive doctrines of merger and scenes a faire. As we previously explained:
>
> Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the work can be expressed only in one way, lest there be a monopoly on the underlying idea. In such an instance, it is said that the work's idea and expression "merge." Under the related doctrine of scenes a faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea . . . *Ets-Hokin*, 225 F.3d at 1082. Likewise, when similar features of a work are "as a practical matter indispensable, or at least [*766] standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright." *Apple Computer Corp. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (internal quotation [**5] marks and citation omitted).
>
> Though the Ets-Hokin and Skyy photographs are indeed similar, their similarity is inevitable, given the shared concept, or idea, of photographing the Skyy bottle. When we apply the limiting doctrines, subtracting the unoriginal elements, Ets-Hokin is left with only a "thin" copyright, which protects against only virtually identical copying. *See Apple*, 35 F.3d at 1442 (9th Cir. 1994). As we observed, in *Apple*, "[w]hen the range of protectable [***1062] expression is narrow, the appropriate standard for illicit copying is virtual identity." *Id.* at 1439.

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765-66 (9th Cir. 2003).

In the present case, the copyrighted subject matter is a s*cène à faire* for depiction of mobile device interiors. The originality of this type of image is minimal as the Plaintiff does not own the

5

appearance of various electronic components and the arrangement of the electronic components in an Apple iPhone, Samsung Galaxy, or Google Pixel device. Indeed, as quoted above, Plaintiff proudly proclaims that their images are a "99% accurate" representation of the interior. Therefore, the court must filter out the "non-protectable elements" of the dbrand images leaving only the issue of whether the Casetify accused products are "virtually identical" to those of dbrand. The Casetify accused products are clearly not "virtually identical" to the copyrighted images, as seen in Exhibits A and B and discussed in detail below.

In *Design Basics, LLC v. Signature Constr., Inc.*, the 7th Circuit explained the requirement of "virtual identity" for copyright infringement for images depicting *scènes à faire* and exhibiting idea/expression merger as they relate to architectural plans:

> Standard elements in a genre—called *scènes à faire* in copyright law—get no copyright protection. *Scènes à faire* are "so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 929 (7th Cir. 2003). If standard elements received copyright protection, then the creation of a single work in a genre would prevent others from contributing to that genre because the copyright owner would have exclusive rights in all of the genre's basic elements…
>
> Merger doctrine prevents the use of copyright to protect an idea or procedure. If an idea or procedure can be expressed in only a few ways, it is easy to copyright every form in which the idea can be expressed, indirectly protecting the idea itself. 4 Nimmer On Copyright § 13.03[B][3]; *see also Morrissey v. Procter & Gamble Co.*, 379 F.2d 675, 678-79 (1st Cir. 1967). To guard against this kind of overprotection, when an idea can be expressed in only limited ways, courts say that the expression "merges" into the idea and cannot receive [**22] copyright protection…
>
> And in this particular architectural genre in which copyright protection is thin, proving unlawful appropriation takes more than a substantial similarity between the plaintiff's work and the defendant's work. Instead, only a virtually identical plan infringes the plaintiff's copyrighted plan. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1013-14 (7th Cir. 2005).

*Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 889-890 (7th Cir. 2021).

Similarly, in the present controversy, images that show the actual components of a mobile device necessarily share some similarity as all are images of mobile device interiors, showing the same electrical components in an operational layout. This is clearly a *scène à faire* for the well-known genre of interior phone images; that is, the depiction of device interiors by opening up an electrical product and looking inside.

Further, because an image showing a device's interior components can only be realistically expressed in a limited number of ways, the present litigation also invokes the doctrine of merger. As Plaintiff proudly asserts that there is 99% identity of its images with actual phone interiors on its website, the expression captured in such images "merges" with the idea of the depiction of phone interiors. As such, the copyrights for dbrand's images are necessarily thin, particularly since the subject matter is only the actual device interior ("99% identical"). Further, dbrand does not own any copyright in the layout of the subject devices.

C. <u>Comparing dbrand's Images to Casetify's Accused Products Demonstrates that the Accused Products are not "Virtually Identical"</u>

1. Ordinary Observer Test to Determine Appropriate of the Copyrighted Image :

Even if a product involves copying from a plaintiff's work, the court must determine whether improper appropriation has occurred using the ordinary observer test to determine whether the protectable elements have been improperly copied when the copyrighted work involves *scènes à faire*. As this court stated in *Fooey, Inc. v. Gap, Inc.*,

> This circuit uses the ordinary observer test to determine whether improper appropriation has occurred. Incredible Techs., 400 F.3d at 1011. Improper [*9] appropriation occurs when two works are so substantially similar that an ordinary observer would conclude that that the accused infringer improperly copied the protectable expression of the work. Atari, 672 F.2d at 614. Before comparing the works in question, non-protectable elements must be extracted. See Incredible Techs., 400 F.3d at 1011 ("[D]espite what the ordinary observer might see, the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright."). Once all non-protectable elements are extracted, the ordinary observer evaluates overall

7

> similarity in light of the works' total concept and feel. Atari, 672 F.2d at 614. Works are compared side by side. Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 510 (7th Cir. 1994).

Fooey, Inc. v. Gap, Inc., No. 12 C 5713, 2013 U.S. Dist. LEXIS 72151, at *8-9 (N.D. Ill. May 17, 2013).

2. Casetify Accused Products Are Not "Virtually Identical" to dbrand Images

Turning to Exhibits A and B the accused Casetify products are not "virtually identical" to the dbrand images once the unprotectable elements of a phone interior layout are removed. Exhibit A of this Motion compares dbrand's Apple iPhone 14 copyright to all the accused Casetify products (complaint paragraph 89) by SKU number. Please note that all of the Casetify iPhone cases use the identical image, regardless of actual iPhone model. That image is the image for an iPhone 14. Therefore, in Exhibit A, the Casetify images are the same and are compared to the same dbrand copyrighted image for the iPhone 14 (shown in dbrand's Complaint Exhibit A).

It is clear when viewing the side-by-side comparisons of Exhibit A that there is no "virtual identity" between the dbrand images and the accused Casetify phone cases. Several of the various differences are highlighted below for ease of analysis. For the Casetify iPhone cases, the large copper NFC coils with their MagSafe perimeters (a) have been reimagined as a Casetify "C" making the imaginary component entirely non-operational.

There is a spurious component (b) which is partially cut-off by the camera elements. The battery beneath the NFC component has been enlarged to take up most of the space (c) in the center of the case so that Casetify is able to add its tagline of "A New Standard for Reinforced Protection: Take your protection level to new heights" (d). The Apple Logos have been eliminated (e). Essential components like the Haptic Engine (the component that makes the phone vibrate) in the lower right corner of the dbrand image (f) are missing. An additional spurious component (g) has been added on the left.

8



The circuitry next to the camera (h) and next to the NFC coil (j) is mostly or entirely missing due to the enlargement of the battery, making the Casetify "C" stand out.



Thus, electronics aficionados, such as dbrand customers, would instantly recognize that the Casetify iPhone image is not an actual, functional iPhone interior, only an amalgamation of

9

phone interior components creating a non-operational design. Consequently, the accused Casetify products are not at all "virtually identical" or even similar to the dbrand images.

The accused Casetify Samsung and Google Pixel phone products are also not virtually identical to dbrand images as seen in Exhibit B which depicts side-by-side comparisons for all of the Casetify accused products by SKU number with dbrand copyrights. Note that SKU numbers are grouped together with a representative image; the representative Casetify image is used with all the accused SKU numbers. As with the Casetify Apple products, the Casetify Samsung and Google images are not faithful to the devices with actual components missing, additional imported components not present in the devices, and changes to component layout and appearance creating a different overall "look and feel."

It is noted that an extremely small subset of the accused products, namely, three Samsung Galaxy models and one Google Pixel model include three so-called "Easter eggs" that are not part of actual mobile phone interiors. It is noted that these "Easter Eggs," are tiny portions of only four Casetify accused cases; none of the "Easter Eggs" are themselves copyrighted images. Therefore, it is submitted that this is not improper appropriation. Indeed, dbrand itself states that there is no substantial similarity even for those four accused products that include an Easter Egg:

"For all of the Easter Eggs that Casetify failed to remove, the Easter Eggs were substantially altered through the poor image quality of the Infringing Teardown Copies, such that they are barely recognizable" (Complaint, paragraph 95).

Finally, Exhibit C is a listing of all 114 dbrand copyrights from its Complaint. Only 8 copyrights appear to be asserted, it is unclear why the other 106 are included in the appendices. All 114 are divided into seven groups. Group I/II is a list of dbrand copyrights asserted/not asserted in the Complaint for Apple iPhone and other Apple Products. Group III/IV is a list of asserted/non-asserted dbrand copyrights for Samsung devices. Group V/VI is a list of asserted/non-asserted

dbrand copyrights for Google devices. Finally, Group VII is a list of dbrand copyrights with no connection to the Complaint.

### III. Casetify's Independent Creations Do Not Violate DMCA 17 U.S.C. §§ 1202(a),(b) As a Matter of Law And This Claim Should Be Denied

dbrand's second and third claims for relief are for alleged violations of the Digital Millennium Copyright Act (17 U.S.C. § 1202(b) and (a)). The Casetify accused products were listed for sale on various websites; it is the listing for sale of the Casetify phone cases that is the basis of the DMCA claims.

However, as can be seen from Exhibits A and B, the Casetify products are original works, not copies of the dbrand copyrights and, indeed, are not "virtually identical" to the dbrand copyrights. Instead, the Casetify accused products are an original synthesis that reimagines phone interiors in a way that is not faithful to the actual device or to the dbrand images. Since the accused Casetify products are both original works and not direct copies of the copyrighted dbrand images, there can be no violation of DCMA § 1202(b) or 1202(a) as a matter of law since no CMI is "removed" from Plaintiff's products.

Even when an accused defendant created a potentially infringing derivative photograph from the plaintiff's copyrighted photograph and added its own names and logos for the derivative image, the SDNY has found on multiple occasions that there was no "removal" or "falsification" of the plaintiff's CMI. This lack of violation of the DMCA holds <u>even if</u> the underlying work is eventually found to be an infringement of the copyrighted work. In *Crowley v. Jones*, the SDNY stated:

> [W]here an allegedly infringing work is derivative to the original, a defendant does not violate the DMCA by printing his own name on the derivative work, even if the derivative work is an act of infringement. Jeehoon Park v. Skidmore, Owings & Merrill LLP, 2019 U.S. Dist. LEXIS 171566, 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) (Sullivan, J.). In other words, a

> defendant "cannot violate the DMCA by associating its name" with a derivative work that [**19] "is unquestionably a distinct work," even if the derivative work infringes a copyright. Id.; accord Pilla v. Gilat, 2022 U.S. Dist. LEXIS 57532, 2022 WL 1003852, at *26 (S.D.N.Y. Mar. 29, 2022) ("Even if Defendants had improperly infringed upon Plaintiff's copyright by incorporating protected features into their redesign, Defendants did not violate the DMCA by printing [Plaintiff's] name on the distinct products [Plaintiff] had generated.") (Karas, J.) (quotation marks omitted); Michael Grecco Prods. v. Time USA, LLC, 2021 U.S. Dist. LEXIS 140274, 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021) ("a party that puts its own CMI on work distinct from work owned by a copyright holder is [*91] not liable under Section 1202(a), even if the party's work incorporates the copyright holder's work.") (Buchwald, J.).

*Crowley v. Jones*, 608 F. Supp. 3d 78, 90-91 (S.D.N.Y. 2022).

Therefore, when Casetify created its own case designs, the use of its own logos and QR codes cannot, as a matter of law, constitute a violation of the DMCA §1202(a) or §1202(b).

The ND Ill. has also ruled that when the accused work is not an identical copy, there is no violation of the DMCA regarding removal of CMI. In Design Basics LLC v. WK Olson, the court stated:

> Here, Plaintiffs do not allege WK Olson directly reproduced their plans without CMI. Instead, they contend that WK Olson copied aspects of its original works, with WK Olson's plans appearing "virtually identical" to those of Plaintiffs. Doc. 51 ¶ 82. "[B]asing a drawing on another's work is not the same as removing copyright management information," however. *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496 SOM/BMK, 2014 U.S. Dist. LEXIS 157560, 2014 WL 5798282, at *5, 7 (D. Haw. Nov. 7, 2014)

*Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2019 U.S. Dist. LEXIS 21873, at *16 (N.D. Ill. Feb. 11, 2019).

Kirk Kara v. Western Stone further clarifies why the Casetify products do not violate DMCA since the alleged dbrand CMI was not removed from a dbrand product to create the accused Casetify products and the original works of Casetify are not identical:

> Defendant argues that Plaintiff's claim should be dismissed because the images displaying the Subject Designs and the images displaying the Subject Products are not exact copies. MTD 27-28. The Court agrees. Based on a review of the side-by-side images included in the Complaint, the Court can determine that,

while the works may be *substantially similar*, Defendant did not make *identical* copies of Plaintiff's works and then remove the engraved CMI.

> In such cases, even where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical. *See Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D. Cal. 1999), *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) (explaining that displaying thumbnails of the plaintiff's images without [*19] CMI did not violate the DMCA because CMI was not removed from the plaintiff's original, full-sized images); *Fischer v. Forrest*, 286 F. Supp. 3d 590, 609 (S.D.N.Y. 2018) (finding that CMI was not removed where advertisements were not entirely copied, despite containing the same four phrases); *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 U.S. Dist. LEXIS 6627, 2015 WL 263556, at *2 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) (stating that because architectural drawings were "not identical . . . this court cannot say that [the defendant] removed or altered [the plaintiff]'s copyright management information").

*Kirk Kara Corp. v. Western Stone & Metal Corp.*, No. CV 20-1931-DMG (Ex), 2020 U.S. Dist. LEXIS 189425, at *18-19 (C.D. Cal. Aug. 14, 2020).

The accused Casetify products are original works from which there is no removal of dbrand's CMI nor falsification of dbrand's CMI. Instead, Casetify created cases that, as with dbrand, show interior components of mobile phones. Casetify then placed its own CMI on its own original cases as in the settled case law examples above. Therefore, Casetify urges the court to deny Plaintiff dbrand's claims 2 and 3 for relief under DMCA §1202(b) and §1202(a), respectively.

## IV.  Conclusion

For the foregoing reasons, Defendants Casetagram Limited and Westside Lab, Inc. respectfully request that the Court grant judgment on the pleadings in Defendant's favor; the accused Casetify products are not "virtually identical" to the dbrand images. Further, Casetify did not remove or falsify dbrand CMI by using Casetify's own CMI on its own original creations.

Defendant is willing to withdraw its counterclaims, with prejudice, if necessary in order for this motion to be decided on the merits.

DATED:  June 25, 2024            Respectfully submitted,

<u>/s/Sam Yip</u>
Sam Yip (*admitted pro hac vice*)
California Bar No. 264950
IDEA Intellectual
21st Floor, Skyway Center
23 Queen's Road, W., Sheung Wan,
Hong Kong
Phone: (571) 335-1729
Email: syip@ideaintellectual.com
***Attorney for Defendants***
***Casetagram Limited and Westside Lab, Inc.***

<u>/s/Margaret Burke</u>
Margaret Burke (*admitted pro hac vice*)
New York Bar No. 2524536
IDEA Intellectual
21st Floor, Skyway Center
23 Queen's Road, W., Sheung Wan,
Hong Kong
Phone: (571) 335-7752
Email: mburke@ideaintellectual.com
***Attorney for Defendants***
***Casetagram Limited and Westside Lab, Inc.***

## CERTIFICATE OF SERVICE

    I hereby certify that on June 25, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois, using the Court's Electronic Case Filing System, which sent electronic notification of such filing to all other counsel of record.

                                                                            */s/Sam Yip*
                                                                             Sam Yip