**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DBRAND INC., a Canadian Corporation, | |
| *Plaintiff/Counterclaim Defendant* | CASE NO. 24-cv-1919 |
| v. | |
| CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, and WESTSIDE LAB, INC., a California corporation, and WESTROCK SERVICES (WHOLESALE), INC. | **JURY TRIAL DEMANDED** |
| | **District Judge Martha M. Pacold** |
| | **Magistrate Judge Maria Valdez** |
| *Defendants/Counterclaimants*. | |

**AMENDED COMPLAINT FOR COPYRIGHT MANAGEMENT**
**INFORMATION VIOLATIONS**

Plaintiff dbrand inc. ("dbrand") brings the following claims against Defendants Casetagram Limited ("Casetagram"), Westside Lab, Inc. ("Westside"), and Westrock Services (Wholesale), Inc. ("Westside") (collectively, "Casetify") for copyright management information violations.

**SUMMARY OF THE ACTION**

1.      dbrand is a Canadian company that designs, manufactures, and sells premium cases, screen protectors, and other accessories for phones, tablets, laptops, and more.  dbrand makes all of its original designs at its facilities in Toronto.

2.      dbrand also partners with prominent influencers and other reputable brands to market its premium products.  Since 2017, dbrand has partnered with the famous YouTube content creator Zack Nelson, who posts videos under the username JerryRigEverything ("JRE"), and who

1

currently has over nine million subscribers.  *See* https://youtu.be/IS0SItAzEXg?t=603.

3.　　In one early dbrand-sponsored video (*see* https://youtu.be/qEWO68Tegf8?t=344), JRE demonstrated how to make the back panel of some phones transparent by exposing the clear glass exterior ("Clear Mods").  This video and others published by JRE covering similar subject matter have received tens of millions of views on YouTube.

4.　　Many viewers have made particular mention of how much they like the aesthetic of the Clear Mods:



5.　　However, as noted by JRE and many of his viewers, creating a Clear Mod voids the phone's warranty, risks damaging the phone's internals, and makes the phone's rear glass panel susceptible to shattering into dangerous shards.

6.　　Following the success of JRE's Clear Mod videos, dbrand began a partnership with JRE to design and market a new line of products for phones and other electronics that achieves the desirable aesthetic of Clear Mods in a consumer-ready format through printed vinyl decals applied directly to devices or to customizable impact-resistant cases ("Original Teardowns"):

    

7.      dbrand's Original Teardowns comprise hundreds of different models for phones and other electronics from various manufacturers and were an immediate commercial success.  In less than 15 hours after launch, dbrand sold over 14,000 Original Teardowns—approximately one purchase every four seconds.

8.      dbrand's designs in the Original Teardowns are inherently protected by copyright.

9.      After the Original Teardowns had already achieved substantial fame and recognition, Defendant Casetify—a Chinese-based manufacturer of phone cases and related products—began to directly copy dbrand's most popular Original Teardowns to create its own line of cases for phones and other electronics called "Inside Out" (the "Infringing Teardowns"):

    

10.      Casetify's Infringing Teardowns incorporate direct copies of dbrand's copyright-protected works.  Every Infringing Teardown began as an unauthorized copy of one of the Original Teardowns.  Casetify then digitally removed and added some elements (including other copyright-protected elements from other Original Teardowns) in an attempt to hide its infringements.

3

11.    Evidence of Casetify's blatant copyright theft is apparent upon inspection of the Infringing Teardowns.  Indeed, large swathes of the Original Teardowns are still present, unedited, in the Infringing Teardowns.

12.    Casetify also left various symbols, messages, logos, and trademarks in the Infringing Teardowns that dbrand added to the Original Teardowns for the dual purposes of increasing engagement with consumers and detecting infringers (collectively, the "Easter Eggs"). A few examples of dbrand's Easter Eggs found on the Infringing Teardowns are shown below, alongside corresponding examples from dbrand's Original Teardowns:

 

 

 

 

13.     Although Casetify *unintentionally* left a trail of infringement by failing to identify and eliminate all of dbrand's Easter Eggs, it *intentionally* tried to cover its tracks by removing and altering dbrand's copyright management information ("CMI") from the Original Teardowns and by adding its own false CMI to the Infringing Teardowns, including the QR codes shown below:

 

**dbrand's QR Code**                    **Casetify's QR Code**

14. Casetify has sold the Infringing Teardowns across the United States at least through its own website and through the third-party retailer Best Buy.

15. Casetify's egregious and intentional misconduct constitutes copyright infringement and CMI violations pursuant to the United States Copyright Act. Among other relief, dbrand seeks a permanent injunction preventing Casetify from further infringing dbrand's copyrighted works, as well as actual and statutory damages.

**PARTIES**

16. Plaintiff dbrand inc. is a Canadian corporation with a principal business address at 500 King Street West, 3rd Floor, Toronto, ON M5V 1L9, Canada.

17. Defendant Casetagram is a Hong Kong limited company with a principal business address at 18/F NEO 123 Hoi Bun Rd, Kwun Tong, Hong Kong. Casetagram advertises that it can be contacted "anytime" by email at hello@casetify.com, that "[y]ou can also contact us on Instagram, Facebook or Twitter," and further provides a contact form on its website. *See* https://www.casetify.com/faq/contact. Casetagram's executive team can also be contacted directly at legal.comsec@casetagram.com, owner@casetagram.com, wes@casetagram.com, ron@casetagram.com, mike@casetagram.com, and sharon.lam@casetagram.com. Casetagram can also be contacted by phone at 1 (908) 295-5831 and at 00852-34640488.

18. Defendant Westside is a California corporation with a registered business address at 3705 W Pico Blvd #2637, Los Angeles, CA 90019 and a 1505 registered corporate agent—Northwest Registered Agent, Inc.—at 2108 N Street, Ste N, Sacramento, CA 95816.

19. Defendant Westrock Services (Wholesale), Inc. is a Wyoming corporation with a registered business address at 30 N Gould St, #31324, Sheridan, WY 82801.

20.     On information and belief, Defendants Casetagram, Westside, and Westrock are, for the purpose of the misconduct alleged herein, alter egos of each other and effectively a single entity.

21.     The only two executives identified in Westside's state business filings are Mike Jia (CEO, Secretary, and Director) and Sharon Lam (CFO). The only executive identified in Westrock's public business filings is Ronald Yeung.

22.     On information and belief, Mike Jia is the Head of Growth at Casetagram and is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/mikejia4/

23.     On information and belief, Sharon Lam is the CFO at Casetagram and is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/sharonwylam/

24. On information and belief, Ronald Yeung—the co-founder and Managing Director of Casetify—is also physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/rcyyeung/

25. Wesley Ng—co-founder and CEO of Casetagram—admitted in another infringement lawsuit filed against Casetagram in this District that in addition to Casetagram, he also owns Westside. *Uncommon LLC v. Casetagram Limited*, No. 1:16-CV-04691, Dkt. No. 16 (N.D. Ill., June 23, 2016) (the "Ng Decl.") ¶ 5. On information and belief, Wesley Ng—co-founder and CEO of Casetagram—is physically based out of Casetagram's corporate office in Hong Kong:



https://www.linkedin.com/in/wesleyng/

26. On information and belief, most full-time employees of Casetify, including all corporate decision-makers and those who exercise control over Westside and Westrock, are based in Hong Kong. As admitted by Wesley Ng, "All decisions about [management responsibilities for

Casetify and . . . authority or control over Casetify's agreements with other companies] are made by Casetify personnel in Hong Kong." Ng. Decl. ¶ 7.

27.     On information and belief, executives for Casetagram including at least Wesley Ng, Mike Jia, Sharon Lam, and/or Ronald Yeung exercise exclusive and total control over Westside and Westrock, including over all of their hiring decisions, substantive business decisions, and over the importation, marketing, distribution, and sale of all products, including the Infringing Teardowns.

28.     On its website, social media, and elsewhere Casetagram lists a Los Angeles office:



https://www.casetify.com/about-us



https://www.linkedin.com/company/casetify/

9



https://www.influencermarketingsociety.com/jobs/238236099

29.     On information and belief, Casetagram is not registered to do business in the state of California or the city of Los Angeles, and this office advertised by Casetagram refers, in fact, to Westside's business address.

30.     On information and belief, Casetagram has imported products into the United States, including the Infringing Teardowns.

31.     Also on information and belief, Casetagram has imported and/or distributed at least some of its products in the United States, including at least some of the Infringing Teardowns, through Westside and Westrock.

32.     Also on information and belief, Casetagram has imported at least some of its products, including at least some of the Infringing Teardowns, through Westrock, and further controls Westrock through common executives (including at least Ronald Yeung), management (including at least Athena Chan and Harvey Mok), employees (including at least Amro Louis), business structure, supply chains, customers (including at least Best Buy), intellectual property (including at least the Casetify name and logo), web domains (including at least casetify.com and casetagram.com), domain servers, and other digital and physical assets.

33.     Also on information and belief, Westrock has imported, distributed, and/or sold tens of thousands of products for Casetagram, including tens of thousands of the Infringing Teardowns, in the United States and including in Illinois.

10

34.     On information and belief, in the past year Casetagram has imported at least 10 shipments of phone cases and related products into the United States, totaling nearly 150,000 pounds of freight and including the Infringing Teardowns.  *See* Exhibit I.  On information and belief, Casetify's cases (including packaging) weigh approximately 0.2 pounds.

35.     In user manuals for Casetagram's products, Westside is identified as the "Responsible Party" and lists a Casetagram email address:

> Contact information for the US:
> Responsible Party:
> Company name: Westside Lab, Inc
> Address: 3705 W Pico Blvd #2637Los Angeles, CA 90019
> Tel:  415-735-5423
> E-mail: Mei@casetagram.com

http://tinyurl.com/ctfymanual

36.     Casetagram is the owner of the registered trademark CASETIFY.  *See* Reg. No. 4,707,090.  On Amazon.com and elsewhere, Westside operates under the CASETIFY mark, including to sell products in the United States, and including the Infringing Teardowns:



https://www.amazon.com/sp?ie=UTF8&seller=A38ND1U5XKP6P

37.     On information and belief, Westside is the primary seller permitted by Casetagram to sell products bearing the CASETIFY mark on Amazon and Westrock is the primary distributor of products bearing the CASETIFY mark sold to Best Buy. On information and belief, a substantial portion of Casetagram's sales in the United States occur through its Amazon listings operated by Westside and its Best Buy listings fulfilled by Westrock. Also on information and belief, Westside and Westrock distribute exclusively Casetify products.

38.     On information and belief, Casetagram, Westside, and Westrock commingle their assets, including their executives, management, employees, physical products, intellectual property, business property, supply chain, sales revenue, and more.

39.     On information and belief, Westside and Westrock are sham corporations, are Casetagram's corporate alter-egos, and were created by Casetagram and its executives, including at least Wesley Ng, Sharon Lam, Mike Jia, and Ronald Yeung, in a fraudulent attempt to avoid direct liability for illegal misconduct in the United States, including the intentional and egregious infringements and CMI violations alleged herein.

## JURISDICTION AND VENUE

40.     Pursuant to 28 U.S.C. §§ 1331 and 1338, this Court has original jurisdiction over dbrand's claims for copyright management information violations, which arise under of the Copyright Act of the United States, 17 U.S.C. § 1202.

41.     Venue in a copyright case is governed by 28 U.S.C. § 1400(a), under which a claim "may be instituted in the district in which the defendant or his agent resides or may be found." For purposes of the statute, "[a] defendant 'may be found' in any district in which he is subject to personal jurisdiction." *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd*., 767 F.

Supp. 181, 185 (N.D. Ill. 1991). "Thus, if a court has personal jurisdiction over the defendants in a copyright infringement action, venue in that court's district is proper." *Id.*

42. In a copyright case, this Court has personal jurisdiction over defendants who market infringing products to a nationwide audience on their own website and stand "ready and willing to do business with Illinois residents." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010). Similarly, this Court has personal jurisdiction over copyright defendants who market or sell infringing products through third-party online retailers to "residents of all fifty states, including Illinois." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015). The same applies for infringing products sold through Illinois brick-and-mortar stores. *Id.* at 908. This is true regardless of whether a defendant sends infringing products directly into Illinois, or merely "move[s] them along a stream of commerce destined for retail sale throughout the United States." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983). This is also true even if a defendant's infringing "sales in Illinois are very minimal in comparison to overall sales," or even if a defendant merely advertised infringing products in Illinois and "no [actual] sale was made to an Illinois resident." *Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14-CV-134, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015); *Monster Energy*, 136 F. Supp. 3d at 906. Indeed, "the commission of a single tortious act in Illinois brings a defendant within the scope of [personal jurisdiction] even if the defendant has no other contact with Illinois and has never been to Illinois." *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus.*, Ltd., 767 F. Supp. 181, 184 (N.D. Ill. 1991).

43. As described in more detail below, this Court has personal jurisdiction over Casetagram, Westside, and Westrock at least because they have each marketed, sold, imported, and/or distributed a substantial number of products to Illinois consumers—including a substantial

number of the Infringing Teardowns—through their interactive website, through third-party online retailers, and through Illinois brick-and-mortar stores.

44.     As used herein, "Casetify" refers to Casetagram, Westside, and Westrock.

45.     Some of Casetify's products, including some of the Infringing Teardowns, have been marketed and sold by Casetagram on its interactive website (www.casetify.com) directly to consumers, including in Illinois.

46.     Some of Casetify's products, including some of the Infringing Teardowns, have been marketed and sold by Casetagram through third-party online retailers, including in Illinois.

47.     On information and belief, some of Casetify's products, including some of the Infringing Teardowns, have been marketed and sold by Casetagram through brick-and-mortar retailers in Illinois, including at 45+ Illinois Best Buy stores:



https://www.bestbuy.com/

48.     On information and belief, Casetify has also sold some of its products at 235+ Illinois Verizon stores.

49. Indeed, when Casetify first started selling its products through brick-and-mortar stores in the United States in 2017, it selected a location "in the heart of Chicago." *See* journal.casetify.com/online-to-offline-casetify-pops-up-in-at-t-flagship-stores-3079cee870b7.

50. Casetify also sells products specifically targeting Illinois consumers. For example, Casetify has one product line called "Heart Map Chicago," which features a map of Chicago, one called "Chicago, Illinois" which features the Chicago skyline, and another called "Pangram Chicago" which features a recreation of a plane ticket from the O'Hare Airport—and each of which comprises dozens of variations for different phone models:

  

https://www.casetify.com

51. Casetify also has product lines for famous Illinois sports teams like the Chicago Bulls, the Chicago Blackhawks, and the Chicago White Sox—comprising hundreds of different models of phone cases, headphone cases, wireless chargers, and more:

15



https://www.casetify.com

52.     On information and belief, products sold by Casetagram on its interactive website, including the Infringing Teardowns, are shipped directly to consumers, including in Illinois.

53.     On information and belief, some products sold by Casetagram through online third-party retailers are shipped directly to consumers, including in Illinois, while others are first distributed to third-party warehouses, including in Illinois.

54.     On information and belief, Casetagram has at least some of its products shipped from at least four warehouses across the United States located at 120 E 8th Street, Los Angeles, CA 90014; 9860 40th Ave S, Unit B, Seattle, WA 98118; 1541 S 92nd Pl, Ste A, Seattle, WA 98108; and 2a Corn Road, Dayton, NJ 08810, including directly to Illinois consumers.

55.     On information and belief, all Casetify products, including all of the Infringing Teardowns, were and/or currently are advertised and marketed to Illinois consumers by Casetagram through its interactive website, through social media, through online retailers, and through brick-and-mortar stores.

16

56. On information and belief, all Casetify products, including all of the Infringing Teardowns, were and/or currently are available for purchase in Illinois through Casetagram's interactive website, third-party online retailers, and brick-and-mortar stores.

57. On information and belief, Casetify has marketed and sold a substantial number of products, including a substantial number of Infringing Teardowns, to consumers in Illinois through Casetagram's interactive website, third-party online retailers, and brick-and-mortar stores.

58. On information and belief, Westside and Westrock have imported, distributed, marketed, and sold a substantial number of Casetify products, including at least through Amazon.com and/or Best Buy, and including in Illinois.

59. On information and belief, Westside and Westrock have received shipments of a substantial number of Infringing Products from Casetagram and have distributed a substantial number of Infringing Products in the United States, including to Best Buy locations in Illinois.

60. For the foregoing reasons, Casetagram, Westside, and Westrock each have substantial contacts in Illinois, have purposefully availed themselves to the benefits and protections of this forum, have committed substantial misconduct in Illinois giving rise to the claims asserted herein, and are subject to personal jurisdiction in Illinois.

## **BACKGROUND**

61. dbrand is an innovative company located in Toronto, Canada that creates premium skins, cases, screen protectors, and other accessories for phones, tablets, laptops, and more. dbrand makes all of its original designs at its proprietary facilities in Toronto. dbrand's products are known for their unique aesthetics, quality, and durability.

62. Casetify is a Chinese-based manufacturer of phone cases and related products.

Casetify manufactures its products in China and imports them into the United States for sale across the country through its own website and through third-party retailers.

63. When asked about Casetify's valuation in 2021, Casetify CEO Wesley Ng stated that it is "close to a billion" dollars. *See* https://www.cnbc.com/2022/11/28/ceo-of-casetify-shares-his-no-1-super-underrated-business-tip.html. He also stated that Casetify was "on track to bring in $300 million in revenue" in that year and that it had already sold "more than 15 million phone cases worldwide." *Id.* In the three years since, Casetify has grown even larger. *See* https://www.modernretail.co/operations/casetify-ramps-up-global-expansion-launches-new-retail-concept-in-osaka/.

64. Despite Casetify's apparent deep pockets, it consistently seeks to cut corners by stealing the protected designs of others. Indeed, Casetify is a serial intellectual property thief that has had several lawsuits filed against it in the United States and elsewhere around the world for patent and copyright infringement. Recently, for example, Casetify was permanently enjoined from selling one of its products accused of infringing the design of a small company based in Georgia. *See Case-Mate Inc. v. Casetagram Limited*, No. 1:17-CV-01074-MHC, Dkt No. 25 (N.D. Ga. Sep. 6, 2017).

65. Starting in 2019, dbrand created a new product line featuring the Original Teardowns. In addition to dbrand's own advertising, the Original Teardowns were promoted through a collaboration with the famous YouTube content creator JRE.

66. To create the Original Teardowns, dbrand starts by removing the back panel of various electronic devices, deconstructing the assembled internal components, and taking photographs of the individual layers. dbrand's photographers make significant creative choices

concerning placement, orientation, background, exposure, and more to take these photographs. Next, dbrand's team of graphic designers make thousands of creative choices concerning every aspect of the resulting photographs, including to digitally enhance them for color, hue, reflectiveness, alignment, shadowing, brightness, contrast, and more. dbrand's graphic designers further create new digital artwork from scratch to cover certain components, including to recreate visually appealing elements that are hidden by comparably unappealing elements in the original photographs and to repair other elements damaged by the deconstruction process. dbrand's graphic designers also add various creative Easter Eggs to the works. dbrand's graphic designers ultimately modify every surface of the photographs, such that by the end of the process, no original surface—indeed not a single pixel—from the original photograph remains.

67. The result is a final image that is an original, creative, and visually appealing work of two-dimensional art (the "Original Teardown Image"):



68.    Creating an Original Teardown Image requires many dozens, sometimes hundreds, of hours of work by dbrand photographers, graphic designers, and other creators.  dbrand has created Original Teardown Images for over 100 unique devices, representing tens of thousands of hours of work by dbrand's employees.

69.    An Original Teardown is completed by printing the Original Teardown Image and permanently affixing the Original Teardown Image to an adhesive-backed decal through a printing and lamination process, which can then be applied directly to a device or impact-resistant case. "Original Teardowns" and "Original Teardown Images" are collectively referred to herein as "Original Teardown Artworks."  Original Teardown Images are also used to promote the Original Teardowns on dbrand's website, social media, and elsewhere:



https://dbrand.com/shop/special-edition/teardown

70.    Every Original Teardown Artwork also contains multiple Easter Eggs.  dbrand adds these Easter Eggs because consumers use them to identify dbrand's products and confirm that they

are genuine.  The dbrand Easter Eggs also increase engagement with consumers who feel a sense of loyalty and affiliation to dbrand and the YouTube content creator JRE who promotes the Original Teardowns.  The dbrand Easter Eggs were also created as a digital fingerprint to detect infringers of dbrand's copyright-protected Original Teardown Artworks.

71.     Examples of the dbrand Easter Eggs include the following (*see also* Exhibit A):



72.     The "db" and corresponding "db" logo Easter Eggs refer directly to dbrand.  The "db" logo is dbrand's trademark-protected logo that it has used in interstate commerce in the United States and around the world for over a decade.  The abbreviation "db" is also used by dbrand, including as a URL for its website (www.db.io) and in other advertising. dbrand has heavily promoted these marks and consumers recognize them as source-identifiers for dbrand. These marks identify dbrand as the owner of the designs in the Original Teardown Artworks.

73.     The dbrand QR code Easter Eggs are digital signatures that embed information

concerning the source of the Original Teardown Artworks. Consumers scan the QR codes using a modern cell phone or similar device and are immediately redirected to the dbrand website (www.db.io) and other promotional materials for the Original Teardowns. The general consuming public uses QR codes as a source identifier for a broad range of goods and services, including food products, consumer goods, medical devices, industrial equipment, pharmaceuticals, and more. Consumers use dbrand's QR codes to identify dbrand as the owner of the designs in the Original Teardown Artworks.

74. The "2011mAh/11.11Wh" and "11 - 11 - 11" Easter Eggs each refer to the founding date of dbrand (November 11, 2011). This date constitutes a significant aspect of dbrand's advertising and is recognized by consumers as a source identifier for dbrand. Consumers use these Easter Eggs to identify dbrand as the owner of the designs in the Original Teardown Artworks.

75. The "JRE," "SUBSCRIBE," and "Glass is Glass and Glass Breaks" Easter Eggs refer to the famous YouTube content creator Zack Nelson and his affiliation with dbrand. Mr. Nelson uploads his videos under the username JerryRigEverything and also uses the abbreviation "JRE." In every video, JRE encourages his viewers to "subscribe" to his channel. JRE has also coined the phrase "Glass is Glass and Glass Breaks" in his videos, including to promote dbrand's products and including the Original Teardowns. JRE currently has over nine million subscribers and dbrand's collaboration with JRE is its most successful form of advertising to date. Consumers recognize and look for these JRE identifiers and use them to identify dbrand's original products.

76. The "All Seeing Eye" Easter Eggs are incorporated across many of dbrand's products, including the Original Teardowns. dbrand uses this mark on its products, packaging, website, social media, and other marketing materials, including for the Original Teardown

Artworks. Consumers recognize that the "All Seeing Eye" symbol refers to dbrand and its products, including the Original Teardown Artworks.

77. The "R0807" (i.e. "ROBOT") Easter Eggs refer to dbrand's "robot" persona that constitutes a significant aspect of dbrand's advertising. For example, dbrand uses the Twitter/X handle "@robot," uses the email address robot@dbrand.com for its customer support, uses the moniker "robot" to refer to all of its employees, and further uses the term across its advertising. The R0807 mark is recognized by consumers as a source identifier for dbrand and consumers use the R0807 mark to identify dbrand as the owner of the designs in the Original Teardown Artworks.

78. Every Original Teardown Artwork includes multiple of the above Easter Eggs, including at least the dbrand QR Codes. *See* Exhibit A.

79. The Easter Eggs present in the Infringing Teardowns evidence that Casetify uses unauthorized copies of the Original Teardown Images to make the Infringing Teardowns.

80. dbrand has registered its copyrights in each of its Original Teardown Images in Canada with the Canadian Intellectual Property Office (collectively, the "Canadian Teardown Copyrights"). *See* Exhibit B.

81. Every Original Teardown Artwork is a creative piece of copyright-protected art. Indeed, every portion of every surface of every Original Teardown Image was created by dbrand's experienced team of artists.

82. Every Original Teardown Artwork includes protectible elements under the copyright laws of the United States, including, for example, the All Seeing Eye Easter Eggs designed by dbrand's artists, the original expression in magnetic charging coils created by dbrand's artists, the original expression in ribbon cables created by dbrand's artists, the original expression

in the circuitry created by dbrand's artists, the original expression in electrical components portrayed in the works that were created by dbrand's artists, the combination of some or all of these and other original elements in a single expressive work by dbrand's artists, and the overall look and feel of each Original Teardown Artwork due to the creative choices of dbrand's artists.

83. The "original expression" in the foregoing exemplary protectible elements includes, for example, the original creative decisions by dbrand's artists concerning the shape of the elements, the size of the elements, the placement and orientation of the elements, the color, reflectiveness, lighting, hue, shadowing, brightness, saturation, and contrast of the elements, and the determination of which elements appear in a given Original Teardown Artwork.

84. For each of these exemplary protectible elements, the original creative decisions of dbrand's artists were made to make the Original Teardown Artworks more visually pleasing. The Original Teardown Artworks are purely aesthetic and have no intrinsic utilitarian function.

85. The original creative decisions of dbrand's artists render each of these exemplary protectible elements aesthetically different than any similar elements in other works. For example, the unique expressions of the magnetic charging coils created by dbrand's artists for its Pixel and iPhone series incorporate significant creative decisions and are substantially different and more visually appealing than the magnetic charging coils from the corresponding physical devices:

  



To create each of its Infringing Teardown Images, Casetify did not engage in a creative process like dbrand's artists. Casetify did not take a creative photograph, generating a unique expression of a device's internals. Casetify did not create new and creative elements from scratch to make its works more unique and visually appealing. Casetify did not create its own expression of device internals. Instead, Casetify tried to circumvent the creative process and all the associated time, effort, and expense, by **directly copying *dbrand's* original expression** of a device internals.

86. Every phone case, tablet case, and computer case in Casetify's Inside Out line incorporates direct, unauthorized copies of dbrand's Original Teardown Artworks and is included in the definition of Infringing Teardowns. *See* Exhibits G and H.

87. On information and belief, Casetify created the Infringing Teardowns by first downloading and/or creating "screenshots" of original, unedited copies of the Original Teardown Images from the dbrand website. Casetify's copying and use of the Original Teardown Images to create the Infringing Teardowns is unauthorized and therefore infringing.

88. On information and belief, Casetify next digitally adds components to, and/or removes components from, its infringing copies of the Original Teardown Images to create the

final Infringing Teardowns. Each unauthorized copy of the Original Teardown Images and each copy of the Infringing Teardowns constitutes a separate instance of copyright infringement.

89.     Casetify's infringement is evident upon inspection of the Infringing Teardowns, which reveals that many of dbrand's Easter Eggs are found on the infringing copies:





90.     In addition to unintentionally copying many of dbrand's Easter Eggs, Casetify also left other evidence of its blatant copyright theft in the Infringing Teardowns.  In one instance, for example, the unauthorized copy of the Original Teardown Image used by Casetify incorporates camera lens graphics that were created by dbrand's team of artists. These original graphics are found **only** in dbrand's Original Teardown Image. The fact that Casetify's Infringing Teardown incorporates a feature that is **only present** in dbrand's Original Teardown Image further proves that Casetify incorporates direct, unauthorized copies of dbrand's Original Teardown Images to create the Infringing Teardowns:

 

91.    In addition to directly copying the Original Teardown Images from the dbrand website and using them to create the Infringing Teardowns, Casetify uses digital copies of the images underlying the Infringing Teardowns on its website, social media, and in other advertising to promote its products (the "Infringing Teardown Images").  The Infringing Teardown Images and the Infringing Teardowns are collectively referred to herein as the "Infringing Teardown Copies."

92.    Casetify's Infringing Teardowns identified by SKUs 16000206, 16000086, and 16000092, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing iPhone 11 Series") and SKUs 16003471, 16004743, 16005988, 16004742, 16004399, 16004400, 16004724, 16004725, 16004726, 16004727, 16004732, 16004733, 16004734, 16004735, 16004740, 16004741, 16003438, 16003460, 16005967, 16003536, 16003537, 16003538, 16003539, 16003767, 16003768, 16003769, 16003770, 16004397, 16004398, 16001566, 16001655, 16001659, 16001663, 16001667, 16002699, 16002700, 16002701,

16002702, 16003262, 16003282, 16004749, 16004750, 16004751, 16004760, 16004761, 16004762, 16004763, 16004772, 16004773, 16004774, 16004775, 16004812, 16004813, 16004814, 16004815, 16005140, 16005141, 16005142, 16005143, 16005144, 16005145, 16005964, 16005970, 16005973, 16005976, 16005979, 16005982, 16005985, 16005986, 16005987, 16005989, 16005992, 16005995, 16005996, 16005999, 16006002, 16006005, 16006008, 16006152, 16006153, 16005961, and 16005924 (collectively, the "Infringing iPhone 12, 13, and 14 Series") incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 2 (the "Original iPhone Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16004965 and 16006201, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing Z Flip Series") incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at pp. 17-19 (collectively, the "Original Z Flip Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16006209 and 16004967, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing Z Fold Series") incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at pp. 17 and 19 (collectively, the "Original Z Fold Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16005659, 16005661, and 16005660, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing S23 Series"), incorporate direct copies of dbrand's Original Teardown Image shown in Exhibit A at p. 16 and 17 (collectively, the "Original S23 Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16004158, 16005646, 16005647, 16004159, 280200, 280300, 284000, 2812400, 16001831, 16004535, and 16005427, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing MacBook Series") incorporate direct copies of at least dbrand's

29

Original Teardown Image shown in Exhibit A at p. 14 (the "Original MacBook Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16005645, 16002092, 16005425, 16005643, 16005644, 16001237, and 16005429, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing iPad Series") incorporate direct copies of at least dbrand's Original Teardown Image shown in Exhibit A at p. 31 (the "Original iPad Teardown Artwork"); Casetify's Infringing Teardowns identified by SKUs 16004959, 16004960, 16005838, and 16005839, and all copies of the underlying Infringing Teardown Images (collectively, the "Infringing Pixel Series") incorporate direct copies of at least dbrand's Original Teardown Image shown in Exhibit A at pp. 29 and 30 (collectively, the "Original Pixel Teardown Artwork").[1]

93.     Below are examples showing the portions of Casetify's Infringing Teardown Copies taken from dbrand's Original Teardown Images. The elements copied by Casetify are shown in green:



**MacBook Series**

---

[1] dbrand's investigation into Casetify's infringement, including which portions of which Original Teardown Images were copied by Casetify to create the corresponding Infringing Teardown Copies, is ongoing.



**Galaxy S23 Series**    **Galaxy Z Flip Series**    **Galaxy Z Fold Series**

**iPhone 11 Series**    **iPhone 12, 13, and 14 Series**    **Pixel Series**

**iPad Series**

94.     In addition to infringing dbrand's copyrights in the Original Teardown Artworks

by copying, selling, displaying, distributing, and advertising the Infringing Teardown Copies and

unauthorized copies of the Original Teardown Images, Casetify has removed, altered, and falsified copyright management information ("CMI") used in connection with these works.

95.     As defined by statute, "'copyright management information' means, [*inter alia*], any of the following information conveyed in connection with copies . . . of a work . . . or displays of a work, including in digital form":

    (1) The title and other information identifying the work, including the information set forth on a notice of copyright.

    (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

    (7) Identifying numbers or symbols referring to such information or links to such information.

17 U.S.C. § 1202(c).

96.     "[A] complaining party may elect to recover an award of statutory damages for **each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B).  "[T]he removal of copyright management information and the addition of false copyright management information [are] two separate violative acts." *Notte, v. New Sushi LLC*, No. 22-CV-6394, 2024 WL 706783, at *4 (D.N.J. Feb. 20, 2024).  "Moreover, each time the work is wrongfully distributed constitutes its own discrete violative act, *i.e.*, wrongfully distributing a work ten times amounts to ten violative acts."  *Id.* at *3; *see also Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, No. 13-C-560, 2016 WL 5794746, at *3 (E.D. Wis. Oct. 4, 2016) ("if the Defendants shared the same image *multiple times,* that would be multiple acts in violation of the DMCA") (emphasis in original).

97.     As alleged herein, many of the dbrand Easter Eggs constitute CMI, including the references to dbrand's founding date and the use of dbrand's ROBOT persona, because they are

"identifying information about the copyright owner of the work." The "db" mark and corresponding "db" logo are also CMI, because they are trademark-protected marks used in commerce as shorthand for dbrand. The dbrand QR codes (i.e. "symbols referring to [identifying] information or links to [identifying] information") are used by consumers to identify the source of dbrand's products and are also CMI. Indeed, the general consuming public uses QR codes to identify products in nearly every class of goods.

98.     Additional CMI for the Original Teardown Images on dbrand's webpages includes:

- The titles of the works (i.e. "Teardowns");

- The file names for the Original Teardown Images (*e.g.* "teardown-gloss_0.jpg");

- dbrand's name and logos used on the webpages for the Original Teardown Images;

- dbrand's URLs for the webpages for the Original Teardown Images;

- dbrand's use of the copyright registration symbol "©" on the webpages for the Original Teardown Images;

*See* Exhibits C-E. dbrand's CMI is collectively referred to herein as the "Original CMI."

99.     For every Infringing Teardown Copy, Casetify removed or altered dbrand's Original CMI. Casetify removed most of dbrand's Easter Eggs, many of which serve as source-identifiers for dbrand and its products. For all of the Easter Eggs that Casetify failed to remove, the Easter Eggs were substantially altered through the poor image quality of the Infringing Teardown Copies, such that they are barely recognizable.

100.    Casetify similarly altered dbrand's trademark-protected logo, which directly identifies dbrand:



101.    Casetify also removed dbrand's QR codes, which are digital signatures used to identify dbrand's products, including the Original Teardown Artworks:



102.    For the unauthorized copies of the Original Teardown Images that it stole from dbrand's website, Casetify also removed dbrand's name, logos, file names, titles, URLs, and use of the copyright registration symbol "©" that dbrand uses in connection with the original works.

103.    In addition to removing and altering dbrand's Original CMI, Casetify also added false CMI used in connection with its unauthorized copies of the Original Teardown Artworks ("False CMI").  For example, Casetify replaced dbrand's QR codes with QR codes for Casetify:

 

**dbrand's QR Code**                    **Casetify's QR Code**

104.    Indeed, on every Infringing Teardown Copy, Casetify includes its full name, and in most instances also includes an abbreviated form of its name, in multiple locations. Every Infringing Teardown Copy also contains one of two QR codes for Casetify, which direct users to either https://www.qrfy.com/IT2a43524dQR or https://www.qrfy/com/Fpy-pZDpiJ. These links are currently deactivated, but before dbrand notified Casetify that it had uncovered Casetify's copyright theft, these links redirected to Casetify's website.



*See also* Exhibit F.

105.    Every Infringing Teardown comes from Casetify with a verification label

35

physically connected to it.  As shown below, one side of this verification label includes the text: "CASETIFY - AUTHENTIC - VERIFIED."  The reverse side of the verification label includes a QR code (which redirects to Casetify's website) and encourages consumers to "SCAN TO VERIFY" that the Infringing Teardown is an authentic "CASETIFY" product:



106.    For the Infringing Teardown Images that Casetify displays on its website, social media, and other promotional materials, Casetify's False CMI also includes Casetify's name, logos, file names, titles (i.e. "Inside Out"), URLs, and use of the copyright registration symbol "©" that Casetify uses in connection with the Infringing Teardown Images.  *See* Exhibits G-H.

107.    It was expensive and time consuming for dbrand to create the Original Teardown Artworks—comprising tens of thousands of hours of labor from dbrand's professional photographers, artists, and other creators.

108.    On information and belief, executives for Casetify, including executives for both Casetagram, Westside, and Westrock, and including at least Wesley Ng, knowingly sought to bypass this expense while still deriving the financial benefits of the Original Teardown Artworks by willfully infringing dbrand's copyrights in the Original Teardown Artworks.

109.    On information and belief, at least Wesley Ng and the designers of the Infringing Teardown Copies had full knowledge of Casetify's infringements of dbrand's copyrights in the Original Teardown Artworks.

36

110.    On information and belief, at least Wesley Ng purposefully directed Casetify employees to use unauthorized copies of the Original Teardown Images from the dbrand website, dbrand social media, and dbrand sponsored advertisements, and to use these unauthorized copies to create the Infringing Teardown Copies.

111.    On information and belief, at least Wesley Ng and the designers of the Infringing Teardown Copies knew that Casetify could not get away with such a massive scale of infringement and other misconduct if dbrand's CMI was used in connection with the Infringing Teardown Copies, and so Wesley Ng and the designers of the Infringing Teardown Copies purposefully and intentionally caused the CMI associated with the Infringing Teardown Copies to be removed, altered, and falsified with the fraudulent intent to conceal Casetify's infringements from dbrand, Casetify's own customers, and other third parties.

112.    On information and belief, at least Wesley Ng and the designers of the Infringing Teardown Copies knowingly and intentionally caused the image quality of commercial copies of the Infringing Teardown Copies to be lowered to make it more difficult for dbrand, Casetify's own customers, and other third parties to discover that every Infringing Teardown Copy incorporates an identical, unauthorized copy of an Original Teardown Image, and to further conceal any remaining Original CMI that Casetify failed to remove from the Infringing Teardown Copies.

113.    dbrand has been harmed by Casetify's infringements and other misconduct as alleged herein in the form of lost sales, lost market share, decreased goodwill, and a decreased ability to distinguish itself from Casetify and other competitors. Casetify, on the other hand, has been unjustly enriched through infringing sales and the promotion and legitimization of its business associated with its use of the Infringing Teardown Copies.

114.    On information and belief, Casetify imports its products into the United States, including digital and physical copies of the Infringing Teardown Copies, and including through Casetagram, Westrock, and Westside.

115.    On information and belief, Westrock and Westside are U.S. entities created, incorporated, owned, and controlled by Casetify and/or executives for Casetify, including at least Ronald Yeung (Casetify's co-founder, managing director, and corporate secretary) and Wesley Ng (Casetify's co-founder and CEO).

116.    On information and belief, for Infringing Teardowns sold on the Casetify website, Casetify imports these products into the United States and then directly distributes them to purchasing consumers.

117.    On information and belief, for Infringing Teardowns sold to third-party Best Buy, Casetify imports these products into the United States and then distributes them to Best Buy locations nationwide via Westrock and Westside. On information and belief, Best Buy further distributes some these products, including to other Best Buy locations nationwide and directly to purchasing consumers.

**<u>FIRST CLAIM FOR RELIEF</u>**
**17 U.S.C. § 1202(b) – Direct Liability**
**Infringing MacBook Series**

***Against Defendants Casetagram, Westside, and Westrock***

118.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

119.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original MacBook Teardown Artwork, which are creative works of original authorship and

inherently entitled to copyright protection.

120. To create the Infringing MacBook Series, Casetify copied constituent elements from the Original MacBook Teardown Artwork that are original to dbrand. Indeed, underlying every infringing MacBook Series is an original, unauthorized copy of one of dbrand's Original MacBook Teardown Artworks.

121. Each of the Infringing MacBook Series is virtually identical to the Original MacBook Teardown Artwork.

122. In creating each of the Infringing MacBook Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original MacBook Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original MacBook Teardown Artwork in the United States.

123. On information and belief, Casetify imported copies of the Infringing MacBook Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

124. Casetify further distributed copies of the Infringing MacBook Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

125. Every copy of the Infringing MacBook Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**SECOND CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing MacBook Series**

*Against Defendant Casetagram*

126.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-125 as if fully set forth herein.

127.    Casetagram has caused others to distribute copies of the Infringing MacBook Series within the United States, including Westside and Westrock.

128.    On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing MacBook Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

129.    On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing MacBook Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing MacBook Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

130.    On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing MacBook Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing MacBook Series that was distributed by Westside and Westrock.

131.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing MacBook Series in the United States.

**THIRD CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing MacBook Series**

***Against Defendants Casetagram, Westside, and Westrock***

132.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-125 as if fully set forth herein.

133.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing MacBook Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original MacBook Teardown Artwork in the United States.

134.    Casetify also imported copies of the Infringing MacBook Series, bearing Casetify's false CMI, into the United States.

135.    Casetify also distributed copies of the Infringing MacBook Series, bearing Casetify's false CMI, in the United States.

136.    Every copy of the Infringing MacBook Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

## FOURTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Secondary Liability
### Infringing MacBook Series

### *Against Defendant Casetagram*

137.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-136 as if fully set forth herein.

138.     On information and belief, Casetagram has caused others to distribute copies of the Infringing MacBook Series within the United States, knowing that those copies of the Infringing MacBook Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

139.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing MacBook Series in the United States.

## FIFTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(b) – Direct Liability
### Infringing Z Flip Series

### *Against Defendants Casetagram, Westside, and Westrock*

140.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

141.     dbrand owns all copyrights in the Original Teardown Artworks, including the Original Z Flip Teardown Artwork, which are creative works of original authorship and inherently entitled to copyright protection.

142.     To create the Infringing Z Flip Series, Casetify copied constituent elements from the Original Z Flip Teardown Artwork that are original to dbrand. Indeed, underlying every

infringing Z Flip Series is an original, unauthorized copy of one of dbrand's Original Z Flip Teardown Artworks.

143.    Each of the Infringing Z Flip Series is virtually identical to the Original Z Flip Teardown Artwork.

144.    In creating each of the Infringing Z Flip Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original Z Flip Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Flip Teardown Artwork in the United States.

145.    On information and belief, Casetify imported copies of the Infringing Z Flip Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

146.    Casetify further distributed copies of the Infringing Z Flip Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

147.    Every copy of the Infringing Z Flip Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**SIXTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing Z Flip Series**

*Against Defendant Casetagram*

148.    dbrand incorporates preceding paragraphs 1-15, 19-39, 44-117, and 140-147 as if fully set forth herein.

149.     Casetagram has caused others to distribute copies of the Infringing Z Flip Series within the United States, including Westside and Westrock.

150.     On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing Z Flip Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

151.     On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing Z Flip Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing Z Flip Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

152.     On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing Z Flip Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing Z Flip Series that was distributed by Westside and Westrock.

153.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Flip Series in the United States.

44

**SEVENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing Z Flip Series**

*Against Defendants Casetagram, Westside, and Westrock*

154.    dbrand incorporates preceding paragraphs 1-15, 19-39, 44-117, and 140-147 as if fully set forth herein.

155.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing Z Flip Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Flip Teardown Artwork in the United States.

156.    Casetify also imported copies of the Infringing Z Flip Series, bearing Casetify's false CMI, into the United States.

157.    Casetify also distributed copies of the Infringing Z Flip Series, bearing Casetify's false CMI, in the United States.

158.    Every copy of the Infringing Z Flip Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

**EIGHTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Secondary Liability**
**Infringing Z Flip Series**

*Against Defendant Casetagram*

159.    dbrand incorporates preceding paragraphs 1-15, 19-39, 44-117, 140-158 as if fully set forth herein.

160.    On information and belief, Casetagram has caused others to distribute copies of the Infringing Z Flip Series within the United States, knowing that those copies of the Infringing Z Flip Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

161.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Flip Series in the United States.

### NINTH CLAIM FOR RELIEF
**17 U.S.C. § 1202(b) – Direct Liability**
**Infringing Z Fold Series**

*Against Defendants Casetagram, Westside, and Westrock*

162.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

163.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original Z Fold Teardown Artwork, which are creative works of original authorship and inherently entitled to copyright protection.

164.    To create the Infringing Z Fold Series, Casetify copied constituent elements from the Original Z Fold Teardown Artwork that are original to dbrand. Indeed, underlying every infringing Z Fold Series is an original, unauthorized copy of one of dbrand's Original Z Fold Teardown Artworks.

165.    Each of the Infringing Z Fold Series is virtually identical to the Original Z Fold Teardown Artwork.

166.    In creating each of the Infringing Z Fold Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original Z Fold Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Fold Teardown Artwork in the United States.

167.    On information and belief, Casetify imported copies of the Infringing Z Fold Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

168.    Casetify further distributed copies of the Infringing Z Fold Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

169.    Every copy of the Infringing Z Fold Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**TENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing Z Fold Series**

*Against Defendant Casetagram*

170.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 162-169 as if fully set forth herein.

171.    Casetagram has caused others to distribute copies of the Infringing Z Fold Series within the United States, including Westside and Westrock.

172.    On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing Z Fold Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

173.    On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing Z Fold Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing Z Fold Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

174.    On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing Z Fold Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing Z Fold Series that was distributed by Westside and Westrock.

175.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Fold Series in the United States.

## ELEVENTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Direct Liability
### Infringing Z Fold Series

### *Against Defendants Casetagram, Westside, and Westrock*

176.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 162-169 as if fully set forth herein.

177.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing Z Fold Series. On information and belief,

Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Fold Teardown Artwork in the United States.

178.    Casetify also imported copies of the Infringing Z Fold Series, bearing Casetify's false CMI, into the United States.

179.    Casetify also distributed copies of the Infringing Z Fold Series, bearing Casetify's false CMI, in the United States.

180.    Every copy of the Infringing Z Fold Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

**TWELFTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Secondary Liability**
**Infringing Z Fold Series**

*Against Defendant Casetagram*

181.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 162-180 as if fully set forth herein.

182.    On information and belief, Casetagram has caused others to distribute copies of the Infringing Z Fold Series within the United States, knowing that those copies of the Infringing Z Fold Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

183.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Fold Series in the United States.

<u>THIRTEENTH CLAIM FOR RELIEF</u>
**17 U.S.C. § 1202(b) – Direct Liability**
**Infringing Z Fold Series**

***Against Defendants Casetagram, Westside, and Westrock***

184.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

185.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original Z Fold Teardown Artwork, which are creative works of original authorship and inherently entitled to copyright protection.

186.    To create the Infringing Z Fold Series, Casetify copied constituent elements from the Original Z Fold Teardown Artwork that are original to dbrand. Indeed, underlying every infringing Z Fold Series is an original, unauthorized copy of one of dbrand's Original Z Fold Teardown Artworks.

187.    Each of the Infringing Z Fold Series is virtually identical to the Original Z Fold Teardown Artwork.

188.    In creating each of the Infringing Z Fold Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original Z Fold Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Fold Teardown Artwork in the United States.

189.    On information and belief, Casetify imported copies of the Infringing Z Fold Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

190.     Casetify further distributed copies of the Infringing Z Fold Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

191.     Every copy of the Infringing Z Fold Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**FOURTEENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing Z Fold Series**

***Against Defendant Casetagram***

192.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 184-191 as if fully set forth herein.

193.     Casetagram has caused others to distribute copies of the Infringing Z Fold Series within the United States, including Westside and Westrock.

194.     On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing Z Fold Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

195.     On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing Z Fold Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing Z Fold Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

196.     On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing Z Fold Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing Z Fold Series that was distributed by Westside and Westrock.

197.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Fold Series in the United States.

**FIFTEENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing Z Fold Series**

*Against Defendants Casetagram, Westside, and Westrock*

198.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 184-191 as if fully set forth herein.

199.     Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing Z Fold Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original Z Fold Teardown Artwork in the United States.

200.     Casetify also imported copies of the Infringing Z Fold Series, bearing Casetify's false CMI, into the United States.

201.     Casetify also distributed copies of the Infringing Z Fold Series, bearing Casetify's false CMI, in the United States.

202.    Every copy of the Infringing Z Fold Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

## SIXTEENTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Secondary Liability
### Infringing Z Fold Series

### *Against Defendant Casetagram*

203.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 184-202 as if fully set forth herein.

204.    On information and belief, Casetagram has caused others to distribute copies of the Infringing Z Fold Series within the United States, knowing that those copies of the Infringing Z Fold Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

205.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Z Fold Series in the United States.

## SEVENTEENTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(b) – Direct Liability
### Infringing iPad Series

### *Against Defendants Casetagram, Westside, and Westrock*

206.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

207.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original iPad Teardown Artwork, which are creative works of original authorship and inherently

entitled to copyright protection.

208.     To create the Infringing iPad Series, Casetify copied constituent elements from the Original iPad Teardown Artwork that are original to dbrand. Indeed, underlying every infringing iPad Series is an original, unauthorized copy of one of dbrand's Original iPad Teardown Artworks.

209.     Each of the Infringing iPad Series is virtually identical to the Original iPad Teardown Artwork.

210.     In creating each of the Infringing iPad Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original iPad Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPad Teardown Artwork in the United States.

211.     On information and belief, Casetify imported copies of the Infringing iPad Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

212.     Casetify further distributed copies of the Infringing iPad Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

213.     Every copy of the Infringing iPad Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**EIGHTEENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing iPad Series**

*Against Defendant Casetagram*

214.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 206-213 as

if fully set forth herein.

215. Casetagram has caused others to distribute copies of the Infringing iPad Series within the United States, including Westside and Westrock.

216. On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing iPad Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

217. On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing iPad Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing iPad Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

218. On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing iPad Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing iPad Series that was distributed by Westside Westrock.

219. For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing iPad Series in the United States.

## NINETEENTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Direct Liability
### Infringing iPad Series

#### *Against Defendants Casetagram, Westside, and Westrock*

220.    dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 206-213 as if fully set forth herein.

221.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing iPad Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPad Teardown Artwork in the United States.

222.    Casetify also imported copies of the Infringing iPad Series, bearing Casetify's false CMI, into the United States.

223.    Casetify also distributed copies of the Infringing iPad Series, bearing Casetify's false CMI, in the United States.

224.    Every copy of the Infringing iPad Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

## TWENTIETH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Secondary Liability
### Infringing iPad Series

#### *Against Defendant Casetagram*

225.    dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 206-224 as if fully set forth herein.

56

226.    On information and belief, Casetagram has caused others to distribute copies of the Infringing iPad Series within the United States, knowing that those copies of the Infringing iPad Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

227.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing iPad Series in the United States.

**TWENTY-FIRST CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Direct Liability**
**Infringing Pixel Series**

***Against Defendants Casetagram, Westside, and Westrock***

228.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

229.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original Pixel Teardown Artwork, which are creative works of original authorship and inherently entitled to copyright protection.

230.    To create the Infringing Pixel Series, Casetify copied constituent elements from the Original Pixel Teardown Artwork that are original to dbrand. Indeed, underlying every infringing Pixel Series is an original, unauthorized copy of one of dbrand's Original Pixel Teardown Artworks.

231.    Each of the Infringing Pixel Series is virtually identical to the Original Pixel Teardown Artwork.

232.    In creating each of the Infringing Pixel Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original Pixel Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original Pixel Teardown Artwork in the United States.

233.    On information and belief, Casetify imported copies of the Infringing Pixel Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

234.    Casetify further distributed copies of the Infringing Pixel Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

235.    Every copy of the Infringing Pixel Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

<u>TWENTY-SECOND CLAIM FOR RELIEF</u>
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing Pixel Series**

*Against Defendant Casetagram*

236.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 228-235 as if fully set forth herein.

237.    Casetagram has caused others to distribute copies of the Infringing Pixel Series within the United States, including Westside and Westrock.

238.    On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing Pixel Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

58

239.    On information and belief, Casetify had the power to prevent Westside and Westrock from distributing copies of the Infringing Pixel Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside and Westrock to distribute copies of the Infringing Pixel Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

240.    On information and belief, Casetagram derived direct financial benefit from each distribution by Westside and Westrock as those distributions were necessary to deliver the Infringing Pixel Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing Pixel Series that was distributed by Westside and Westrock.

241.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside and Westrock, for causing them to distribute copies of the Infringing Pixel Series in the United States.

### TWENTY-THIRD CLAIM FOR RELIEF
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing Pixel Series**

*Against Defendants Casetagram, Westside, and Westrock*

242.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 228-235 as if fully set forth herein.

243.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing Pixel Series. On information and belief,

Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original Pixel Teardown Artwork in the United States.

244.     Casetify also imported copies of the Infringing Pixel Series, bearing Casetify's false CMI, into the United States.

245.     Casetify also distributed copies of the Infringing Pixel Series, bearing Casetify's false CMI, in the United States.

246.     Every copy of the Infringing Pixel Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

**TWENTY-FOURTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Secondary Liability**
**Infringing Pixel Series**

***Against Defendant Casetagram***

247.     dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 228-246 as if fully set forth herein.

248.     On information and belief, Casetagram has caused others to distribute copies of the Infringing Pixel Series within the United States, knowing that those copies of the Infringing Pixel Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

249.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside and Westrock for causing them to distribute copies of the Infringing Pixel Series in the United States.

## TWENTY-FIFTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(b) – Direct Liability
### Infringing iPhone 11 Series

### *Against Defendants Casetagram, Westside, and Westrock*

250.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

251.    dbrand owns all copyrights in the Original Teardown Artworks, including the Original iPhone 11 Teardown Artwork, which are creative works of original authorship and inherently entitled to copyright protection.

252.    To create the Infringing iPhone 11 Series, Casetify copied constituent elements from the Original iPhone 11 Teardown Artwork that are original to dbrand. Indeed, underlying every infringing iPhone 11 Series is an original, unauthorized copy of one of dbrand's Original iPhone 11 Teardown Artworks.

253.    Each of the Infringing iPhone 11 Series is virtually identical to the Original iPhone 11 Teardown Artwork.

254.    In creating each of the Infringing iPhone 11 Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original iPhone 11 Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPhone 11 Teardown Artwork in the United States.

255.    On information and belief, Casetify imported copies of the Infringing iPhone 11 Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

256.    Casetify further distributed copies of the Infringing iPhone 11 Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

257.    Every copy of the Infringing iPhone 11 Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

### TWENTY-SIXTH CLAIM FOR RELIEF
### 17 U.S.C. § 1202(b) – Secondary Liability
### Infringing iPhone 11 Series

#### *Against Defendant Casetagram*

258.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 250-257 as if fully set forth herein.

259.    Casetagram has caused others to distribute copies of the Infringing iPhone 11 Series within the United States, including Westside, Westrock and third-party Best Buy.

260.    On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing iPhone 11 Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

261.    On information and belief, Casetify had the power to prevent Westside, Westrock, and Best Buy from distributing copies of the Infringing iPhone 11 Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside, Westrock, and Best Buy to distribute copies of the Infringing iPhone 11 Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

262.     On information and belief, Casetagram derived direct financial benefit from each distribution by Westside, Westrock, and Best Buy as those distributions were necessary to deliver the Infringing iPhone 11 Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing iPhone 11 Series that was distributed by Westside, Westrock, and Best Buy.

263.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside, Westrock, and Best Buy, for causing them to distribute copies of the Infringing iPhone 11 Series in the United States.

**TWENTY-SEVENTH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing iPhone 11 Series**

*Against Defendants Casetagram, Westside, and Westrock*

264.     dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 250-257 as if fully set forth herein.

265.     Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing iPhone 11 Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPhone 11 Teardown Artwork in the United States.

266.     Casetify also imported copies of the Infringing iPhone 11 Series, bearing Casetify's false CMI, into the United States.

267.     Casetify also distributed copies of the Infringing iPhone 11 Series, bearing Casetify's false CMI, in the United States.

268.     Every copy of the Infringing iPhone 11 Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

### TWENTY-EIGHTH CLAIM FOR RELIEF
**17 U.S.C. § 1202(a) – Secondary Liability**
**Infringing iPhone 11 Series**

*Against Defendant Casetagram*

269.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 250-268 as if fully set forth herein.

270.     On information and belief, Casetagram has caused others to distribute copies of the Infringing iPhone 11 Series within the United States, knowing that those copies of the Infringing iPhone 11 Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

271.     For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside, Westrock, and Best Buy, for causing them to distribute copies of the Infringing iPhone 11 Series in the United States.

### TWENTY-NINTH CLAIM FOR RELIEF
**17 U.S.C. § 1202(b) – Direct Liability**
**Infringing iPhone 12, 13, and 14 Series**

*Against Defendants Casetagram, Westside, and Westrock*

272.     dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117 as if fully set forth herein.

273.     dbrand owns all copyrights in the Original Teardown Artworks, including the Original iPhone 12, 13, and 14 Teardown Artwork, which are creative works of original authorship

64

and inherently entitled to copyright protection.

274. To create the Infringing iPhone 12, 13, and 14 Series, Casetify copied constituent elements from the Original iPhone 12, 13, and 14 Teardown Artwork that are original to dbrand. Indeed, underlying every infringing iPhone 12, 13, and 14 Series is an original, unauthorized copy of one of dbrand's Original iPhone 12, 13, and 14 Teardown Artworks.

275. Each of the Infringing iPhone 12, 13, and 14 Series is virtually identical to the Original iPhone 12, 13, and 14 Teardown Artwork.

276. In creating each of the Infringing iPhone 12, 13, and 14 Series, Casetify knowingly removed and altered dbrand's original CMI used on and in connection with the Original iPhone 12, 13, and 14 Teardown Artwork. On information and belief, Casetify did so with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPhone 12, 13, and 14 Teardown Artwork in the United States.

277. On information and belief, Casetify imported copies of the Infringing iPhone 12, 13, and 14 Series into the United States, knowing that dbrand's CMI had been removed and altered without authorization.

278. Casetify further distributed copies of the Infringing iPhone 12, 13, and 14 Series within the United States, knowing that dbrand's CMI had been removed and altered without authorization.

279. Every copy of the Infringing iPhone 12, 13, and 14 Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(b) for the removal and alteration of CMI.

**THIRTIETH CLAIM FOR RELIEF**
**17 U.S.C. § 1202(b) – Secondary Liability**
**Infringing iPhone 12, 13, and 14 Series**

*Against Defendant Casetagram*

280.    dbrand incorporates preceding paragraphs 1-15, 19-39, and 44-117, and 272-279 as if fully set forth herein.

281.    Casetagram has caused others to distribute copies of the Infringing iPhone 12, 13, and 14 Series within the United States, including Westside, Westrock, and third-party Best Buy.

282.    On information and belief, Casetify had supervision and control over Westside's and Westrock's distribution of copies of the Infringing iPhone 12, 13, and 14 Series, including through its top executives Ronald Yeung, Wesley Ng, Sharon Lam, and Mike Jia.

283.    On information and belief, Casetify had the power to prevent Westside, Westrock, and Best Buy from distributing copies of the Infringing iPhone 12, 13, and 14 Series in the United States, but failed to do so. To the contrary, on information and belief, Casetagram actively encouraged Westside, Westrock, and Best Buy to distribute copies of the Infringing iPhone 12, 13, and 14 Series in the United States, including by providing them with copies thereof and, at least for Westrock, directing them on where they should be distributed.

284.    On information and belief, Casetagram derived direct financial benefit from each distribution by Westside, Westrock, and Best Buy as those distributions were necessary to deliver the Infringing iPhone 12, 13, and 14 Series products to purchasers and to complete the transactions initiated by Casetagram, and because Casetagram received payment for each copy of the Infringing iPhone 12, 13, and 14 Series that was distributed by Westside, Westrock, and Best Buy.

285.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(b) for vicarious liability on behalf of Westside and Westrock, and contributory liability on behalf of Westside, Westrock, and Best Buy, for causing them to distribute copies of the Infringing iPhone 12, 13, and 14 Series in the United States.

### THIRTY-FIRST CLAIM FOR RELIEF
**17 U.S.C. § 1202(a) – Direct Liability**
**Infringing iPhone 12, 13, and 14 Series**

***Against Defendants Casetagram, Westside, and Westrock***

286.    dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 272-279 as if fully set forth herein.

287.    Casetify provided false Casetify CMI on and in connection with each of its Infringing Teardown Copies, including the Infringing iPhone 12, 13, and 14 Series. On information and belief, Casetify did so knowingly and with the intent to induce, enable, facilitate, and conceal its infringements of the Original iPhone 12, 13, and 14 Teardown Artwork in the United States.

288.    Casetify also imported copies of the Infringing iPhone 12, 13, and 14 Series, bearing Casetify's false CMI, into the United States.

289.    Casetify also distributed copies of the Infringing iPhone 12, 13, and 14 Series, bearing Casetify's false CMI, in the United States.

290.    Every copy of the Infringing iPhone 12, 13, and 14 Series that was imported and/or distributed into the United States by or on behalf of Casetify constitutes a separate violation of 17 U.S.C. § 1202(a) for the falsification of CMI.

## THIRTY-SECOND CLAIM FOR RELIEF
### 17 U.S.C. § 1202(a) – Secondary Liability
### Infringing iPhone 12, 13, and 14 Series

### *Against Defendant Casetagram*

291.    dbrand incorporates preceding paragraphs  1-15, 19-39, and 44-117, and 272-290 as if fully set forth herein.

292.    On information and belief, Casetagram has caused others to distribute copies of the Infringing iPhone 12, 13, and 14 Series within the United States, knowing that those copies of the Infringing iPhone 12, 13, and 14 Series bear false Casetify CMI in violation of 17 U.S.C. § 1202(a).

293.    For the foregoing reasons, Casetagram is secondarily liable under 17 U.S.C. § 1202(a) for vicarious liability on behalf of Westside and Westrock and contributory liability on behalf of Westside, Westrock, and Best Buy, for causing them to distribute copies of the Infringing iPhone 12, 13, and 14 Series in the United States.

## DEMAND FOR JURY TRIAL

dbrand hereby demands a jury trial with respect to all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, dbrand respectfully prays that the Court enter judgment in its favor and award the following relief against Casetify:

A.    A judgment that Casetify removed and altered dbrand's CMI used in connection with the Infringing Teardown Copies, and further imported, distributed, and caused others to distribute the Infringing Teardown Copies within the United States with dbrand's CMI removed and altered;

B.      A judgment that Casetify falsified its own CMI used in connection with the Infringing Teardown Copies, and further imported, distributed, and caused others to distribute the Infringing Teardown Copies within the United States bearing Casetify's false CMI;

C.      A judgment that Casetify's CMI violations as alleged herein were done knowingly and with the intent to conceal its copyright infringement;

D.      A judgment that dbrand is entitled to either its actual damages and Casetify's profits attributable to Casetify's CMI violations, in an amount to be proved at trial pursuant to 17 U.S.C. § 1203(c)(2), or at dbrand's election, statutory damages as provided in 17 U.S.C. § 1203(c)(3);

E.      A judgment that dbrand is entitled to recover its costs in this action pursuant to 17 U.S.C. §§ 505 and 1203(b)(4);

F.      A judgment that dbrand is entitled to recover its reasonable attorneys' fees in this action pursuant to 17 U.S.C. §§ 505 and 1203(b)(5);

G.      Pursuant to 17 U.S.C. §§ 502(a) and 1203(b)(1), an order enjoining Casetify and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, successors, and assigns, and any persons acting in privity or in concert with any of them, from further infringing dbrand's copyrights and from committing any CMI violations against dbrand;

H.      Any other and further relief as this court deems appropriate in law and in equity.

DATED April 25, 2025.

Respectfully submitted,

By /s/ *Collin D. Hansen*

    Collin D. Hansen (ARDC#: 6335991)
    Email: chansen@wnlaw.com
    **WORKMAN NYDEGGER**
    840 S Northwest Hwy, Suite 10
    Barrington, IL 60010
    (801) 322-8464 (Telephone)

    Brian N. Platt (*pro hac vice*)
    Email: bplatt@wnlaw.com
    Kenneth J. Dyer (*pro hac vice*)
    Email: kdyer@wnlaw.com
    Chad E. Nydegger (*pro hac vice*)
    Email: cnydegger@wnlaw.com
    Ryan J. Morris (*pro hac vice*)
    Email: rmorris@wnlaw.com
    **WORKMAN NYDEGGER**
    60 East South Temple, Suite 1000
    Salt Lake City, UT 84111
    (801) 533-9800 (Telephone)

    *Attorneys for Plaintiff dbrand inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the April 25, 2025, I caused the foregoing **AMENDED COMPLAINT FOR COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS** to be filed through this Court's electronic filing system, which sent electronic notification of this filing to all counsel of record.

*/s/ Collin D. Hansen*