**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DBRAND INC., a Canadian Corporation,

    *Plaintiff/Counterclaim Defendant*

            v.

CASETAGRAM LIMITED *dba* CASETIFY,
a Hong Kong limited liability company, and
WESTSIDE LAB, INC., a California
corporation, and WESTROCK SERVICES
(WHOLESALE), INC.

    *Defendants/Counterclaimants*.

CASE NO. 24-cv-1919-MMP-MV

**JURY TRIAL DEMANDED**

## DBRAND'S MOTION FOR SANCTIONS

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................2

    A.      Origins of this Lawsuit..............................................................................2

    B.      Casetify's Discovery Violations ................................................................3

        1.      Casetify Destroyed Critical Evidence ............................................3

            a)      Casetify Deleted Key Evidence of the Accused Works from the Internet Archive ................................................................3

            b)      Casetify Destroyed the Design Files for Each Accused Work ................................................................................................4

        2.      Casetify Withheld Critical Evidence ..............................................9

        3.      Casetify Certified False Discovery Responses .............................12

            a)      Casetify Lied About the Identities of the Designers of the Accused Works for Nearly Six Months .........................12

            b)      Casetify Lied About the Source Images for the Accused Works ................................................................................14

            c)      Casetify Lied About the Design Process for the Accused Works ................................................................................14

            d)      Casetify Lied About the Availability of Key Documents..............15

III.    ARGUMENT......................................................................................................16

    A.      Casetify's Egregious Discovery Misconduct Warrants Default Judgment............16

        1.      Default Judgment is Warranted for Casetify's Spoliation .........................17

            a)      Casetify had a duty to preserve evidence.......................................17

            b)      Casetify breached is duty to preserve evidence .............................20

            c)      Casetify's breach resulted from willfulness, bad faith, fault, and an intent to deprive.................................................................21

ii

d)     Casetify's spoliation harmed dbrand ..............................................23

2.     Default Judgment is Warranted Because Casetify Withheld Evidence................................................................................................24

3.     Default Judgment is Warranted Because Casetify Certified False Discovery Responses .....................................................................25

B.     The Court Should Impose Adverse Inferences Against Casetify .........................26

1.     Casetify Copied Constituent Elements of the Original Teardowns. ..........27

2.     Casetify Knowingly Removed and Falsified CMI With the Intent to Conceal Its Infringements. ..........................................................27

C.     The Court Should Preclude Casetify from Presenting Certain Evidence .............28

1.     Casetify Should be Precluded from Presenting Evidence of the Design Process or Source Images for the Accused Works. ......................28

2.     Casetify Should be Precluded from Presenting Evidence of Knowledge and Intent. ................................................................29

D.     The Court Should Award dbrand its Attorney's Fees and Costs. .........................29

1.     dbrand is Entitled to Fees and Costs Caused by Casetify's Misconduct...............................................................................29

2.     dbrand is Entitled to All Fees and Costs in this Action. ...........................30

IV.     CONCLUSION.................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)............................................................................................30

*Commodity Cycles Mgmt. Co. v. Kirsh*,
    825 F.2d 1136 (7th Cir. 1987) ......................................................................17

*Crabtree v. Nat'l Steel Corp.*,
    261 F.3d 715 (7th Cir. 2001) ........................................................................26

*Does v. Chicago*,
    2019 WL 2994532 (N.D. Ill. July 9, 2019)...............................................7, 18

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
    513 F.Supp.3d 839 (N.D. Ill. 2021) .........................................................18, 28

*E.I. du Pont v. Kolon Indus.*,
    803 F.Supp.2d 469 (E.D. Va. 2011) .............................................................28

*EEOC v. Wal-Mart East, L.P.*,
    46 F.4th 587 (7th Cir. 2022) .........................................................................17

*Fuery v. City of Chicago*,
    900 F.3d 450 (7th Cir. 2018) ........................................................................30

*Garrido v. F&M Constr.*,
    2024 WL 3964695 (S.D.N.Y. Aug. 28, 2024).............................................28

*GC2 Inc. v. Int'l Game Tech.*,
    391 F.Supp.3d 828 (N.D. Ill. 2019) .........................................................23, 27

*HM Elecs. v. R.F. Techs.*,
    2015 WL 4714908 (S.D. Cal. Aug. 7, 2015) ...............................................28

*Hollis v. CEVA Logistics U.S., Inc.*,
    603 F.Supp.3d 611 (N.D. Ill. 2022) .........................................................18, 23

*Hurston v. Indiana Gaming Co.*,
    2023 WL 8111460 (7th Cir. Nov. 22, 2023)................................................16

iv

*Kucala Enter., Ltd. v. Auto Wax Co.*,
    2003 WL 21230605 (N.D. Ill. May 27, 2003) ........................................................21

*Marrocco v. Gen. Motors Corp.*,
    966 F.2d 220 (7th Cir. 1992) ........................................................................21, 22

*O'Connor v. Ford Motor Co.*,
    683 F.Supp.3d 793 (N.D. Ill. 2023) ........................................................17, 21, 22

*Pable v. Chicago Transit Auth.*,
    2023 WL 2333414 (N.D. Ill. Mar. 2, 2023)........................................................18, 22

*Perez v. Great Wolf Lodge of the Poconos LLC*,
    2017 WL 34697 (M.D. Pa. Jan. 3, 2017)........................................................24

*Ramirez v. T&H Lemont, Inc.*,
    845 F.3d 772 (7th Cir. 2016) ........................................................................17

*REXA, Inc. v. Chester*,
    42 F.4th 652 (7th Cir. 2022) ........................................................................29

*Rogers v. W. Governors Univ.*,
    2025 WL 561355 (S.D. Ill. Feb. 20, 2025) ........................................................26

*Say it Visually, Inc v. Real Estate Education Company, Inc.*,
    2025 WL 933951 (N.D. Ill. Mar 27, 2025)........................................................26

*Traffix USA, Inc. v. Bay*,
    2022 WL 2046282 (N.D. Ill. June 7, 2022) ........................................................24

*Zbylski v. Douglas County Sch. Dist.*,
    154 F.Supp.3d 1146 (D. Co. 2015)........................................................18

**Statutes**

17 U.S.C. § 1202........................................................................27

17 U.S.C. § 1202(a)–(b)........................................................................23

**Other Authorities**

Local Rule 7.1 ........................................................................1

Fed. R. Civ. P. 26(g) ........................................................................16

Fed. R. Civ. P. 30(b)(6)........................................................................12, 14, 15, 29

Fed. R. Civ. P. 37 ................................................................................................................17, 22

Fed. R. Civ. P. 37(c) ..........................................................................................................16, 24

Fed. R. Civ. P. 37(c)(1) ...........................................................................................................28

Fed. R. Civ. P. 37(c)(1)(C) ................................................................................................24, 25

Fed. R. Civ. P. 37(e) .................................................................................................................16

Fed. R. Civ. P. 37(e)(1) ...........................................................................................................28

Fed. R. Civ. P. 37(e)(1)(C) ......................................................................................................25

Fed. R. Civ. P. 37(e)(2)(A)-(B) ...............................................................................................26

Pursuant to Fed. R. Civ. P. 26(g), 37(c), 37(e), and this Court's inherent authority, Plaintiff dbrand inc. ("dbrand") hereby moves for sanctions against Defendants Casetagram Limited and Westside Lab, Inc. (collectively, "Casetify") for spoliation, failure to produce evidence, and certification of false discovery responses.[1]

## I.    INTRODUCTION

Casetify's egregious discovery misconduct in this case warrants the harshest sanctions available. Casetify spoliated critical evidence willfully and in bad faith, withheld other key documents, and repeatedly committed perjury by certifying false discovery responses, all to frustrate the discovery process and dbrand's ability to get to the truth.

dbrand and Casetify are competitors in the market for phone cases and other electronic accessories. After dbrand discovered that Casetify had copied its most successful product line, it filed a copyright infringement lawsuit in Canada. The following day dbrand sponsored a YouTube video that publicly announced the lawsuit and laid out the allegations. Casetify responded quickly, issuing a public statement within hours that it was conducting an internal investigation. But Casetify's investigation was far from routine; almost immediately, Casetify began identifying and deleting evidence that was critically relevant to dbrand's claims. Within weeks the designers of the Accused Works purportedly "resigned" from the company. However, ███████████████████████ ███████████████████████████████████████████████████████. Casetify even destroyed the design files for the Accused Works—the most critical evidence in this case.

Casetify's pattern of obstruction and deception continued throughout this case. In critical discovery responses, Casetify blatantly lied, even when those responses were submitted under

---

[1] This motion is submitted subject to the Court's ruling on Plaintiff's concurrent motion for leave to exceed the page limit under Local Rule 7.1. All emphases added unless otherwise noted.

penalty of perjury. Only after dbrand confronted Casetify with contradictory evidence or the implausibility of their response did Casetify reverse course. By chance, dbrand also discovered key evidence that Casetify withheld from production buried in the metadata of the Accused Works.

The totality of Casetify's misconduct confirms that it acted in bad faith with an intent to frustrate discovery, obfuscate and eliminate evidence, and thwart the truth-seeking function of the Court. Such behavior warrants the harshest sanction—entry of default judgment against Casetify. Even if the Court does not enter default judgment, it should impose adverse inferences and evidentiary preclusion, necessary to prevent Casetify from capitalizing on its misconduct.

## II. BACKGROUND

### A. Origins of this Lawsuit

dbrand designs, manufactures, and sells premium accessories for phones, tablets, and laptops. [114] ¶ 1. In 2018, it launched the "Original Teardown" line—artistic depictions of a device's internal components, giving the illusion of a transparent back panel. *Id.* ¶ 4. dbrand secured Canadian copyrights to protect these distinctive works. *Id.* ¶ 80. The line was an immediate success. Following its launch, dbrand discovered that Casetify—a Chinese competitor selling similar accessories—directly copied the Original Teardowns in a line called "Inside Out" sold in the United States. *Id.* ¶ 9. These infringing products are the "Accused Works" at issue here.

On November 22, 2023, dbrand filed a copyright infringement action against Casetify in Canada. *See* Exhibit 1. The following day, dbrand sponsored a video released by the YouTube content creator Zachery Nelson *aka* JRE (the "JRE Video") detailing dbrand's allegations against Casetify: https://youtu.be/byfWscC87Vg. On November 24, 2023, Casetify released a statement:

> We are currently investigating a copyright allegation against us. We have immediately removed the designs in question from all platforms.

Exhibit 2. That same day, ███████████████████████████████████████████

2

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████. *See* Exhibit 4 ("Yeung Dep.") at 20:21–24, 119:15–120:3, 129:24–130:16. These are also the two executives who certified Casetify's discovery responses.

dbrand filed the present case on March 6, 2024, raising claims of copyright infringement and copyright management information ("CMI") violations. *See, e.g.*, [1] ¶¶ 9-15,

## B. Casetify's Discovery Violations

Discovery opened on May 8, 2024. [19] By the close of discovery, dbrand learned that Casetify had engaged in egregious discovery misconduct both before and after this case was filed.

### 1. Casetify Destroyed Critical Evidence

The day after dbrand made its allegation public, Casetify initiated an internal investigation. *See* Exhibit 2. ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ That same day, Casetify executives were already destroying critical evidence. A few days later, the primary designer of the Accused Works "resigned" from the company, followed shortly by her supervisor. *See* Exhibit 22 at 9. When these individuals left, ████████████████████████████████████████. Casetify also destroyed the design files for the Accused Works—the most critical evidence in this case.

### a) Casetify Deleted Key Evidence of the Accused Works from the Internet Archive

As part of its pre-suit investigation, dbrand attempted to use the Internet Archive—a nonprofit digital library that archives webpages. dbrand discovered that although substantially all pages on Casetify's website were archived, the "Inside Out Collection" page (i.e., the Accused

Works) was missing. *See* Exhibit 13. Because it appeared the data was removed, dbrand asked:

> Admit that after being notified of its infringements, Casetify requested that the Internet Archive remove all Casetify webpages for the Accused Works from the Wayback Machine.

*See* Exhibit 18 at RFA No. 21. Casetify denied the request. *Id.* After the parties met and conferred on this issue, Casetify supplemented by restating the denial: "No one currently inside Casetify requested that the URLs be removed." *See* Exhibit 20 at RFA No. 21.

After further investigation, dbrand discovered that the Internet Archive results for the Inside Out pages included the following statement: "This URL *has been excluded* from the Wayback Machine." *See* Exhibit 13. dbrand also learned that the Internet Archive only excludes webpages upon a written request from the owner. *See* Exhibit 14. dbrand confronted Casetify with this evidence and informed them that it would be seeking discovery from the Internet Archive. *See* Exhibit 15 at 6. Only then did Casetify ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████.

Casetify did not produce any copies of the Inside Out Collection page removed from the Internet Archive and ██████████████████████████████████████████

████████████████ *See* Exhibit 6 ("Fung Dep.") at 198:9–14. This spoliated evidence is key to showing the number and locations of digital copies of the Accused Works on Casetify's website and servers, the structure, pricing, advertising, and availability of these works, the descriptions used to promote the Accused Works, Casetify's integration of the designs into broader campaigns, and more.

### b) Casetify Destroyed the Design Files for Each Accused Work

The most critical evidence in the present case *should* be the design documents for the Accused Works. Such design documents, *e.g.* Adobe Photoshop (PSD) or Adobe Illustrator (AI) files, would show the process that Casetify used to create the Accused Works. ██████████,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

underlying every product in that line are images stolen from the website of the same third

party—iFixit:



**Original iFixit Image**
(From iFixit Website)

*See, e.g.*, Exhibits 29 and 30. ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ This is the *precise process* that dbrand accused Casetify of performing for the

Accused Works. *See, e.g.*, [114] ¶¶ 10, 87, 88. Notably, Casetify removed all *Inside Parts* products

from its website the same day that it removed the accused *Inside Out* line. *See* Exhibit 8 at 1.

Casetify has offered conflicting reasons for why it does not have the design files for the

Accused Works. It initially claimed that "[b]oth designers (Li and Chan) have resigned and are no

longer employed by Casetify" and "*Casetify does not have access to any of [their] records* besides

the materials that have already been produced." *See* Exhibit 21 at 1–2. But six months into the

discovery period, Casetify claimed for the first time that the designers "did not save the

development or version work leading up to the final image or versions prior to the final image."

*See* Exhibit 22 at 9. In other words, Casetify's position now is that the design files never existed

and so could not be spoliated. This assertion is completely unsupported: there is no document or communication showing how Casetify purportedly came to this conclusion. Nor did Casetify attempt to reconcile this explanation with its earlier, conflicting responses.

The head of Casetify's design department, Joe Kwan, 

It is implausible that the designers of the *eight* Accused Works "did not save the development or version work leading up to the final image[s] or versions prior to the final image[s]." *See* Exhibit 22 at 9.

But not only is it implausible, it is demonstrably false. Casetify's own Senior Vice President of Business Development

*See* Exhibit 5 ("Mok Dep.") at 21:19–22:20, 23:12–25:15. Moreover, as described in greater detail below, late in discovery dbrand uncovered a set of files hosted on Casetify's website that were exact 1:1 matches of dbrand's Original Teardowns, except

for CMI removed and falsified. *See* Exhibit 31. These "Exact Matches" are "versions prior to the final images." ███████████████████████████████████████████████

███████████████████████████████████████

Since Casetify insisted that it did not have the design files, dbrand inquired regarding the designers' computers, to which Casetify responded that it "does not have access to the designers' computers." *See* Exhibit 19 at 2. As with so many other responses, late in discovery Casetify changed this story to "one of the laptops [being] accessible."[2] *See* Exhibit 24 at 8.

In his deposition, Mr. Fung ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

Another implausible aspect of Casetify's story is that █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[2] ███████████████████████████████████████████████
████████████████████████████████████████

[3] ███████████████████████████████████████████████
██████████████████████, Notably, dbrand filed suit on March 6, 2024. ████
█████████████████████████████████████ but Casetify
refuses to produce them. These documents are included in dbrand's concurrent motion to compel.

████████████████████████████████████████████████████████

Moreover, Casetify's story is demonstrably false. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████▌ ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

In any event, whether the designs ███████████████████████████

████████████████████ Casetify spoliated the most critical evidence in this case. This spoliation is

compounded by Casetify's admission that ███████████████████████

███████████████████. *See* Kwan Dep. at 162:1–4. ████████████████████████████, the

design files for the Accused Works would reveal the underlying source images and the changes

made by Casetify. The metadata would also show important information like the identities of the

---

[4] The forensic image of the laptop was produced after the fact discovery deadline and after Mr. Kwan's deposition had already taken place.

designers, the creation and save history, the software used, and more. *See* Tucker Decl. ¶ 18. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the system logs would have additional information, including users who accessed the files, the dates and times that changes were made, relevant network activity, evidence of tampering, and much more. *See id.* ¶ 19.

### 2. Casetify Withheld Critical Evidence

Casetify maintains that "the Inside Out cases are digital images entirely created by Casetagram's graphic designers using graphics editing software." [14 at 17]. dbrand's initial discovery requests sought the sources for these purportedly original designs. For example:

**ROG 2**. Identify the specific source images and/or physical samples that Casetify designers referenced to create the Accused Works.

**RFP 11**. All documents concerning all sources for the designs of the Accused Works.

*See* Exhibits 16 and 18. In its initial responses, Casetify denied downloading the Original Teardowns and instead provided a list of URLs to various videos and webpages that purportedly contained "*specific source images*"—none of which actually correspond to the Accused Works. *See* Exhibit 17 at ROG No. 2. One month later, Casetify *reversed course* and stated that, "[t]he specific source images … are not available to Casetify as the designers are no longer employed by Casetify." *See* Exhibit 19 at ROG No. 2. Casetify never explained these contradicting responses.

After dbrand confronted Casetify with evidence that it had unquestionably copied the Original Teardowns and that none of the purported "source images" corresponded with the Accused Works (*see* Exhibit 15 at 4–7), Casetify amended its denial to an admission—*one of seven* denials that Casetify later admitted after confronted by dbrand with independently-obtained evidence. *See* Exhibits 20 at 1–2 and 21 at 1. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Exhibit 11. Casetify maintained,

however, that these were merely "*referenced* along with other device internal images." *See* Exhibit 16 at 4.

Casetify denied possessing any other copies of the Original Teardowns. *See, e.g.*, Exhibit 16 at 15. Casetify also affirmatively represented *six times* that the designers "did not have/keep iterative design files" (Exhibit 23); *six times* that "no iterative design files have been located" (*id.*); *six times* that "the designers did not save iterative designs" (Exhibit 24); *five times* that the designers "did not save the development or version work leading up to the final image" (Exhibits 22 and 26); and *five times* that the designers did not save "versions prior to the final image" (*id.*).

But in the final weeks of discovery, dbrand discovered a series of links buried in the metadata of the Accused Works. These links led to images hosted on Casetify's server—each a *1:1 match* of a dbrand Original Teardown, except for CMI removed and falsified. *See* Exhibit 31. ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See* Fung Dep. at 179:10–180:9. This smoking gun evidence represents the "*iterative designs*," "*version work*," and "*versions prior to the final image*" that Casetify so adamantly denied existed. Every Accused Work includes such a match, including the example below:



*See* Exhibit 31 (showing the eight Exact Matches for the eight Accused Works). Again, this damning evidence was produced by dbrand—*not Casetify*—after being discovered in metadata.

Casetify's corporate testimony revealed that ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

Mr. Fung also testified that, ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████, *Casetify never produced them*.

Mr. Fung was designated by Casetify to testify on "Casetify's efforts to collect documents" including the factual basis for this statement: "Casetify does not have custody, possession, or control of any documents [concerning the dbrand Teardowns] beyond the pleadings in the present litigation and the corresponding Canadian litigation." *See* Exhibit 32 ¶ 13. When asked whether he knew why the Exact Matches were not produced, Mr. Fung answered ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

11



In short, Casetify—as a company—claims ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ Particularly given that Casetify destroyed the design files for the Accused Works, these Exact Matches constitute the most crucial remaining evidence—yet Casetify withheld them, denied they existed, and offered no justification for doing so.

### 3. Casetify Certified False Discovery Responses

Aside from spoliating and withholding the most critical evidence in this litigation, Casetify also certified false discovery responses concerning the most substantive aspects of the case.

#### a) Casetify Lied About the Identities of the Designers of the Accused Works for Nearly Six Months

dbrand's very first interrogatory was directed to the design process of the Accused Works, including "the persons involved and their roles." *See* Exhibit 17 at 1. Casetify's initial response identified "[a] group of staffs from different teams, including design, product, business development, growth and marketing teams, as listed in Exhibit A." *See id.* The referenced exhibit included ████████████████████—nothing more. *Id.* And in response to dbrand's parallel request for documents showing "each individual involved," Casetify merely pointed to ███████ ███ *See* Exhibit 16 at 4 ("See Casetify's response to ROG 1.").

Conspicuously absent from this list are Mss. Chan and Li (or their email addresses)—████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ Mr. Yeung—

---

[5] One of dbrand's Rule 30(b)(6) topics was directed to the individuals on the list of 121 email addresses.



who certified this response under penalty of perjury— ████████████████████

████████████████████████ .

Three weeks after its initial response, and after various discovery letters, meet-and-confers, and other correspondence, Casetify supplemented its response to identify Ms. Li as "primarily responsible for the images." *See* Exhibit 19 at 2. Again, however, Casetify failed to identify Ms. Chan— ██████████████████████ . *See* Exhibit 12 at 1; Kwan Dep. at 198:23–199:14; Fung Dep. at 59:13–60:20 and 172:6–173:13; Jia Dep. at 18:14–80:1 and 96:6–24. After weeks of additional correspondence, Casetify supplemented again, stating:

> Annabelle Li and anyone who worked for her (*not clear at this time*) no longer works for Casetify and Casetify does not have access to any of her records besides the materials that have already been produced. Therefore, a complete answer to this ROG cannot be made other than the explanations already provided.

Exhibit 21 at 1.[7] Setting aside the contradiction in claiming it is "not clear at this time" who worked for her while assuring that the person "no longer works for Casetify," this response directly contradicts Casetify's own internal investigation, ████████████████████████

████████████████████████████ *See* Jia Dep. at 18:14–80:1, 96:6–24;

Exhibit 8 at 1–3. Notably, this supplemental response was certified under penalty of perjury by Casetify's General Counsel, Edith Lam— ██████████████████████████

██████████████████████████████████████████

---

*See* Exhibit 32 ¶ 12. Casetify's corporate designee for this topic revealed that *nobody* on the list was actually involved in the design of the Accused Works. *See* Kwan Dep. at 108:4–16.

[6] Casetify's Engineering Director, Terence Fung, also confirmed that ████████████████████
████████████████████████████████████████ . *See* Fung Dep. at 59:13–60:20, 172:6–173:13. Casetify's Vice President of Designs, Joe Kwan, also confirmed that ████████████████████████ . *See* Exhibit Kwan Dep. at 29:12–33:6.

[7] Casetify also relied on this statement, *verbatim*, as the basis for failing to provide substantive responses to six other interrogatories. *See* Exhibit 21 at 1–2.

█████████████████████████

On October 21, 2024, nearly *six months* after dbrand served its discovery requests, and after *four rounds* of verified interrogatory responses, and after countless conferences, phone calls, letters, and other correspondence, Casetify finally identified Ms. Chan as the designer of the Accused Works—████████████████████████████. *See* Exhibit 22 at 9.

### b) Casetify Lied About the Source Images for the Accused Works

As explained above, Casetify also lied about the source images for the Accused Works. Casetify's initial explanation—certified by Mr. Yeung under penalty of perjury—identified a list of "specific source images" that the designers purportedly used. *See* Exhibit 17 at ROG No. 2. But a later response, also certified by Mr. Yeung, stated that "[t]he specific source images … are not available to Casetify." *See* Exhibit 19 at ROG No. 2. Casetify never explained these contradictory responses. Casetify also affirmatively stated at least 28 times—10 of which were certified—that the designers did not save "iterative designs" or "versions prior to the final image" or similar. *See* Exhibits 22, 23, 24, and 26. But the Exact Matches—withheld by Casetify and serendipitously discovered by dbrand at the end of discovery—show that the Accused Works are, in fact, sourced directly from the Original Teardowns, as dbrand alleged all along.

### c) Casetify Lied About the Design Process for the Accused Works

To address Casetify's shifting positions, dbrand propounded several Rule 30(b)(6) topics seeking Casetify's factual bases for making several affirmative statements concerning the design of the Accused Works, quoting excerpts from Casetify's pleadings and *certified* interrogatory responses. *See* Exhibit 32 ¶¶ 4–6. Casetify designated its Vice President of Designs, Joe Kwan, as the witness. Separately for each Accused Work, dbrand asked whether he knew Casetify's factual basis for each of those quoted excerpts, and for *every quoted excerpt* and for *every Accused Work*, Mr. Kwan responded ████████████████ *See* Kwan Dep. at 134:7–202:23.

Ultimately, Mr. Kwan testified that Casetify ███████████████████████████

█████████████████████████████████████████████████████████████████████.

*See, e.g.*, *id.* at 162:1–10, 164:15–20. This aligns with Casetify's latest explanation—that the

design process for the Accused Works "is not part of the Company's present knowledge." *See*

Exhibit 26 at 10. However, this complete disavowal of corporate knowledge raises a serious

question: how did Casetify manage to produce dozens of pages of pleadings and certified discovery

responses identifying supposed "specific source images" and accounts of how the Accused Works

were purportedly conceived, designed, and created? *See, e.g.*, Exhibit 32 ¶¶ 4–6 (summarizing

twelve affirmative statements by Casetify concerning the design process for the Accused Works);

*see also* [14] at 15–18; [22] at 13–14; and [53] at 15–18; and Exhibits 17 at 1–9; 18 at 1–3; 19 at

1–3, 12–14; 22 at 1–49; and 26 at 1–54. The only explanation is that Casetify was lying about the

design process then, or is lying about its lack of knowledge now—either way it committed perjury.

### d) Casetify Lied About the Availability of Key Documents

Casetify's initial responses to document requests were certified by Mr. Yeung. *See* Exhibit

16 at 27. dbrand was stymied with Casetify's inadequate production and put forward a Rule

30(b)(6) topic on "Casetify's efforts to collect documents" responsive to certain key requests. *See*

Exhibit 32 ¶ 13. Casetify designated Mr. Fung for this topic. When questioned, ███████████

██████████████████████████████



*See* Fung Dep. at 151:3–152:11. It is unsurprising that Casetify refused to stand by these statements—made under penalty of perjury—after they were proven false. Casetify offered no explanation for how it could ever, in good faith, deny the existence of the Exact Matches, records identifying the designers, communications with third parties regarding spoliation, and findings from Casetify's own internal investigation. All of this information was either directly known to the executives certifying Casetify's responses or readily discoverable through basic keyword searches. Ultimately, this evidence was uncovered—either through dbrand's own production or after Casetify was confronted with proof of its existence or the prospect of third-party discovery. This is just a small subset of Casetify's facially false and obstructive responses concerning the availability of documents—there are dozens more. *See generally*, Exhibits 16-27.

## III.    ARGUMENT

Casetify has engaged in serious discovery misconduct, including willfully spoliating electronically stored information ("ESI") under Rule 37(e), failing to disclose critical information under Rule 37(c), and certifying false discovery responses under Rule 26(g). These violations—individually and collectively—have prejudiced dbrand, undermined the integrity of the judicial process, and justify the imposition of severe sanctions. Here, the totality of Casetify's discovery violations warrants the strongest sanction—default judgment. If the Court declines to enter default judgment, it should still order adverse inferences and evidentiary preclusion against Casetify. Regardless of the sanction imposed, dbrand is also entitled to an award of fees and costs.

### A.    Casetify's Egregious Discovery Misconduct Warrants Default Judgment

Casetify's discovery misconduct warrants default judgment. This Court has inherent authority to order default judgment for discovery violations when "a party's discovery misconduct

resulted from willfulness, bad faith, or fault." *Hurston v. Indiana Gaming Co.*, 2023 WL 8111460, at *3 (7th Cir. Nov. 22, 2023). Rule 37 also authorizes the Court to order default judgment as a sanction for discovery violations by a party who is at "fault, as shown by 'extraordinary poor judgment' or 'gross negligence.'" *EEOC v. Wal-Mart East, L.P.*, 46 F.4th 587, 599 (7th Cir. 2022).

The sanction of default judgment is reserved for "extreme" cases, but the Court need not "first impose less drastic sanctions." *Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138–39 (7th Cir. 1987) ("A district court is not required to fire a warning shot."). The party seeking sanctions need only show entitlement to such relief by a "preponderance of the evidence." *See Ramirez v. T&H Lemont, Inc*., 845 F.3d 772, 779 (7th Cir. 2016).

Default judgment is warranted here. Casetify willfully spoliated the most critical evidence, withheld the next most critical evidence, and repeatedly lied under penalty of perjury—exposing itself as having no regard for the truth. Default judgment is necessary to remedy Casetify's misconduct, deter future misconduct, and restore the integrity of the judicial process.

### 1.     Default Judgment is Warranted for Casetify's Spoliation

Default judgment is expressly contemplated as a sanction for spoliation under Rule 37, where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it" and the court finds "that the party acted with the intent to deprive" another party. *See* Fed. R. Civ. P. 37(e)(2)(C). This Court may also order default judgment under its inherent authority when, "(1) there was a duty to preserve the specific documents and/or evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault." *O'Connor v. Ford Motor Co.*, 683 F. Supp. 3d 793, 795 (N.D. Ill. 2023).

### a)     Casetify had a duty to preserve evidence.

Casetify had a duty to preserve evidence concerning the Accused Works, including their

design files, archived versions of the Casetify website, ████████████████████

████████. The duty to preserve arises "when litigation is commenced or reasonably anticipated."

*Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 619 (N.D. Ill. 2022); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021) ("once a party reasonably anticipates litigation, it must take *affirmative action* to satisfy its preservation duties.").

This duty "can be triggered much earlier than a discovery request and even the filing of a Complaint" and the inquiry is "based on the specific circumstances and facts and whether those facts give rise to a reasonable foreseeability" of litigation. *Does v. Chicago*, 2019 WL 2994532, at *2 (N.D. Ill. July 9, 2019). Courts consider, *inter alia*, "the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary." *Zbylski v. Douglas County Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Co. 2015).

For instance, "[c]ourts have found the duty to preserve to be triggered based on an internal investigation into an incident." *Pable v. Chicago Transit Auth.*, 2023 WL 2333414, at *20 (N.D. Ill. Mar. 2, 2023) (quoting *Zbylski* 154 F. Supp. 3d at 1163). Furthermore, "[c]ourts have 'rejected the notion that a party's obligation to preserve information arises only after it understands the *precise* nature of the *specific* litigation at issue.'" *See id.* at 1166 (emphasis in original) (finding that a "claim-specific understanding of the duty to preserve … is too narrow and circumscribed").

Here, Casetify was under a duty to preserve no later than November 24, 2023. On November 22, 2023, dbrand filed a copyright infringement action in Canada against Casetify.[8] *See* Exhibit 1. That lawsuit involved the same Accused Works and the same alleged acts of

---

[8] Notably, Canada imposes the same requirement to preserve evidence "in the face of existing litigation or in anticipation of litigation." *See Casbohm v. Winacott Spring*, 2021 SKCA 21, CanLII.

infringement. The next day, dbrand sponsored the release of the JRE Video, detailing dbrand's allegations and reaching millions of viewers. And on November 24, 2023, Casetify released a statement that it was "currently investigating a copyright allegation against us." *See* Exhibit 2. Casetify also "immediately removed the designs in question from all platforms." *See id*.

Discovery revealed that as part of its investigation, ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████. One of the findings of this investigation was ███████

████████████████████████████████████████████ *See* Exhibit 8 at 1. A few days after the investigation began, the primary designer of the Accused Works "resigned" from the company, followed shortly by her supervisor. *See* Exhibit 22 at 9.

Moreover, ██████████████████████████████████████████████

████. *See* Exhibits 34 and 35. The Casetify Defendants involved in the distribution and sale of the Accused Works in the United States—Westside and Westrock—are both U.S. corporations.

████████████████████████████████████████████████████████

█████ *See* Mok Dep. at 60:7–15 and 65:1–10.

Here, the "specific circumstances and facts" make clear that Casetify was under a duty to preserve. Casetify was aware of dbrand's allegations at least as of November 24, 2023. It was aware of the JRE Video. It was aware of the Canadian lawsuit. ████████████████████

████████████████████████████████████████████████████████

██████████████. It conducted an internal investigation ███████████████████

████████████████████████████████████████████████████████

████████████████████████. It is an understatement that Casetify reasonably anticipated litigation when it spoliated the most critical evidence in this case.

      **b)**      **Casetify breached is duty to preserve evidence**

Casetify breached its duty to preserve by destroying archived evidence of the "Inside Out Collection" page from the Casetify website. After the JRE Video aired, after Casetify released a statement acknowledging dbrand's allegations, and after it started its internal investigation, █

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Casetify also breached its preservation duty by █████████████████████████████

████████████████████████. A few days after Casetify's investigation started, the primary designer—Jackie Chan—"resigned" from the company. *See* Exhibit 22 at 9. The other purported designer—Annabelle Li—████████████████████████████████ left the company the following month. *See id.*; *see also* Exhibit 12. However, after the designers left the company, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████.

Casetify also violated its duty to preserve the design files. Casetify's current claim—that the designers "did not have/keep iterative design files" (Ex. 23 at 11)—lacks any support and contradicts its prior statements. *See, e.g.*, Ex. 21 at 1–2. Moreover, it is contradicted by direct evidence—including the Exact Matches withheld by Casetify and later discovered by dbrand. *See* Exhibit 31. It is also inconsistent with Casetify's own corporate testimony. Mr. Kwan testified that

████████████████████████████████████████████████████████████████

██████████████████████████████████████████.

Mr. Kwan's other explanations, however, fell short. He stated that ████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████. *See id.* at 71:2–10. Moreover, this

testimony is flatly contradicted by forensic evidence, ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

Casetify's breach is exacerbated by its admission ██████████████████████████

████████████████████████████████████████████████ Regardless of whether the

designs were deleted █████████████████████████████████████████ there is more

than a "preponderance of evidence" that Casetify destroyed evidence—especially considering

Casetify's established pattern of spoliation and other dishonest behavior in discovery.

> **c)** **Casetify's breach resulted from willfulness, bad faith, fault, and an intent to deprive**

Casetify's willfulness, bad faith, or fault caused the breach of its preservation duty. A

spoliation sanction is justified when the "noncomplying party acted *either* with willfulness, bad

faith, *or* fault." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (emphases in

original); *see also O'Connor*, 683 F. Supp. 3d at 798.

"The Seventh Circuit finds 'fault' in the context of sanctions if the violative conduct is

unreasonable." *Kucala Enter., Ltd. v. Auto Wax Co.*, 2003 WL 21230605, at *4 (N.D. Ill. May 27,

2003). This can arise from "poor judgment." *Marrocco*, 966 F.2d at 224. Willfulness may arise when a party destroys evidence with some notice that the documents were potentially relevant to litigation before they were destroyed. *See O'Connor*, 683 F. Supp. 3d at 798. And bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations." *Marrocco*, 966 F.2d at 224. Casetify exhibits all three.

At a bare minimum, Casetify's document destruction was caused by fault—namely, poor judgment. Casetify's destruction of the design files and ███████████████████ demonstrates nothing short of extraordinarily poor judgment. It is objectively unreasonable to eliminate such evidence. But even worse, within a day of learning of dbrand's claims, Casetify began destroying relevant documents. Indeed, such destruction is plainly willful—Casetify knew that the Internet Archive documents and the design files were potentially relevant to litigation before it caused their destruction. *See O'Connor*, 683 F. Supp. 3d at 798. That is, the destruction "was done in the context of active litigation centrally involving" that evidence. *Id.*

Casetify's conduct goes even further, smacking of intentionality and reckless disregard of its preservation duties. After Casetify learned of dbrand's allegations, it conducted an internal investigation, ████████████████████████. Casetify immediately caused copies of those works and other evidence to be erased from the Internet Archive. And when the designers left shortly thereafter, ███████████████████████. Additionally, as discussed above, Casetify specifically targeted the design files for the Accused Works—the most critical evidence in this case. Casetify's conduct far surpasses a finding of "willfulness, bad faith, or fault" for spoliation.

While not required for a finding of spoliation under the Court's inherent authority, the "intent to deprive element" of spoliation under Rule 37 is also satisfied for these same reasons.

22

Notably, "[i]ntent to deprive is often established using circumstantial evidence." *See Pable*, 2024
WL 3688708, at *8; *see also* Hollis, 603 F. Supp. 3d at 623. Such evidence can include a "shifting
narrative" as well as the "timing of and circumstances surrounding the deletion." *See id.* As
explained above, Casetify's narrative repeatedly shifted concerning whether it instructed the
Internet Archive to delete evidence, why it did not have the design files for the Accused Works,
and even whether it possessed the designers' computers at all. Furthermore, the "timing and
circumstances" of Casetify's spoliation—beginning the day after it learned of dbrand's allegations
and after it ███████████████████████████████████████████████████—is strong
evidence that Casetify's spoliation was done intentionally to deprive dbrand of that evidence.

### d) Casetify's spoliation harmed dbrand

dbrand has been significantly harmed by Casetify's spoliation. The destroyed evidence—
particularly the design files ████████████████—was the most critical in this case. To prevail
on its CMI claims under 17 U.S.C. § 1202(a)–(b), dbrand must show not only copyright
infringement, but also that Casetify knowingly removed or falsified CMI with the intent to conceal
infringement. This scienter may be inferred from circumstantial evidence. *See, e.g.*, *GC2 Inc. v.
Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) (the jury may infer "both layers of
intent or knowledge at trial" from circumstantial evidence).

████████████████████████████████████████, the missing files for the
accused *Inside Out* line would have revealed the progression from source material to final product.
*See, e.g.*, Exhibit 29. It would show the source images underlying the Accused Works, each
modification by Casetify's designers, when and how the CMI was manipulated, and much more.
The associated data from the designers' laptops could have been even more revealing, including
relevant metadata, local drafts, communications, and other evidence reflecting intent—whether to
copy dbrand's designs, to remove or alter CMI, or to cover up that conduct. Casetify's decision █

██████████████████████████████ eliminated the opportunity to investigate that intent. Notably, Casetify has acknowledged that ████████████████████████████████████ ██████████████████████████████ *see also* Exhibit 26 at 10 (the design process for the Accused Works "is not part of the Company's present knowledge").

Casetify's spoliation of the Internet Archive pages also prejudices dbrand. These pages could have provided important evidence regarding the number and locations of digital copies of the Accused Works on Casetify's website and servers, the manner in which these infringing images were displayed, the structure, pricing, advertising, and availability of the works, the descriptions used to promote the works, Casetify's integration of the designs into broader campaigns, and more.

Overall, the spoliated evidence was uniquely suited to shed light on the core issues in this case: how the Accused Works were created, whether CMI was altered, and whether any such conduct was intentional. No adequate substitute exists for this type of evidence, and its loss has significantly prejudiced dbrand's ability to prove key elements of its claims.

### 2. Default Judgment is Warranted Because Casetify Withheld Evidence

After destroying the most critical evidence in this case—the design files, Casetify withheld the next most critical evidence—the Exact Matches. Default judgment is expressly contemplated under Rule 37(c)(1)(C) for failing to disclose relevant evidence. Ordinarily, this circumstance arises after the moving party first files a motion to compel.[9] But as explained above, this situation is far from ordinary: the Exact Matches—stored on Casetify's servers—were never produced by

---

[9] Although this is the most common circumstance, "there is no requirement that a party must file a motion to compel before a Court may impose sanctions under Federal Rule of Civil Procedure 37(c)." *Perez v. Great Wolf Lodge of the Poconos LLC*, 2017 WL 34697, at *6 (M.D. Pa. Jan. 3, 2017). Furthermore, the "Court has broad, inherent power to impose sanctions for failure to produce discovery, over and above the provisions of the Federal Rules." *Traffix USA, Inc. v. Bay*, 2022 WL 2046282, at *7 (N.D. Ill. June 7, 2022).

Casetify, but *by dbrand* after being found buried in the metadata of the Accused Works. Casetify's corporate testimony revealed that ███████████████████████████████████████, but Casetify withheld them and provided no explanation for why they were not produced.

Not only did Casetify fail to produce the Exact Matches, it *adamantly denied their existence*. For example, Casetify affirmatively stated—at least 28 times—that the designers did not save "iterative designs," "version work," "versions prior to the final image," or similar. *See* Exhibits 22, 23, 24, and 26. And as explained in dbrand's concurrent motion to compel, although Casetify repeatedly claimed that its investigation was "ongoing," it did not produce *anything* in the final four months of discovery, except for 40 documents directed to counterclaims it threatens to bring in the future. The Exact Matches were only produced because dbrand found them.

If default judgment is warranted in any case—and it is expressly included under both Rules 37(e)(1)(C) and 37(c)(1)(C)—then it is certainly warranted here, where Casetify destroyed and withheld the two most critical categories of evidence.

### 3. Default Judgment is Warranted Because Casetify Certified False Discovery Responses

Compounding its spoliation and failure to produce are the numerous lies that Casetify told in discovery. Casetify and its executives—████████████████████████████—have demonstrated their willingness to lie, even under penalty of perjury. ████████████████████, they lied about the most material aspects of the case: the identities of the designers, the sources for the Accused Works, and the design process for the Accused Works. Of the substantive information produced, most came only after dbrand presented proof that it must exist or threatened third-party discovery. This misconduct raises grave concerns about what other information is being withheld or has been destroyed. It has also irreparably compromised the integrity of the litigation—with Casetify's pattern of dishonesty exposed, nothing it says now can be trusted. Thus, default

judgment is both justified and necessary to preserve the legitimacy of the proceedings.

In an analogous case from this District, Judge Alexakis recently awarded case-terminating sanctions for perjury in a copyright matter. *See Say it Visually, Inc v. Real Estate Education Company, Inc.*, 2025 WL 933951 at *15 (N.D. Ill. Mar 27, 2025). The court found that the plaintiff perjured himself "in at least two instances" when he "falsely testified that he authored the scripts of the works in suit" in his verified discovery responses and deposition testimony. *Id.* at *9. After finding that the lies were (1) material and (2) willful, the Court held that "dismissal with prejudice is the appropriate remedy." *Id.* at *14. The Court noted that "[t]he goals of sanctions for perjury are to 'remedy prejudice to the opposing party,' 'reprimand the offender,' and 'deter future parties from trampling upon the integrity of the court.'" *Id.* (quoting *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009)). Those same goals are served here, where Casetify's perjury and other misconduct—unquestionably material and willful—went far above those mere "two instances." As Judge Alexakis concluded, "perjury … is fraud on the Court, and … a litigant who defrauds the court should not be permitted to continue to press his case." *Id.* at 16.

### B.    The Court Should Impose Adverse Inferences Against Casetify

If the Court does not enter default judgment, it should enter adverse inferences against Casetify. In the Seventh Circuit, bad faith spoliation "gives rise to a strong inference that production of the document would have been unfavorable." *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001). Such adverse inferences are expressly contemplated by Rule 37(e)(2)(A)-(B). This Court also has "the inherent power to draw negative inferences" from other discovery misconduct. *See Rogers v. W. Governors Univ.*, 2025 WL 561355, at *12 (S.D. Ill. Feb. 20, 2025).

Here, the totality of Casetify's misconduct warrants adverse inferences. Casetify destroyed the most critical evidence in bad faith, withheld the next most critical evidence, and repeatedly lied under penalty of perjury about the most substantive aspects of this case. Under these

circumstances, at least two adverse inferences are warranted.

### 1. Casetify Copied Constituent Elements of the Original Teardowns.

Casetify claims the Accused Works were "*entirely created* by Casetagram's graphic designers" and that any similarities to the Original Teardowns are "attributable to a shared theme and idea." *See* [53] ¶¶ 5, 8. But this is directly contradicted by a mountain of evidence of direct copying, including the presence of hidden Easter Eggs embedded by dbrand to catch infringers. *See* [114] ¶ 89. Conveniently for Casetify, it destroyed the design documents for the Accused Works. Casetify also failed to produce the Exact Matches—which show that underlying each Accused Work is an Original Teardown, except for CMI removed and falsified. Casetify also repeatedly lied about the source images and design process for the Accused Works. Given this misconduct, coupled with overwhelming evidence of copying, an adverse inference that Casetify copied constituent elements of the Original Teardowns is plainly warranted.

### 2. Casetify Knowingly Removed and Falsified CMI With the Intent to Conceal Its Infringements.

Claims under 17 U.S.C. § 1202 require that CMI was removed or falsified (1) knowingly and (2) with the intent to conceal infringement. This scienter may be inferred from circumstantial evidence. *See GC2 Inc.*, 391 F. Supp. 3d at 842 (the jury may infer "both layers of intent or knowledge at trial" from circumstantial evidence).

Here, Casetify willfully spoliated the most critical evidence: the design files for the Accused Works. If they still existed, these files would show that Casetify deliberately removed and falsified CMI for the Original Teardowns. The Exact Matches—which Casetify failed to produce—are direct evidence of this, confirming that in the initial drafts, the *only* changes made were to strip and falsify CMI. *See* Exhibit 31. Such alterations only make sense if Casetify knew it was copying dbrand's work and was trying to conceal the infringement. Those changes remained

27

in the final products, including replacing a dbrand QR code with a Casetify QR code for *every Accused Work*. *See* [114] ¶¶ 14, 78, 104, 105. Similarly, the designers' laptops likely had further evidence of intent and knowledge, but Casetify destroyed those documents and data too.

Furthermore, acts of bad faith spoliation themselves can support an inference of the requisite intent and knowledge of an underlying claim. *See E.I. du Pont v. Kolon Indus.*, 803 F. Supp. 2d 469, 509 (E.D. Va. 2011) (spoliation "may be taken into account in assessing the elements of … intent and knowledge" in a trade secret case); *HM Elecs. v. R.F. Techs.*, 2015 WL 4714908, at *34 (S.D. Cal. Aug. 7, 2015) (jury may "take the destruction of documents into account in assessing the elements of Defendants' intent and knowledge" in an unfair competition case).

Particularly given Casetify's spoliation and the resulting loss of evidence demonstrating intent and knowledge, an adverse inference of these elements is warranted.

### C.    The Court Should Preclude Casetify from Presenting Certain Evidence

In addition to adverse inferences, the Court should preclude Casetify from presenting certain evidence. Evidentiary preclusion is contemplated as a sanction under Rule 37(c)(1) for failure to disclose. It is also frequently awarded under Rule 37(e)(1) for spoliation, sufficient to "cure the prejudice" to the moving party. *See DR Distributors*, 513 F. Supp. 3d at 982 (N.D. Ill. 2021). This Court also has "inherent authority to preclude evidence as a sanction for discovery violations." *Garrido v. F&M Constr.*, 2024 WL 3964695, at *17 (S.D.N.Y. Aug. 28, 2024).

### 1.    Casetify Should be Precluded from Presenting Evidence of the Design Process or Source Images for the Accused Works.

During discovery, Casetify gave inconsistent accounts for the sourcing and design of the Accused Works. It initially identified "*specific source images*," then reverted and claimed it did not know which images were used at all. *Compare* Exhibits 17 and 19 at ROG 2. It also described a step-by-step design process while simultaneously asserting that it did not know who the designers

were or have access to their records. *See, e.g.*, Exhibit 32 ¶¶ 4–6 (summarizing affirmative statements by Casetify concerning the design process). After dbrand challenged these contradictions—and exposed their falsehood—

). Casetify also supplemented its responses to state—ten different times—that the design process for the Accused Works "is not part of the Company's present knowledge." *See, e.g.*, Exhibit 26 at 10. Having destroyed and withheld the most critical evidence of copying, and having lied about the sourcing and design processes for the Accused Works only to later disclaim all knowledge entirely, Casetify should be precluded from presenting any other evidence on these topics.

### 2. Casetify Should be Precluded from Presenting Evidence of Knowledge and Intent.

Even worse than lying about the design of the Accused Works, Casetify spoliated and withheld the most critical evidence of knowledge and intent in this case: the design files, ██████ ██████ and Exact Matches underlying the Accused Works. Having destroyed and withheld this evidence, Casetify should be barred from presenting evidence of knowledge and intent.

### D. The Court Should Award dbrand its Attorney's Fees and Costs.

### 1. dbrand is Entitled to Fees and Costs Caused by Casetify's Misconduct

An award of fees and costs for discovery violations typically includes those stemming from the misconduct. *See* Fed. R. Civ. P. 26(g)(3) ("caused by the violation"), 37(c)(1)(A) ("caused by the failure"); *REXA, Inc. v. Chester*, 42 F.4th 652, 673 (7th Cir. 2022) (same for the court's inherent authority). Therefore, dbrand seeks at least those fees and costs incurred from Casetify's misconduct, including the many rounds of discovery requests, numerous meet-and-confers, calls,

letters, and emails to discuss deficient responses, unnecessary travel to Hong Kong for depositions addressing the misconduct,[10] and preparation of this motion and the concurrent motion to compel.

### 2. dbrand is Entitled to All Fees and Costs in this Action.

Although fees and costs are typically limited to those stemming from the discovery misconduct, courts may award *all* fees and costs incurred in the case where the misconduct is pervasive. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991) (upholding an award of all attorneys' fees where the "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court"). The Seventh Circuit has likewise affirmed such awards where the misconduct "pervaded the litigation." *See Fuery v. City of Chicago*, 900 F.3d 450, 464–65 (7th Cir. 2018). Here, Casetify's pattern of dishonesty—including spoliation, withholding evidence, and perjury—has permeated the entire proceeding and undermined the integrity of the litigation, necessitating default judgment. Accordingly, dbrand seeks all attorneys' fees and costs incurred in this action.

## IV. CONCLUSION

For the foregoing reasons, dbrand respectfully requests that the Court grant this motion for sanctions against Casetify for discovery misconduct. If the Court grants default judgment, dbrand further requests that the Court set a separate hearing to determine the amount of damages.

---

[10] dbrand noticed its depositions just three blocks from Casetify counsel's offices in Chicago. Despite ample legal support that such depositions must typically be held within the District, Casetify insisted they occur in Hong Kong—at great expense to dbrand. *See* Exhibit 33 at 1–2. dbrand informed Casetify that it "intends to seek sanctions for Casetify's egregious misconduct in … the discovery process" and "to address the facts underlying this misconduct" in the depositions of Casetify's witnesses. *See id.* dbrand further warned that "if Casetify insists on … depositions in Hong Kong, then dbrand will add the associated costs to its requested sanctions." *See id.*

DATED this 13th day of June, 2025.

Respectfully submitted,

By /s/ *Collin D. Hansen*
Collin D. Hansen (ARDC#: 6335991)
Email: chansen@wnlaw.com
**WORKMAN NYDEGGER**
840 S Northwest Hwy, Suite 10
Barrington, IL 60010
(815) 353-4438 (Telephone)

Brian N. Platt *(pro hac vice)*
Email: bplatt@wnlaw.com
Chad E. Nydegger *(pro hac vice)*
Email: cnydegger@wnlaw.com
Kenneth J. Dyer *(pro hac vice)*
Email: kdyer@wnlaw.com
Ryan C. Morris *(pro hac vice)*
Email: rmorris@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
(801) 533-9800 (Telephone)

*Attorneys for Plaintiff dbrand inc.*

**<u>CERTIFICATE OF CONFERENCE</u>**

dbrand hereby certifies that it conferred with counsel for Casetify on June 4, 2024, regarding the present Motion. The parties held a meet-and-confer by video that lasted approximately 1 hour. dbrand explained the bases for each discovery violation and the requested relief. Counsel for Casetify responded that it did not believe that any relief is warranted and that it will oppose the motion. The parties also discussed the need to protect Casetify's confidential information by filing the motion under seal consistent with the Local Rules of this District, as well as dbrand's request to exceed the page limit.

*/s/ Collin D. Hansen*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the June 13, 2025, I filed the foregoing **MOTION FOR SANCTIONS** through this Court's electronic filing system, which sent electronic notification of this filing to all counsel of record.

*/s/ Collin D. Hansen*