IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DBRAND INC., a Canadian Corporation,<br><br>*Plaintiff/Counterclaim Defendant*<br><br>v.<br><br>CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, and WESTSIDE LAB, INC., a California corporation, and WESTROCK SERVICES (WHOLESALE), INC.<br><br>*Defendants/Counterclaimants*. | CASE NO. 24-cv-1919-MMP-MV<br><br>**JURY TRIAL DEMANDED**<br><br>**District Judge Martha M. Pacold**<br>**Magistrate Judge Maria Valdez** |

**DBRAND'S MOTION TO COMPEL**

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff dbrand inc. ("dbrand") moves to compel Defendants Casetagram Limited and Westside Lab, Inc. (collectively, "Casetify") to produce key documents withheld in discovery. Filed concurrently is dbrand's motion for sanctions based on other discovery misconduct, which seeks, *inter alia*, default judgment.

## I. INTRODUCTION

This is an action for copyright management information ("CMI") violations arising under 17 U.S.C. § 1202(a)-(b). In 2023, Casetify released its "Inside Out" product line featuring phone and device cases (the "Accused Works"). To create the Accused Works, Casetify copied dbrand's original designs (the "Original Teardowns"), with nominal changes. But Casetify's conduct went beyond infringement: Casetify actively removed and falsified CMI from the Original Teardowns to conceal its infringements, mislead the public, and attempt to pass off the Accused Works as its own. This same calculated deception has carried through to Casetify's conduct in discovery.

### A. Casetify's Inadequate Production

As addressed in Casetify's concurrent motion for sanctions, Casetify has engaged in egregious discovery misconduct, including spoliation, certifying false discovery responses, and withholding key evidence. Beyond the misconduct addressed in that motion, Casetify has repeatedly obstructed the discovery process and failed to produce critical documents at issue here.

dbrand served its first discovery requests the day discovery opened on May 8, 2024. *See* Exhibit Z ("Hansen Decl.") ¶ 4. Thereafter, Casetify filed two motions to stay discovery [29, 39], which were both denied [37, 40]. After multiple extensions, Casetify finally responded on July 8, 2024, but produced just 36 documents. *See id*. Thus began the lengthy process of trying to convince Casetify to produce even the most basic information.

As discussed in the concurrent motion for sanctions, Casetify knew that these documents

1

existed, but repeatedly lied about it, and in many instances only produced them after dbrand proved that they *must* exist and threatened third-party discovery. Other critical Casetify documents were discovered and produced *by dbrand*, even while Casetify insisted that they did not exist.

In the end, Casetify produced 8,455 documents. *See* Hansen Decl. ¶ 5. However, approximately 6,863 (81%) of these are customer invoices. *See id*. Additionally, at least 4,754 (56%) are *exact duplicates* of other documents produced. *See id*. For example, Casetify produced the Slack messages in Exhibit B hereto at least *fourteen* times. *See id.* In reality, excluding invoices, Casetify produced just a few hundred unique documents in the entire case. *See id.*

With its initial production of just 36 documents, Casetify certified—in a signed response under penalty of perjury—that for many categories, "Casetify does not have custody, possession, or control of *any*[1] documents responsive to this Request beyond the pleadings in the present litigation and the corresponding Canadian litigation." *See* Exhibit C. After dbrand repeatedly proved that to be false, and Casetify supplemented its production, it also amended its responses to state that its "investigation continues" and it would have "a supplemental rolling production starting on October 21, 2024." *See* Exhibit J. That "supplemental rolling production" never came. Casetify's only production after October 2024 was limited to 40 documents directed to unplead counterclaims it threatened to bring sometime in the future. *See* Hansen Decl. ¶ 5.

Thereafter, dbrand initiated multiple meet-and-confers on Casetify's disclosures. *See id.* ¶ 7. For some requests, Casetify was adamant that there were no documents. *See e.g.*, Exhibit C at RFP Nos. 6, 8, 9. For others, Casetify stated that its investigation was ongoing and that it would "comply with our obligations to supplement when investigation is finished." *See e.g.*, Exhibit N at 4:3-4. Relying on these repeated assertions, and the fact that no subsequent production was made,

---

[1] All emphasis added unless otherwise noted.

dbrand understood that no more responsive documents existed. That ultimately proved to be false.

### B. Depositions of Casetify's Witnesses

dbrand noticed its depositions to take place during the second week of January 2025, just three blocks from Casetify's counsel's offices in Chicago. *See* Hansen Decl. ¶ 6. Casetify refused to conduct any depositions in January and insisted that they all take place in Hong Kong. *See id*. Casetify then filed a motion for protective order [92] seeking to stay the depositions indefinitely, which this Court denied [97]. Thereafter, Casetify refused to make any witnesses available for deposition except between February 7-14—*the last week* of the discovery period. *See id.*

During these depositions, Casetify's witnesses referenced multiple categories of documents that Casetify had denied existed. As these documents were identified, dbrand's counsel requested their production. For example:

[REDACTED]

*See e.g.*, Exhibit O ("Fung Dep.") at 110:12-15. To which Casetify typically responded:

[REDACTED]

*See e.g., id.* at 113:23. Following the depositions, Casetify did not supplement any production.

### C. dbrand's Follow-Up Attempts to Obtain the Documents

One week after the depositions, dbrand followed up by email, inquiring about the missing documents and including citations to the deposition testimony for each category of documents. *See* Exhibit A at 5-6. Casetify responded, asking for dbrand to "identify which prior discovery requests these things fall under" and adding that it "will take your email under advisement." *See id.*

dbrand followed up with the relevant document request numbers, to which Casetify responded by asking dbrand to further "specify which requests pertain to which category of documents." *See id.* at 4. Casetify responded on March 6, 2025, specifying the document requests

3

for each category. *See id.* at 3-4. Casetify did not respond further. dbrand followed up again on April 2, 2025, but Casetify never responded. *See id.* at 2-3. dbrand followed up again on April 8, 2025, to which Casetify's counsel responded, "We await communications from our client. We will inform you after we have had that communication." *See id.* at 2.

After receiving no response by April 16, 2025, dbrand requested to meet and confer. *See id.* at 1-2. Casetify responded that it could discuss after the parties' hearing on April 23, 2025. *See id.* at 1. After the hearing, Casetify pushed the meeting to April 24, 2025. *See* Hansen Decl. ¶ 7. When that meeting finally occurred, Casetify's counsel disagreed that any production was necessary but advised that it would discuss with Casetify and provide updates. *See id*. Casetify provided no updates and made no supplemental production, necessitating the present motion.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The party requesting discovery bears the initial burden of establishing its relevancy." *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 WL 6052366 at *2 (N.D. Ill. Nov. 15, 2019) (citations omitted). If the requesting party meets its burden, "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17-cv-1879, 2021 WL 3022324 at *3 (N.D. Ill. July 16, 2021) (citation omitted).

### III. ARGUMENT

Consistent with Casetify's pattern of withholding key documents until confronted with proof of their existence, many documents that Casetify denied existed were later exposed by its own witnesses during depositions in the final week of discovery. These documents go directly to the core issues in this case: the design and development of the Accused Works; their distribution and sale in the United States; and the alter-ego relationship between the Defendants.

#### A. Documents Concerning the Accused Works

##### i. Drafts of the Accused Works and Related Communications

As in any copyright case, dbrand requested documents related to the conception, design, and development of the Accused Works. *See e.g.*, Exhibit C at RFP Nos. 6, 8, 9. It also separately requested related communications—specifically Slack messages[2] and emails. *See e.g.*, Exhibit K at RFP Nos. 82–87. In addition to copyright infringement, dbrand must show that Casetify knowingly removed or falsified CMI associated with dbrand's works, and thus the requested documents are undoubtedly relevant to dbrand's claims. There is far more than the mere "possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006). However, Casetify responded to dbrand's requests with what it called "final artwork files," with no accompanying iterative design files. *See* Exhibit J at 8. Casetify further produced just two Slack conversations: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Exhibits T, U.

Regarding design files, Casetify stated that the designers "*did not have/keep iterative design files* and to date no iterative design files have been located." *See* Exhibit J at RFP Nos. 6,

---

[2] Slack is a messaging service, similar to Microsoft Teams or Google Chat.

5

8, 9. As for more Slack and email communications, Casetify represented that it would "search for and produce documents as part of its rolling production." *See id.* at RFP Nos. 82–87.

In a subsequent call to address both categories—design files and Slack messages—Casetify reiterated that it was investigating and stated: "[w]e know our discovery obligations, and we're in the process of supplementing our discovery responses" and "[w]e will comply with our obligations to supplement when investigation is finished." *See* Exhibit N at 4:3-4; 7:24-25.

Soon thereafter, dbrand deposed Harvey Mok—Casetify's Vice President of Business Development. *See* Exhibit R ("Mok Dep.") at 35:1-4. Mr. Mok is responsible for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 35:7-10; 37:23-24. Relevant here, he was involved ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 40:15-20.

Mr. Mok testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Mr. Mok explained ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Mr. Mok's testimony directly contradicts Casetify's responses. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Yet none of these ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were produced—instead, Casetify produced the "final

artwork images" and maintained the other documents did not exist. These documents are plainly relevant in a case centered on the design process of the Accused Works and must be produced.

### ii. Communications Concerning the Design of the Accused Works

At the outset of this litigation, Casetify denied—under penalty of perjury—that it had ever "downloaded copies of the dbrand Teardowns from dbrand's website," and averred that there were "None" documents reflecting such downloads. *See* Exhibit E at RFA No. 1 and C at RFP No. 16. But after dbrand presented evidence that the Accused Works incorporate various "copyright traps" added to catch infringers, this story quickly changed. Casetify subsequently produced Slack messages ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Exhibit T.

Even the produced Slack messages, however, were deficient. As revealed in the deposition of Terence Fung—Casetify's Engineering Director—these messages ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

dbrand specifically requested, the "***complete*** Slack threads" for the Accused Works to be produced "in original file format … with all original metadata retained." *See* Exhibit K at RFP Nos. 82-87. Casetify's curated production is non-responsive and violates the ESI provisions of Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business."). Recognizing that the ▓▓▓▓▓▓▓▓" messages could be extensive, dbrand narrowed this request to the period from May 1 to July 31, 2023—the timeframe in which the Accused Works were conceived, developed, and released. *See* Exhibit A at 5.

Casetify's failure to produce the Slack messages is especially troubling considering its

7

initial refusal to produce even the curated excerpt—and its certified denial that such messages existed at all. To date, the incomplete "███████" messages are the *only* communications Casetify has produced from the relevant design period that relate to the creation of the Accused Works. The complete communications are undoubtedly "matter[s] that 'bear[] on, or that reasonably could lead to other matters that could bear on, any issue that is or may [be] in the case.'" *Batchelor v. City of Chicago*, 2020 WL 13647794, at *2 (N.D. Ill. Nov. 17, 2020).

### iii. Other Communications Containing the Term "Inside Out"

Along with the communications identified by Messrs. Mok and Fung, additional messages were brought to light by another witness—Joe Kwan, Casetify's Vice President of Designs. When asked whether there was a Slack channel for the infringing Inside Out line, ███████

███████

███████

███████

███████

These statements directly contradict Casetify's improbable claim that no Slack channels existed containing the term "Inside Out." To clarify the discrepancy, dbrand asked Mr. Kwan whether he could search Casetify's Slack for "Inside Out" using his mobile phone, ███████

███████

███████

███████

███████

8

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Of course, this ignores that the request had *already* been made in writing—including a request expressly seeking Slack messages with the term "Inside Out" (*see* Exhibit K, RFP No. 83)—and through multiple meet-and-confers on this exact issue. And despite Casetify's categorical denials that such messages existed, ▮▮▮▮▮▮▮▮▮▮▮▮. Communications containing "Inside Out" are among the most fundamental documents in the present case and must be produced.

### iv. Documents and Communications Concerning the "Shippers"

During this litigation, dbrand discovered that Casetify placed cardboard advertisements – referred to as "Shippers"—in Best Buy stores. Each Shipper includes at least one copy of Casetify's infringing designs, and thus each Shipper constitutes another infringing copy of the Accused Works in the United States—plainly relevant to dbrand's claims. In response to dbrand's discovery requests, Casetify did produce some documents concerning these Shippers. However, at the deposition of Mr. Mok, dbrand learned critical information that had not been disclosed, including:



*See* Mok Dep. at 64:10-67:6. Contrary to this new information, Casetify previously insisted that:



*See* Exhibits K at 52; J at 11 and 18-19; [14] ¶ 63.

Casetify's failure to disclose this information is particularly troubling given its central defense: that dbrand is not entitled to any relief because "the claims and claimed damages are

9

solely and entirely limited to acts occurring on US soil," but "none of the accused products were designed, developed or built in the United States." *See* Exhibit K at 4. Although this position is legally unfounded, Casetify's reliance on it underscores the severity of its ongoing refusal to produce information concerning the Shippers, which constitute additional infringing copies of the Accused Works in the United States. Casetify should be compelled to produce these documents.

### v. Documents Concerning the Designers' Computers

At his deposition, Mr. Fung revealed that Casetify has ▓▓▓▓ ▓▓▓▓ but Casetify refuses to produce them. As detailed in dbrand's concurrent motion for sanctions, ▓▓▓▓ ▓▓▓▓ Casetify claims it did not breach its duty to preserve because ▓▓▓▓ ▓▓▓▓ *See* Fung Dep. at 112:6–15. Although this argument is unfounded—the duty arises when litigation is anticipated, not filed—the fact that Casetify's defense hinges on the uncertainty of this date underscores the seriousness of its refusal to produce these documents.

Mr. Fung testified ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ Particularly given Casetify's arguments against spoliation, these documents are critical and must be produced.

### vi. Documents Showing the Timing of the Design Process

From the outset, Casetify sought information concerning the design of the Accused Works, "including the dates this process took place." *See* Exhibit D at ROG No. 1. Casetify, however, was

10

purportedly unable to identify the specific dates when this process started or ended. *See id.* ("a complete answer to this ROG cannot be made other than the explanations already provided").

It was not until Mr. Fung's deposition that dbrand learned ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As further explained in that motion, buried in the metadata of the Accused Works, dbrand discovered Exact Matches of its own designs. This chance discovery directly contradicted Casetify's repeated assertions—made under penalty of perjury—that it never "downloaded copies of the dbrand Teardowns," that its designers did not save "iterative design files" or "versions prior to the final image," and that it had already produced all copies of the Accused and Asserted Works in its possession. *See* Exhibits E at 1; J at 5, 9, and 11; and I at 9.

Mr. Fung's testimony confirmed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but Casetify still refuses to produce them. This information is key to establishing when Casetify's infringement began and how long Casetify's designers took to manipulate dbrand's designs to create the Accused Works. These documents should be produced.

### B. Documents Concerning the Alter-Ego Relationship Between the Defendants

A key issue in this case is the relationship among the three Defendants. Casetify contends it can evade liability by attributing some acts to Casetagram in Hong Kong and others to Westside and Westrock in the U.S. *See e.g.*, Exhibit M at 58-59. However, the evidence is clear that the U.S. Defendants are shell corporations and alter egos of Casetagram—for example, ▮▮▮▮▮▮

11

████████████████████████████████████████

████████████████████ *See e.g.*, Exhibits P ("Jia Dep") at 21:21-22:5; S ("Yeung Dep.") at 19:3-21 and 27:11-30:9. In discovery, dbrand propounded targeted requests, including for documents showing shared executives and employees, overlapping payroll records, intercompany bank transfers, mutual agreements and governing documents, transfer pricing arrangements, related corporate structures, and more. *See* Exhibit V at RFP Nos. 107-120.

One day before its responses were due, Casetify asked for an extension, stating that due to "the limited availability of our client" it would miss the deadline. *See* Exhibit W at 1. However, the proposed extension would place production in the middle of depositions the following week. dbrand explained that it needed the documents for use *during* the depositions and thus could not agree to the extension. *See id*. The next day, Casetify responded with boilerplate objections, culminating in an identical refusal for *every* request: "Defendant Casetagram will not search for or produce documents responsive to this request." *See* Exhibit V. This timing and refusal made clear that Casetify had not even attempted to locate responsive documents during the prior month.

The following week, dbrand raised some of these deficiencies during depositions, to which Casetify responded, ████████████████████████ *See e.g.*, Yeung Dep. at 251:24-252:20. Upon returning from Hong Kong, dbrand immediately sent an email inquiring further about these documents, to which Casetify responded that it would "take your email under advisement" and was "await[ing] communications from our client." *See* Exhibit A at 2, 5. Casetify provided no further updates or documents, despite months of additional correspondence and meet-and-confers. *See id*. During his deposition, Casetify's co-founder—Ronald Yeung—████████████

████████████████████████████████

████████████████████████ most of the withheld documents are responsive

12

to not only dbrand's more recent requests, but also its initial requests served nine months prior—those which Casetify had represented were fully satisfied. For example, when dbrand requested documents showing "Casetify sales representatives in the United States," Casetify responded that "there are no sales representatives having the territories in the U.S. for the Accused Products," (*see* Exhibit C at RFP No. 43)—███████████████████████████████████████████████████████████████████████████████████.

Other early requests were directed to documents showing "Accused Products imported into the United States," "Accused Works distributed … within the United States," "revenue derived from all sales of the Accused Products," "Casetify's net profit from all sales of the Accused Products," and "distribution agreements for Casetify." *See* Exhibit Y at RFP Nos. 20, 21, 26, 40, 44. Furthermore, dbrand directed all these requests not only to the then-named Defendants, Casetagram and Westside, but also to "other entities under common ownership and control" (*see id.* at 6)—████████████████████████████████████████████████████████████████.

### i. Contracts Between the Defendants

During his deposition, Mr. Yeung acknowledged the existence of several relevant contracts and agreements, including: ██████████████████████████████████████████████████████████████████████████████████████████████████ Casetify refuses to produce these and any other agreements between the Defendants.

### ii. Purchase Orders Between Casetagram and Westrock

Mr. Yeung also testified that Casetify maintains records █████████ ████████████████████████████████████████ ███████████████████████████████ Casetify flatly refuses to produce them.

### iii. Corporate Structure of the Defendants

Mr. Yeung also testified that ████████████████████████████ ████████████████████████ that Casetify will not produce. *See id.* at 69:10-15.

### iv. "████████████████████" of the Defendants

Mr. Yeung was designated as Casetify's witness for several Rule 30(b)(6) topics, including:

Shared operations of Casetagram Limited, Westside Lab, Inc., and Westrock Services (Wholesale), Inc., including shared executives, employees, customers, and supply chains, overlapping corporate structures, and digital and physical assets, from January 1, 2023 – Present.

*See* Exhibit X ¶ 2. During his deposition, Mr. Yeung testified ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████.

14

## IV. CONCLUSION

In deciding this motion, the Court should consider the proportionality factors set forth in Rule 26(b)(1), including: the importance of the issues at stake in the action; the amount in controversy; the parties' relative access to relevant information; the parties' respective resources; the importance of the discovery in resolving the issues; and whether the burden or expense of the proposed discovery outweighs its likely benefit.

As set forth above, the requested documents are highly relevant and go directly to the core issues in this case: the design and development of the Accused Works, their distribution and sale in the United States, and the alter-ego relationship between the Defendants.

Casetify is a sophisticated litigant with ample resources—admitting in this case that it has yearly revenues of $300 million and is worth approximately $1 billion. See [53] ¶ 64. By comparison, dbrand operates with a fraction of those resources and derives its value almost entirely from its distinctive brand and unique copyrighted designs. See e.g., [114] ¶ 61. Thus, the copyright issues at stake in this action are critically important to dbrand's business.

Moreover, the requested materials are within Casetify's exclusive possession, and their production is not unduly burdensome or expensive. For every category, ███████████ ███████████████████████████████████ most of which are readily identifiable through simple keyword searches in Casetify's email, Slack, Asset Management Records, or proprietary Content Management System. Any minimal burden is far outweighed by the clear relevance of these documents to resolving this matter.

For the foregoing reasons, dbrand respectfully requests that the Court grant this motion to compel. For the Court's convenience, Attachment A hereto provides a summary of the specific documents sought, consistent with the arguments presented herein.

DATED June 13, 2025.

    Respectfully submitted,

    By: /s/ *Collin D. Hansen*
    Collin D. Hansen (ARDC#: 6335991)
    Email: chansen@wnlaw.com
    **WORKMAN NYDEGGER**
    840 S Northwest Hwy, Suite 10
    Barrington, IL 60010
    (801) 322-8464 (Telephone)

    Brian N. Platt (*pro hac vice*)
    Email: bplatt@wnlaw.com
    Chad E. Nydegger *(pro hac vice)*
    Email: cnydegger@wnlaw.com
    Kenneth J. Dyer *(pro hac vice)*
    Email: kdyer@wnlaw.com
    Ryan C. Morris *(pro hac vice)*
    Email: rmorris@wnlaw.com
    **WORKMAN NYDEGGER**
    60 East South Temple, Suite 1000
    Salt Lake City, UT 84111
    (801) 533-9800 (Telephone)

    *Attorneys for Plaintiff dbrand inc.*

**CERTIFICATE OF CONFERENCE**

      dbrand hereby certifies that it conferred with counsel for Casetify on April 24, 2025, for approximately 1.6 hours regarding the present Motion. Before that conference, the parties exchanged correspondence concerning each of the requested categories of documents, the associated deposition testimony, and the relevant discovery requests. During the meet-and-confer, dbrand further explained the bases for the motion in more detail and requested that each category of documents be produced. Casetify responded that it did not believe that any further production is warranted and that it will oppose the motion.

                                                          */s/ Collin D. Hansen*

**CERTIFICATE OF SERVICE**

I hereby certify that on the June 13, 2025, I filed the foregoing **MOTION TO COMPEL** through this Court's electronic filing system, which sent electronic notification of this filing to all counsel of record.

*/s/ Collin D. Hansen*

## Schedule A

1. All draft copies of the Accused Works. *See* Section III(A)(i).
2. All communications between ▮▮▮▮▮ concerning the Accused Works. *See* Section III(A)(i).
3. All communications ▮▮▮▮▮ concerning the Accused Works. *See* Section III(A)(i).
4. All emails and Slack channels concerning the design of the Accused Works. *See* Section III(A)(i).
5. The complete "▮▮▮▮▮" Slack channel from May 1, 2023 – July 31, 2023. *See* Section III(A)(ii).
6. All emails and Slack channels that include the term "Inside Out." *See* Section III(A)(iii).
7. All documents and communications concerning the design, manufacture, and distribution of the Shippers. *See* Section III(A)(iv).
8. All communications with ▮▮▮ concerning the Shippers. *See* Section III(A)(iv).
9. All digital copies of the Accused Works shared with ▮▮▮▮▮. *See* Section III(A)(iv).
10. All Asset Management Records for all computers assigned to the designers of the Accused Works. *See* Section III(A)(v).
11. All documents and communications concerning ▮▮▮▮▮ ▮▮▮▮▮. *See* Section III(A)(v).
12. All records from Casetify's Content Management System concerning all drafts of the Accused Works. *See* Section III(A)(vi).
13. All contracts, agreements, and memoranda of understanding between ▮▮▮▮▮. *See* Section III(B)(i).
14. All purchase orders ▮▮▮▮▮ for the Accused Works. *See* Section III(B)(ii).
15. Documents sufficient to show the complete corporate structures of the three Defendants, including all parent, grandparent, sister, and child entities, and all executives and board members of the same, for the period from January 1, 2023 – Present. *See* Section III(B)(iii).
16. Documents sufficient to show the ▮▮▮▮▮, including all executives and board members of that company from January 1, 2023 – Present. *See* Section III(B)(iv).