**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DBRAND INC., a Canadian Corporation,

*Plaintiff/Counterclaim Defendant*

v.

CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, and WESTSIDE LAB, INC., a California corporation, and WESTROCK SERVICES (WHOLESALE), INC.

*Defendants/Counterclaimants*.

CASE NO. 24-cv-1919-MMP-MV

**JURY TRIAL DEMANDED**

**District Judge Martha M. Pacold**
**Magistrate Judge Maria Valdez**

**<u>DBRAND'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Casetify Spoliated Critical Evidence In Bad Faith ..... 3

1. Casetify Cannot Shield Its Misconduct Through Appeals To Proportionality Or Extraterritoriality ..... 4

2. Casetify Acted in Bad Faith ..... 9

3. Casetify's Spoliation Prejudices dbrand ..... 15

B. Casetify Cannot Justify Its Other Misconduct In This Case ..... 18

1. Casetify Cannot Justify Withholding the Exact Matches ..... 18

2. Casetify Cannot Justify Its Lies About the Identity of the Designers ..... 20

3. Casetify Cannot Justify Its Lies About the Design Process ..... 22

C. The Court Should Impose Severe Sanctions For Casetify's Misconduct ..... 22

III. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
600 U.S. 412 (2023)....7

*Advanced Magnesium Alloys Corp. v. Dery*,
2024 WL 244931 (S.D. Ill. Jan. 23, 2024)....13

*In re Aircrash Disaster New Roselawn, Ind. Oct. 31, 1994*,
172 F.R.D. 295 (N.D. Ill. 1997)....6

*Axis Ins. Co. v. Am. Specialty Ins. & Risk Serv., Inc.*,
2021 WL 2910814 (N.D. Ill. Jul. 12, 2021)....19

*BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*,
326 F.R.D. 171 (N.D. Ill. 2018)....9

*Barnes-Staples v. Murphy*,
No. 20-CV-3627, 2021 WL 1426875 (N.D. Ill. Apr. 15, 2021)....6

*Batchelor v. City of Chicago*,
No. 18-cv-8513, 2020 WL 13647794 (N.D. Ill. Nov. 17, 2020)....5

*Carbajal v. Warner*,
2014 WL 145305 (D. Colo. 2014)....13

*Craigville Telephone Company v. T-Mobile USA, Inc.*,
2022 WL 1499908 (N.D. Ill. May 12, 2022)....4

*Deal Genius, LLC v. 02COOL, LLC*,
682 F. Supp. 3d 727 (N.D. Ill. 2023)....8

*Dotson v. Bravo*,
321 F.3d 663 (7th Cir. 2003)....21

*Inventus Power v. Shenzhen Ace Battery*,
339 F.R.D. 487 (N.D. Ill. 2021)....5

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
235 F.R.D. 447 (N.D. Ill. 2006)....6

*Laub v. Horbaczewski*,
2020 WL 9066078 (C.D. Cal. Jul. 22, 2020)....10

*Lina Dou v. Carillon Tower/Chicago LP*,
2020 WL 3036002 (N.D. Ill. Jun. 5, 2020) ....................9

*Livingston v. City of Chicago*,
597 F. Supp. 3d 1215 (N.D. Ill. 2022) ....................13

*Mathis v. John Morden Buick, Inc.*,
136 F.3d 1153 (7th Cir. 1998) ....................9

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ....................5

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
975 F.Supp.2d 920 (N.D. Ill. 2013) ....................7

*Rawat v. Navistar Int'l Corp.*,
No. 08 C 4305, 2011 WL 3876957 (N.D. Ill. Sept. 1, 2011) ....................6

*Rentmeester v. Nike, Inc.*,
2015 WL 3766546 (D. Or. 2015) (affirmed) ....................5

*Rezende v. Citigroup Glob. Markets Inc.*,
2011 WL 1584607 (S.D.N.Y. 2011) ....................13

*RJR Nabisco, Inc. v. European Cmty.*,
579 U.S. 325 (2016) ....................7

*Say It Visually, Inc. v. Real Estate Educ. Co.*,
2025 WL 933951 (N.D. Ill. Mar. 27, 2025) ....................24

*Sonrai Sys., LLC v. Romano*,
2021 WL 1418405 (N.D. Ill. Jan. 20, 2021) ....................9

*Synopsys, Inc. v. AzurEngine Techs., Inc.*,
401 F.Supp.3d 1068 (S.D. Cal. 2019) ....................7

*Taylor v. City of Chicago*,
2018 WL 9651597 (N.D. Ill. Sept. 12, 2018) ....................22, 23

**Statutes**

17 U.S.C. § 1201 ....................4, 5, 7

17 U.S.C. § 1202 ....................7

17 U.S.C. § 1202(b) ....................6

**Other Authorities**

Fed. R. Civ. P. 26 ........................................ 4

Fed. R. Civ. P. 26(b)(1) ........................................ 8

Fed. R. Civ. P. 34 ........................................ 19

Fed. R. Civ. P. 34(b)(2)(E) ........................................ 19

Fed. R. Civ. P. 34(b)(2)(E)(ii) ........................................ 19

Fed. R. Civ. P. 37(b)(2) ........................................ 21

Fed. R. Civ. P. 37(e)(2) ........................................ 15

Fed. R. Evid. 702 ........................................ 13

Plaintiff dbrand inc. ("dbrand") hereby files this reply in support of its motion for sanctions against Defendants Casetagram Limited and Westside Lab, Inc. (collectively, "Casetify") for spoliation, failure to produce evidence, and certification of false discovery responses.

## I. INTRODUCTION

In its motion, dbrand demonstrated that severe sanctions, including case terminating sanctions, are warranted against Casetify because of Casetify's discovery misconduct in this case. As shown in the motion, Casetify in bad faith spoliated critical evidence, including the design files for the Accused Works, the designers' laptop data, and internet archive pages. Compounding that misconduct, Casetify withheld critical evidence during discovery and blatantly lied in discovery responses. Casetify's misconduct reveals not just a flagrant disregard of its discovery duties, but an intent to hide evidence and frustrate the judicial process. Such misconduct warrants even the harshest sanction—entry of default judgment against Casetify.

Casetify's opposition serves only to confirm that sanctions are necessary to remedy the harm caused by Casetify's misconduct, punish Casetify, and deter future affronts to the Federal Rules and this Court's authority. Casetify spills a considerable amount of ink in the first six pages of its opposition addressing issues that are not implicated by dbrand's motion. It waxes on about its defenses and potential counterclaims against dbrand, including its allegations of a Distributed Denial of Service Attack ("DDoS"). But most of those issues and claims are not even in the case—Casetify has a pending motion to amend its answer to add those to the case, but, as dbrand has shown, Casetify is out of time and has no good cause to interject those into the case now. Those claims are also meritless and brought as part of Casetify's new strategy of litigation by attrition. In any event, they have nothing to do with Casetify's misconduct and the basis for sanctions.

When it does address the issue of sanctions, Casetify does not dispute that it spoliated evidence when it had a duty to preserve that evidence. Instead, it tries to avoid the consequences

of its actions through sophistry. That effort fails. Casetify's primary tactic is an effort to minimize the extent of the harm caused by its spoliation by asserting that the only evidence that matters are the Final Images, and that iterative design files or the designers' laptop data are immaterial. This argument has no basis in law and flouts basic tenets of the US court system. The Federal Rules of Civil Procedure—which govern Casetify as a party to this case—allow for discovery into all aspects of the claims, including conduct that occurred overseas. And neither dbrand's focus on acts in the United States nor principles of extraterritoriality in any way insulate Casetify's acts overseas or preclude dbrand's right to that evidence. They certainly cannot absolve Casetify's deliberate destruction of evidence. Designing infringing works in China is simply not a means to shield a company from the consequences of its bad faith misconduct. Yet, that is precisely the position Casetify has taken. And it is the sole basis for Casetify's argnment that its misconduct has caused no harm to dbrand.

Casetify also principally challenges the imposition of any sanction by contending that, while it destroyed critical evidence in contravention of its duty to preserve that evidence, there is no evidence that it acted in bad faith. But that is wrong. There is overwhelming evidence that Casetify acted in bad faith, that is, for the purpose of hiding adverse information. Casetify initially started destroying critical evidence in direct response to dbrand's copyright infringement allegations and as part of an internal investigation. It also erased the designers' laptop data [redacted] And Casetify's selective deletion of evidence is further evidence of bad faith—dbrand found that Casetify has [redacted], but the design files for the Accused Works is conspicuously absent, even though Casetify retained other design files and [redacted]. That selective deletion speaks volumes. Moreover, Casetify's intent to hide adverse evidence is evident

from its conduct throughout this case, especially its discovery responses. Casetify has consistently tried to hide information and has even provided knowingly false discovery responses to key requests by dbrand. Casetify has thoroughly exhibited an intent to deprive dbrand of information. Even today, Casetify continues to make meritless arguments in an attempt to retroactively excuse its non-disclosures, as addressed in the briefing for dbrand's concurrent motion to compel. The only conclusion that can be drawn from the totality of the evidence and common sense is that Casetify has acted in bad faith.

As for the appropriate sanction, Casetify has no real response to dbrand's showing that case terminating sanctions or, at least, adverse inferences and preclusion of evidence, are appropriate. Casetify says that default judgment is not proportional to the misconduct, but the sole basis for that argument is Casetify's view that any evidence from outside the United States is immaterial and ought to be ignored. That view is baseless and contradicts basic tenets of law governing litigation in US courts. Casetify's argument regarding an adverse inference and preclusion of evidence is equally faulty. Casetify principally contends there is no bad faith, but as dbrand has shown, the evidence is overwhelming that Casetify has acted in bad faith.

Ultimately, Casetify cannot defend its misconduct in this case or mount any effective response to the need for sanctions. The Court should issue the requested sanctions against Casetify.

## II. ARGUMENT

### A. Casetify Spoliated Critical Evidence In Bad Faith.

As dbrand showed, Casetify spoliated critical evidence in bad faith, warranting the imposition of the Court's harshest sanctions. Mot. at 17-24. Casetify caused the destruction of key evidence—namely, the design files for the Accused Works, the designers' laptop data, and internet archive files. Mot. at 20-21; *id.* at 3-9. In its response, Casetify does not dispute that it had a duty to preserve the evidence. Nor does it dispute that it caused the destruction of this evidence in

violation of that duty. Indeed, Casetify concedes that it destroyed certain evidence in violation of its duty to preserve. Opp. at 15, 19. Rather than dispute its preservation duty or its destruction of evidence, Casetify primarily opposes the imposition of sanctions by obfuscating the issues and claiming the lack of bad faith. Casetify's arguments are meritless.

#### 1. Casetify Cannot Shield Its Misconduct Through Appeals To Proportionality Or Extraterritoriality.

Casetify's central argument—and one from which many of its other arguments flow—is that "principles of proportionality apply to the Motion" for sanctions and "the unavailability of certain other ESI relating to acts outside the United States, does not constitute a discovery violation where applicable sanctions could apply." Opp. at 7. According to Casetify, because copyright infringement claims have been dismissed, "the [Digital Millenium Copyright Act] DMCA has no extra-territorial application," and the Amended Complaint is limited to products sold in the United States, "only the Final Images are pertinent to the analysis," and destruction of any other images is immaterial. Opp. at 7. Casetify contends sanctions for anything other than the Final Image files would be inappropriate. *Id.* Remarkably, Casetify offers no legal authority for such an audacious argument.[1] And that is likely because it contradicts basic tenets of our justice system.

Casetify bases its argument on the fact that dbrand has voluntarily dismissed its copyright claims in this case, that the Amended Complaint is limited to products sold in the United States, and that the DMCA has no extraterritorial application. Opp. at 7. But not a single one of those points could insulate Casetify's "acts outside the United States" for purposes of discovery or sanctions. First, the fact that dbrand dropped its stand-alone copyright infringement claim does not

[1] Casetify cites the advisory committee notes to Rule 26 and *Craigville Telephone Company v. T-Mobile USA, Inc.*, 2022 WL 1499908, at *1 (N.D. Ill. May 12, 2022), but those merely indicate that the parties and court should consider proportionality in discovery and discovery disputes. They do not support Casetify's sweeping theory.

affect the scope of this case. dbrand's DMCA claims for Casetify's CMI violations still require a showing of copyright infringement. *See, e.g.*, *Rentmeester v. Nike, Inc.*, 2015 WL 3766546, at *8 (D. Or. 2015) (affirmed) (a CMI claim requires "an underlying act of [copyright] infringement"). Accordingly, the lack of a standalone copyright infringement claim does not diminish or limit the scope of discovery or the information relevant to this lawsuit. And the design files for the Accused Works and the designers' laptop data are unquestionably central to that issue.

Second, the fact that the Amended Complaint is limited to products sold in the United States or that the DMCA is not extraterritorial does not somehow limit Casetify's discovery obligations or the availability of sanctions for Casetify's misconduct. As a party subject to the jurisdiction of this Court, Casetify is subject to the authority of the Court and Federal Rules of Civil Procedure. "'The taking of discovery from foreign entities in civil litigation pending in the United States federal courts is regulated by'" among other things "'the Federal Rules of Civil Procedure.'" *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 497 (N.D. Ill. 2021) (quoting *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1160 (D. Or. 2015)). And the "Federal Rules of Civil Procedure contemplate broad discovery." *Batchelor v. City of Chicago*, No. 18-cv-8513, 2020 WL 13647794, at *2 (N.D. Ill. Nov. 17, 2020). "Courts broadly construe relevancy to include any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may [be] in the case.'" *Id.* (quoting *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16-cv-2522, 2017 WL 11560211, at *2 (N.D. Ill. Aug. 15, 2017)).

Moreover, even accepting Casetify's flawed view of the issues in the case, the Supreme Court has explained that "discovery is *not limited* to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437

U.S. 340, 351 (1978) (emphasis added); *see Rawat v. Navistar Int'l Corp.*, No. 08 C 4305, 2011 WL 3876957, at *6 (N.D. Ill. Sept. 1, 2011), *aff'd*, No. 08-CV-04305, 2011 WL 6097772 (N.D. Ill. Dec. 5, 2011) (explaining that discovery is "not constrained in a narrow way by a case's merits, 'for a variety of fact-oriented issues may arise during litigation that are not related to the merits.'") (quoting *Oppenheimer*, 437 U.S. at 351; *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 422 F.Supp.2d 934, 945 (N.D. Ill. 2006)); *Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at 2-3 (N.D. Ill. Apr. 15, 2021) (relevance is construed broadly and is "not limited to issues raised by the pleadings"). Accordingly, "[r]equests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006); *In re Aircrash Disaster New Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997) (same).

Here, the evidence destroyed by Casetify is unquestionably relevant to the subject matter of this case, even if the case is limited to products imported, distributed, and sold in the United States. The evidence concerns the conception and design of, and communications about, the very works that were distributed in the United States. How the Accused Works were created goes to central questions in this case, such as whether Casetify copied dbrand's works and to what extent. Moreover, dbrand's CMI claims focus, in part, on Casetify's knowledge that CMI was removed or altered and on whether Casetify knew or had reason to know that the removal or alteration of CMI would "induce, enable, facilitate, or conceal infringement" of copyrights in the United States. 17 U.S.C. § 1202(b). Evidence about the conception and design of the Accused Works goes to the very essence of dbrand's claims. Even if the conception and design occurred outside the United States, those issues are central to whether distribution of infringing works in the United States would violate the Copyright laws. Casetify offers no authority for its remarkable view that the U.S.

focus of the claims in this case could cut off or insulate acts that occurred overseas.

Casetify also misunderstands principles of extraterritoriality. As the Supreme Court recently explained, even if Congress has not affirmatively and unmistakably instructed that a statute applies extraterritorially, that does not end the inquiry. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 418 (2023). "If a provision is not extraterritorial," then the question becomes "whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision." *Id.* To determine this, courts must identify the statute's focus—"'the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate'"—and "'ask whether the *conduct relevant to that focus* occurred in the United States territory.'" *Id.* (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 413 (2018)) (cleaned up). In other words, "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). Here, the focus of the CMI provisions is stopping infringers from inducing, enabling, facilitating, and concealing copyright infringement in the United States by altering, removing, or falsifying CMI. *See* 17 U.S.C. § 1202; *see Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F.Supp.2d 920, 928 (N.D. Ill. 2013) ("The DMCA seeks to hamper copyright infringement in the digital age by protecting 'copyright management information' (CMI) in various ways."). That is the relevant conduct to the statute's focus at issue in this case. And because the focus of the CMI provisions is stopping copyright infringement in the United States, "there is plainly no extraterritoriality problem here." *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F.Supp.3d 1068, 1073 (S.D. Cal. 2019) (holding no extraterritoriality issue with 17 U.S.C. § 1201 of the DMCA). This is so "even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S. at 337. And as explained

above, the Federal Rules permit discovery into the entirety of dbrand's claims, including Casetify's conduct overseas.

In short, nothing about this case limits Casetify's discovery obligations to the Final Images of the Accused Works. Nor does anything restrict dbrand's discovery of the design of the Accused Works even if it occurred overseas. Quite the contrary, dbrand is entitled to discover the conception and design of the Accused Works (and much more). Casetify's acts outside the United States contributed to and are a part of the domestic violations at issue in this case. Casetify cannot avoid the consequences of destroying highly relevant evidence that it had a duty to preserve.

Casetify also makes a naked reference to principles of proportionality, Opp. at 7, but this is insufficient. Proportionality is assessed according to six factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Deal Genius, LLC v. 02COOL, LLC*, 682 F. Supp. 3d 727, 733 (N.D. Ill. 2023). Casetify does not mention a single factor, much less substantiate any factor with argument or evidence. And with good reason. Each of the factors strongly establishes that the evidence is proportional to the needs of the case. The design files, designer laptop data, and internet archive files—which Casetify spoliated—are all exceptionally important to the issues at stake in this lawsuit. The design files and designer laptop data go to the core issues of copying, and falsification, removal, or alteration of CMI. The evidence would have also been critical to showing Casetify's knowledge and intent with regard to the CMI violations. The internet archive data would have also been important with regard to whether Casetify falsified CMI on its website, as well as the extent of its distribution of the Accused Works. Casetify was also the one with sole access to this evidence; dbrand cannot

substitute it elsewhere. Casetify is a billion-dollar company with ample resources, and the burden or expense of preserving and then producing the evidence would not have outweighed the likely benefit. The spoliated evidence was critical to the issues in this case, and Casetify has done nothing to suggest it would have been burdened to retain or produce the evidence. "[C]ommon sense and experiential assessment" firmly establish that principles of proportionality cannot absolve Casetify of its misconduct. *BankDirect Capital Finance, LLC v. Capital Premium Finance, Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Proportionality, like other concepts, requires a common sense and experiential assessment.").

Casetify's attempt to limit the relevant evidence to the Final Images and absolve itself of its misconduct utterly fails.

**2. Casetify Acted in Bad Faith.**

Casetify next tries to absolve itself by arguing continually that it did not act in bad faith. Opp. at 10-11, 12, 15, 17, 19, 21. Casetify is wrong. As dbrand demonstrated, Casetify spoliated evidence in bad faith. Mot. at 22-23. Casetify's arguments to the contrary are baseless.

Bad faith in the context of sanctions "means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). In assessing bad faith, "the trier of fact is entitled to draw any reasonable inference." *Id.* Indeed, "'[i]ntentional destruction and bad faith may be proved inferentially and with circumstantial evidence.'" *Sonrai Sys., LLC v. Romano*, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021) (quoting *In re Text Messaging Antitrust Litig.*, 46 F.Supp.3d 788, 798 (N.D. Ill. 2014)). Furthermore, the Court evaluates bad faith according to the totality of the circumstances. *Lina Dou v. Carillon Tower/Chicago LP*, 2020 WL 3036002, at *6 (N.D. Ill. Jun. 5, 2020) ("the court may also rely on 'the totality of the circumstances' to infer bad faith") (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982)). Courts have looked at a variety

of factors in assessing bad faith, including "the timing of the destruction, the method of deletion …, selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation." *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. Jul. 22, 2020). Here, there is ample evidence that Casetify destroyed evidence to hide information.

Starting with timing, Casetify's destruction of evidence occurred in direct response to dbrand's copyright infringement allegations and in connection with Casetify's internal investigation. Two days after dbrand filed its Canadian lawsuit against Casetify, and the day after Zachery Nelson's JRE Video, Casetify announced that it had initiated an investigation into the copyright allegations. Exhibit 2 to Mot. It further stated that Casetify had "immediately removed the designs in question from all platforms." *Id.* [redacted] Casetify caused the deletion of internet archive data. Exhibit 28 to Mot. Thus, the beginning of Casetify's destruction of evidence arose in direct response to dbrand's copyright infringement allegations. Not only that, but Casetify's investigation had already concluded that the Accused Works comprise "Direct Elements" of dbrand's products. Exhibit 8 to Mot. Casetify now confusingly argues that it received notice of the copyright allegations, not from the JRE Video, but from an alleged DDoS attack. Opp. at 10, 17. But the fact remains, as Casetify admits, that Casetify "was informed of dbrand's Canadian copyright claims" when it began destroying evidence. *Id.* And the evidence shows that Casetify initiated an investigation into those claims and in connection sought the removal of evidence. Casetify's statement read: "We are currently investigating a copyright allegation against us. We have immediately removed the designs in question from all platforms." Exhibit 2 to Mot. In short, Casetify began deleting material in response to learning of dbrand's copyright infringement allegations and its own discovery that its Accused Works took "Direct Elements"

from dbrand's products.[2]

The timing of the destruction of the designers' laptop data is further evidence of an intent to hide evidence. [redacted]. Exhibit 36 to Mot. ("Tucker Decl." ¶ 12); Exhibit 6 to Mot. (Fung Dep. at 108:7-12). Casetify contends that dbrand cannot show bad faith in the destruction of the designers' laptop data because those laptops were disposed of according to an "ordinary protocol."[3] Opp. at 20; *id.* at 8, 11 (company had a business explanation). But Casetify does not have an official "protocol" that dictates how it deals with the retention and destruction of documents.[4] *See* Exhibit 6 to Mot.

[2] Casetify suggests that the request to delete information from the internet archive was related to the supposed DDoS attack and not the copyright infringement allegations. Opp. at 17. Casetify has no evidence of this, only attorney argument. And common sense refutes the assertion. There is no apparent reason to request the deletion of internet archive pages in response to a DDoS attack. On the other hand, however, Casetify's own public statement linked the removal of information to the copyright infringement allegations. It stated: "We are currently investigating a copyright allegation against us. We have immediately *removed* the designs in question from all platforms." Exhibit 2 to Mot. (emphasis added).

[3] Casetify claims that nothing was "erased" from the designers' computers, just "factory reset." *See* Opp. at 8. Yet elsewhere, Casetify acknowledges that after each "laptop was factory reset … it contained no files associated with [the designers]" and that "backups were not made." *See* Opp. to Motion to Compel [188] at 19. Whatever Casetify calls it, the result is the same.

[4] While Casetify claims in the opposition that it has an "ordinary protocol" for document destruction, Mr. Fung testified that the "process is [not] recorded anywhere" and it "is [not]

(Fung Dep. at 93:16-94:18). Instead, it has various practices. Exhibit 6 to Mot. (Fung Dep. at 79:20-86:1). According to Casetify's designated corporate witness, [redacted] Exhibit 6 to Mot. (Fung Dep. at 98:3-7). If there is no specific instruction otherwise [redacted] Exhibit 6 to Mot. (Fung Dep. at 98:5-23). But Casetify [redacted] Moreover, according to Casetify's corporate designee, the technology department would have [redacted]. This evidence does not indicate a "legitimate business explanation." It shows that Casetify knew of the laptop data and specifically targeted its destruction. That is bad faith.

This bad faith is further confirmed by Casetify's selective deletion of evidence. As a forensic examination of Chan's laptop revealed, Casetify has [redacted]

conveyed to individuals," so it is unclear how this "protocol" could be applied. *See* Exhibit 6 to Mot. (Fung Dep. at 79:20-80:3).

[redacted]. But as dbrand demonstrated, that is implausible and contradicted by the record. Mot. at 7-8. Casetify has no response to that showing. And even if it were true, Casetify affirmatively erased those computers [redacted]. In short, it is clear that Casetify selectively targeted the design files for the Accused Works, and that selective destruction of evidence is indicative of Casetify's intent to hide adverse evidence. *Advanced Magnesium Alloys Corp. v. Dery*, 2024 WL 244931, at *8 (S.D. Ill. Jan. 23, 2024) ("'[s]elective

[5] Casetify challenges the declaration of H. Scott Tucker as expert "*ipse dixit*" and inadmissible. Opp. at 21 n.6. But Tucker's declaration is not based on mere say so. Tucker explained his technical training and accomplishments, as well as the fact that he received a forensic image of Chan's computer (supplied by Casetify's counsel). Exhibit 36 to Mot. (Tucker Decl. ¶¶4-9). He further showed that he examined the forensic image, and his declaration merely reports on what he found. Exhibit 36 to Mot. (Tucker Decl. ¶ 11-19). Reporting on the results of his examination based on his expertise is more than a sufficient basis for his testimony. *See Livingston v. City of Chicago*, 597 F. Supp. 3d 1215, 1224 (N.D. Ill. 2022) (rejecting challenge to expert under Rule 702 where he "bases his opinions on his expertise, the case-specific information listed in the report, and his inspection and site visit.").

Moreover, this is not a trial or summary judgment proceeding subject to the Federal Rules of Evidence—this is a motion addressing Casetify's spoliation and other misconduct in discovery, and the Court certainly has discretion to consider Mr. Tucker's declaration for that purpose. *See Carbajal v. Warner*, 2014 WL 145305, at *2 (D. Colo. 2014)("Plaintiff errs in his assertion that the [FRE] must be followed in determining a motion for sanctions."); *Rezende v. Citigroup Glob. Markets Inc*., 2011 WL 1584607, at *27 (S.D.N.Y. 2011) (adopted in relevant part) (rejecting the argument "that a sanctions motion—even a case-dispositive one" is subject to the Rules of Evidence). On a motion for sanctions, the standard is that "evidence relied upon … bear indicia of reliability"—which Mr. Tucker's declaration certainly satisfies. *Id.* Despite every opportunity, Casetify does not dispute that [redacted]

preservation,' and thus the selective failure to preserve, 'can also reflect intent.'").

Casetify's intent to hide adverse evidence is also evident from its conduct and discovery responses in this case. As dbrand demonstrated, Casetify has attempted to hide information and even provided false discovery responses to key requests. It denied instructing the Internet Archive to delete the Inside Out webpages before changing its position once dbrand confronted it with irrefutable proof that it had done exactly that. Mot. at 3-4.[6] It insisted that the Accused Works were original and not copied by dbrand, providing various purported source images, only to later change positions and produce messages [redacted]. Mot. at 9.[7] Casetify stated on numerous occasions that it did not have iterative versions of the Accused Works only for dbrand

[6] Casetify argues that its denial of dbrand's request for admission was proper, even in light of the later admitted evidence, because the request was compound. Opp. at 16. But Casetify does not explain how the request is "compound." Critically, it has no explanation for how the later produced evidence does not prove precisely what the RFA sought: after being notified of dbrand's copyright infringement allegations, Casetify requested that the Internet Archive remove Casetify webpages for the Accused Works from the Wayback Machine. Casetify contends that its corporate designee made a mistake, Opp. at 16, but the testimony it relies upon does not add up. Casetify initially denied the request for admission, Exhibit 18 to Mot. (RFA response No. 21), and after further prodding from dbrand, it denied the request yet again, explaining that the IT department reviewed the records and no one requested the URLs be removed. Exhibit 20 to Mot. (RFA response No. 21). But the corporate designee testified "that the first time when I received the request, I did not recall about the request" to the internet archive. Exhibit 6 to Mot. (Fung Dep. 153:2-9). "After that [he] remember[ed] there was another name," and then he "found th[e] record" of the request. Exhibit 6 to Mot. (Fung Dep. 154:5-19). That testimony does not align with the multiple RFA denials that Casetify provided. And if he was not consulted on the first denial, then Casetify lacked a good faith basis for making it. Notably Casetify's about-face was not an isolated incident—this was just one of *seven* RFA denials that Casetify amended to admissions at the same time, based on evidence presented by dbrand.

[7] Casetify contends that the "fact that Casetagram does not contest access to dbrand's work in this case factors against a finding of bad faith." Opp. at 19. But this ignores the fact that Casetify maintained its initial position that the Accused Works were original works and not based on dbrand's copyrighted works. Only after dbrand confronted Casetify on multiple occasions did Casetify acknowledge that it had access to dbrand works and that its CEO had used dbrand's images in requesting the designers to create the Accused Works.

to find the Exact Match copies of the works, which show that in fact Casetify did have iterative versions of the works, and that they were sourced directly from dbrand. Mot. at 9-10. Remarkably, Casetify now suggests that it meant to provide those iterative works, which raises the question whether it was untruthful then (when it said dozens of times that it had no iterative versions) or is untruthful now. Casetify also provided false responses in identifying who designed the Accused Works. Mot. at 12-14. It initially asserted under oath that the designers came from a list of 121 email addresses. When dbrand confronted Casetify, it eventually identified one of the designers and withheld the identity of the other. After further prodding from dbrand, Casetify finally identified the other designer, approximately six months after dbrand served its request and after four rounds of verified interrogatory responses. Mot. at 14. Casetify did this even though its initial investigation in November 2023 had identified the designers as Jackie Chan and Annabelle Li. Casetify has consistently sought to hide key evidence in this case.

At every stage, Casetify has exhibited an "intent to deprive" dbrand of "information's use in the litigation." Fed. R. Civ. P. 37(e)(2). That is the only conclusion that can be drawn from the totality of the circumstances and basic common sense.

**3. Casetify's Spoliation Prejudices dbrand.**

Casetify's Opposition contends in various places that the Court should not sanction Casetify because Casetify's spoliation did not prejudice dbrand. Opp. at 17, 18, 19. This is unavailing. As dbrand demonstrated, the evidence that Casetify eliminated would have constituted some of the most relevant and material in the case. Mot. at 23-24. The design files would have provided considerable evidence, including the source of the Accused Works, the modifications made by the designers, when and how CMI was manipulated, and more. The designers' laptop data could have included relevant metadata, local drafts, communications, and other evidence of intent to copy dbrand's designs or to remove or alter CMI. The Internet Archive pages could have

provided evidence regarding the number and location of digital copies of the Accused Works, the manner in which those copies were displayed, or other CMI relevant to dbrand's claims, as well as information on pricing, advertising, availability of works, or promotion descriptions.

In response, Casetify does not dispute that the eliminated evidence might have provided a wealth of information and evidence. Instead, Casetify principally argues that dbrand is not harmed because Casetify was able to produce "the Final Image files." Opp. at 19. According to Casetify, there is no prejudice because the Final Image files "are the only images pertinent to acts occurring in the United States." Opp. at 19. In other words, Casetify's argument is premised entirely on its position with respect to extraterritoriality. As explained above, that premise is fundamentally flawed. *See supra*, Section II.A.1. Contrary to Casetify's erroneous view, the actions taken outside of the United States with regard to the conception and creation of the Accused Works are materially relevant to this U.S.-based lawsuit. dbrand was entitled to that evidence and critically prejudiced by Casetify's bad faith spoliation of it. Indeed, Casetify's argument entirely ignores the wealth of information that may have been on the designers' laptops, including communications, notes, drafts, or other evidence of intent.

Casetify suggests that because the Exact Matches exist, dbrand cannot be prejudiced by the destruction of the design files or the designers' laptop data. Opp. at 18. But the Exact Matches are not the complete design files for the Accused Works, nor do they contain the likely evidence that would have been on the designers' laptops. They merely depict one particular iteration of the Accused Works. They do not contain the full design files. And Casetify does not dispute that the complete design files were disposed of in violation of its preservation duty. This also does not excuse Casetify's repeated lies made under oath concerning the existence of iterative drafts—which undermines everything Casetify has said throughout this case.

Casetify maintains that dbrand cannot be prejudiced because dbrand learned who the designers of the Accused Works were and could have contacted them on its own. Opp. at 28, 29. But the designers are located outside of the United States. They refused to voluntarily discuss the issues in the case, and there is no process by which dbrand could compel their testimony.[8] Accordingly, the sole evidence that should have been available to dbrand—the design files and laptop data—were destroyed by Casetify.

Casetify also argues that dbrand is not prejudiced by the deletion of Internet Archive data because dbrand had a few select screenshots of the website. Opp. at 17. But a few screenshots of select pages provide a glimpse into what Casetify had; they do not provide the full scope of what

---

[8] *See* Exhibit 103 (Morris Declaration) ¶ 5, which addresses the following:

Casetify first identified Ms. Li as a designer of the Accused Works in late July 2024 and explained that she was no longer with the company. Because Ms. Li was in Hong Kong but not a party, she cannot be compelled to testify under the Hague. *See* U.S. Judicial Assistance – Hong Kong ("if prior permission is granted by Hong Kong's Competent Authority, voluntary depositions may be conducted … *provided no compulsion is used*"). dbrand investigated Ms. Li to identify her contact information and reached out to her in August 2024. She never responded. As such, dbrand cannot compel her deposition.

Casetify first identified Ms. Chan as a designer of the Accused works in late October 2024 and explained that she was no longer with the company. dbrand investigated Ms. Chan but was unable to find any contact information at that time. Casetify also informed dbrand that it had no contact with Ms. Chan and did not know her current address. In December 2024, dbrand identified Ms. Chan's LinkedIn profile (after it was updated to include her prior experience at Casetify). dbrand contacted her later that same day. She initially indicated that she would consider speaking with dbrand, but then stopped responding. dbrand produced all of these communications to Casetify. From her LinkedIn profile, dbrand learned that Ms. Chan was attending school in London, England, for part of the year. As such, she could potentially be compelled to testify under the Hague. *See* U.S. Judicial Assistance – United Kingdom ("Obtaining Evidence in Civil and Commercial Matters"). dbrand retained a U.K. law firm to assist in this process, which cost over $30,000. The U.K. firm also employed skip tracing services but could not reliably identify Ms. Chan's whereabouts—a prerequisite for Letters of Request under U.K. law. dbrand even hired a private investigator in London, who was also unable to determine her whereabouts. As such, dbrand cannot compel Ms. Chan's deposition.

dbrand went far above what is reasonably necessary to obtain evidence to replace the documents spoliated by Casetify, to no avail.

Casetify displayed on its website for the Accused Products. Nor do those select webpages provide information over the entire course of time at issue—as was recorded by the Internet Archive.

Casetify's contention that dbrand has not been harmed is ineffectual. As dbrand showed, Casetify's spoliation severely prejudiced dbrand and the presentation of evidence in this case.

**B. Casetify Cannot Justify Its Other Misconduct In This Case.**

Casetify's misconduct does not stop with bad faith spoliation, but, as dbrand showed, extended throughout this case. Mot. at 3-16. Casetify withheld critical evidence, certified false discovery responses, lied about the source images for the Accused Works, lied about the design process for the Accused Works, lied about the designers of the Accused Works, and lied about the availability of key documents. *Id.* Casetify's attempts to justify its misconduct are meritless.

**1. Casetify Cannot Justify Withholding the Exact Matches.**

dbrand demonstrated that Casetify withheld critical evidence in this case. Mot. 9-12. Casetify initially denied downloading dbrand's Original Teardowns and provided a list of purported "specific source images" in response to dbrand's questions about the source of the Accused Works. Mot. 9. Then, Casetify reversed course and said the source images were not available. After dbrand confronted it with evidence that Casetify unquestionably copied dbrand's Original Teardowns, Casetify admitted that it copied dbrand's Original Teardowns and produced evidence that [redacted]. *Id.* Casetify has not explained its change in position, nor does it offer any response in its Opposition.

Instead, Casetify focuses exclusively on trying to justify its failure to produce the Exact Matches. As dbrand showed, Casetify denied possessing other copies of the Original Teardowns or iterative copies of the Accused Works. Mot. at 10. In the final weeks of discovery, however, dbrand discovered a series of links buried in the metadata for the Accused Works, which led to the

original draft copies of the Accused Works stored on Casetify's website. Mot. 10. Casetify now suggests that it meant to produce the iterative design files in this format (as metadata for another production) and that such a means of producing material is entirely appropriate. Opp. at 24. Such a revisionist-history attempt to justify its actions cannot stand and is meritless.

Casetify's primary argument is that under Rule 34(b)(2)(E) it was appropriate for Casetify to produce iterative designs of the Accused Works as mere metadata within its production of the Accused Works. But Casetify's argument ignores that "Rule 34 … permits the requesting party to designate the form or forms in which it wants electronically stored information produced." *Axis Ins. Co. v. Am. Specialty Ins. & Risk Serv., Inc.*, 2021 WL 2910814, at *9 (N.D. Ill. Jul. 12, 2021); *see* Fed. R. Civ. P. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored information …."). And dbrand specified the form in which Casetify should produce the requested information. For instance, it requested "All Adobe Photoshop files, including in Photoshop Document Format (.psd), Photoshop Large Document Format (.psb), and/or other formats, for every iteration of every Accused Work, *in uncompressed, original quality*, with original metadata preserved." Exhibit 24 to Mot. at RFP No. 70 (emphasis added). Similarly, it asked for "All design files for every iteration of every Accused Work, *in uncompressed, original quality*." Exhibit 1 to Mot. at RFP No. 6 (emphasis added). Furthermore, dbrand's requests for production explicitly stated that "A draft or non-identical copy is a separate document within the meaning of this term." *See* Exhibit Y to Mot. to Compel [137] at 8–9. Accordingly, Casetify cannot now contend that it was complying with dbrand's requests by smuggling iterations of the Accused Works in metadata hidden within its production. Even if Casetify's new version of events were true, it would only underscore that Casetify was obfuscating key documents and engaging in discovery in bad faith.

Indeed, Casetify's argument is flatly inconsistent with its repeated assertions—in certified discovery responses—that it "did not have/keep iterative design files," (Exhibit 23 to Mot.) (stated 6 times), that "no iterative design files have been located," (*id.*) (stated 6 times), that "the designers did not save iterative designs," (Exhibit 24 to Mot.) (stated 6 times), that the designers "did not save the development or version work leading up to the final image," (Exhibits 22 and 26 to Mot.) (stated 5 times), and that the designers did not save "versions prior to the final image," (Exhibits 22 and 26 to Mot.) (stated 5 times). It is also inconsistent with the testimony of Casetify's corporate witnesses, including Mr. Kwan (designated to testify about the design of the Accused Works) and Mr. Fung (designated to testify about the metadata of the Accused Works), who both claimed not to know about the Exact Matches. *See*, *e.g.*, Exhibit 7 to Mot. ("Kwan Dep.") at 131:17–135:23; Exhibit 6 to Mot. ("Fung Dep.") at 172:11–175:11.

The inconsistency in the positions that Casetify takes speaks volumes. It has consistently tried to withhold or hide evidence. Such misconduct should not be countenanced.[9]

**2. Casetify Cannot Justify Its Lies About the Identity of the Designers.**

As dbrand showed, Casetify lied about the identity of the designers of the Accused Works in certified discovery responses. Mot. 12-13. It provided a list of 121 individuals, none of which were Annabel Li or Jackie Chan, whom Casetify identified in November 2023 as the designers of the Accused Works. Indeed, it knew of this because its internal investigation had identified the designers, and Casetify's general counsel had worked with Annabelle Li during that investigation.

[9] Taking a different approach, Casetify challenges the sufficiency of the Exact Matches that dbrand submitted. Opp. at 26. The images at Exhibit 31 to the Motion are demonstratives to illustrate the similarities between the images. Attached here as Exhibit 101 are copies of the metadata for the Accused Works provided by Casetify. And attached here as Exhibit 102 are screenshots of the Exact Matches as they appear on the Casetify website. Indeed, at the time of filing this Reply, the Exact Matches remain on the Casetify website at the same web addresses shown in these screenshots. Casetify cannot credibly challenge the existence of these documents.

Yet, it took numerous meet-and-confers, discovery letters, and other correspondence for Casetify to finally identify Li and Chan as the designers of the Accused Works. Mot. 13. In the end, none of the 121 individuals in Casetify's initial response had anything to do with the design of the Accused Works.

In an attempt to justify Casetify's initial response, Casetify argues that "the interrogatory defined 'Casetify' in a way that did not include former employees." Opp. at 27. But the definition of "Casetify" has nothing to do with dbrand's interrogatory. That interrogatory required Casetify to "[d]escribe in detail the process of conceiving, designing, and creating each Accused Work, including the dates this process took place and the persons involved and their roles." Exhibit 17 to Mot. (ROG 1). It was in response to this interrogatory that Casetify stated that "[a] group of staffs from different teams" was involved, including 121 individuals identified by their email addresses. Exhibit 17 to Mot. (ROG 1 and Exhibit A). Nothing in that interrogatory or response had anything to do with the definition of Casetify.

Casetify contends that all that matters is that it supplemented and corrected its response. Opp. at 28. But that ignores the months of back-and-forth between the parties to identify basic facts that Casetify had known for years. It also ignores the blatant lie Casetify provided under oath. Indeed, such a flagrant abuse of the judicial process undermines Casetify's veracity on all issues.

Casetify nonetheless suggests that sanctions are unavailable for lying in its interrogatory response because Rule 37(b)(2) authorizes sanctions only for failing to obey an order of the Court. Opp. at 28. But such a blithe response to perjury ignores "the district court's inherent authority to address such flagrant contempt" is more than a sufficient basis to impose sanctions. *Dotson v. Bravo*, 321 F.3d 663, 669 (7th Cir. 2003). "Courts cannot turn a blind eye to false testimony because it 'erodes the public's confidence in the outcome of judicial decisions, calls into question

the legitimacy of courts, and threatens the entire judicial system.'" *Taylor v. City of Chicago*, 2018 WL 9651597, at *8 (N.D. Ill. Sept. 12, 2018) (quoting *Quelav. Payco-General Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000)).

**3. Casetify Cannot Justify Its Lies About the Design Process.**

dbrand showed that Casetify lied with respect to the design process for the Accused Works. Mot. at. 14-15. Casetify provided responses to interrogatories about the design process, but when dbrand questioned Casetify's witnesses—including its corporate designee—those witnesses disclaimed any knowledge about the design process. Indeed, Casetify's corporate designee testified that [redacted]. Mot. at 14-15.

In response, Casetify laments the lack of information about the design process but contends that "the relevant design process is how the Final Image files on the server are used in the Casetagram MPS system to generate the website images and/or to create the images printed on the physical product." Opp. at 29. But Casetify's "MPS system" is merely its process of applying final images to physical cases—all of which happens *after* the design process for those images is already completed, which is the critical inquiry for copyright infringement and CMI violations. *See* Exhibit 22 to Mot. at 10. Casetify makes its assertion because the case is supposedly "limited to acts and physical products distributed in the United States." *Id.* This is yet another attempt to impose Casetify's erroneous view of extraterritoriality and the information that is relevant to this case. As explained above, that view is erroneous. *See supra*, Section II.A.1. Casetify has no answer to its various discovery abuses and misconduct.

**C. The Court Should Impose Severe Sanctions For Casetify's Misconduct.**

As dbrand demonstrated, the totality of Casetify's misconduct in this case warrants the severest sanctions, including default judgment in dbrand's favor or, at a minimum, adverse

inferences, preclusion of evidence, and an award of attorneys' fees. Mot. at 16-17, 24-30. Casetify's attempts to avoid these sanctions fail.

Casetify's primary argument against the entry of default judgment is that sanctions must be proportional to the harm, and default judgment is inappropriate here because the case "is expressly limited to acts in the United States that involve only the Final Image files in existence." Opp. at 22. As explained, this cramped view of the case and the evidence is erroneous. *See supra*, Section II.A.1. The case is not limited to the Final Images of the Accused Works but extends to how Casetify conceived and created those works, including what Casetify did with CMI in the conception and creation process. The fact that this may have occurred overseas does not make that evidence irrelevant or outside the scope of the case. Casetify has no excuse for its bad faith spoliation of critical evidence in this case, nor can it justify its false discovery response and other misconduct. Casetify destroyed what should have been the most critical evidence in this case, evidence that goes to the very heart of the claims. It then withheld the next most critical evidence—the Exact Matches. It also provided false testimony on several occasions, which, if allowed to stand, would 'erode[] the public's confidence in the outcome of judicial decisions, call[] into question the legitimacy of courts, and threaten[] the entire judicial system.'" *Taylor*, 2018 WL 9651597, at *8 (quoting *Quelav. Payco-General Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000)). Casetify's misconduct has undermined this entire case, perverting any attempt to present a complete factual picture to a jury. Accordingly, entry of default judgment against Casetify on dbrand's claims is the only appropriate remedy.

Casetify also says that an adverse instruction would be improper because an instruction on the destruction of the designers' laptop data might confuse the jury "because that work involved acts outside the United States." Opp. at 22. Yet again, Casetify's argument falls flat. As explained,

the mere fact that acts occurred outside the United States does not make those off-limits or create confusion. Casetify's misguided extraterritoriality arguments fail, as dbrand has shown. *See supra*, Section II.A.1.

Casetify further argues that an adverse instruction would be improper according various cases. Opp. at 22. But an adverse inference was not appropriate in those cases because there was no finding of bad faith. As explained above, Casetify did destroy evidence in bad faith—that is, with the intent to hide adverse information. Casetify has no other argument that an adverse inference is an inappropriate remedy.

Casetify also tries to distinguish dbrand's authority for the proposition that case terminating sanctions are an appropriate remedy for providing false interrogatory responses. Opp. at 23. Casetify contends that the factual circumstances underlying the decision in *Say it Visually* are different and that the case supports the notion that false testimony "given because of confusion, mistake or faulty memory is not perjury." Opp. at 23. Casetify ignores the Court's discussion that "[f]alse testimony given because of confusion, mistake, or faulty memory is not perjury …. [b]ut false testimony given willfully is." *Say It Visually, Inc. v. Real Estate Educ. Co.*, 2025 WL 933951, at *7 (N.D. Ill. Mar. 27, 2025). Casetify also ignores that in *Say It Visually*, the Court found case terminating sanctions to be appropriate where a party, like here, had submitted false interrogatory responses. *Id.* at *4 (explaining that the party acknowledged "that his interrogatory responses, verified under penalty of perjury, were wrong"). As in *Say It Visually*, Casetify's "false testimony was not casually provided, nor did it represent a one-off episode." *Id.* at *11. Rather, after submitting its false interrogatory response, Casetify continued to stonewall dbrand on the identity of the designers, lied about the design process, lied about the source images, lied about copying dbrand's images, lied about the availability of documents, and much more.

Finally, Casetify argues that Westside Labs should not be sanctioned because it committed none of the relevant acts. Opp. at 13-14. But that argument ignores critical realities. Both Casetagram and Westside Labs share the same executives. Indeed, Ronald Yeung—an executive of both Casetagram and Westside Labs—signed off on most of Casetify's discovery responses. Also, Casetagram and Westside Labs served joint responses to most of dbrand's discovery requests, including those in which Casetify committed perjury. The misconduct in this case extends to Westside Labs, and neither entity, nor their executives, should be allowed to benefit from their misconduct in this case.

## III. CONCLUSION

For the foregoing reasons, and those in dbrand's motion, the Court should grant the motion for sanctions against Casetify for discovery misconduct. If the Court grants default judgment, dbrand further requests that the Court set a separate hearing to determine the amount of damages.

DATED July 21, 2025.

Respectfully submitted,

By: /s/ *Collin D. Hansen*
Collin D. Hansen (ARDC#: 6335991)
Email: chansen@wnlaw.com
**WORKMAN NYDEGGER**
840 S Northwest Hwy, Suite 10
Barrington, IL 60010
(801) 322-8464 (Telephone)

Brian N. Platt (*pro hac vice*)
Email: bplatt@wnlaw.com
Chad E. Nydegger *(pro hac vice)*
Email: cnydegger@wnlaw.com
Kenneth J. Dyer *(pro hac vice)*
Email: kdyer@wnlaw.com
Ryan C. Morris *(pro hac vice)*
Email: rmorris@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
(801) 533-9800 (Telephone)

*Attorneys for Plaintiff dbrand inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the July 21, 2025, I filed the foregoing **DBRAND'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS** through this Court's electronic filing system, which sent electronic notification of this filing to all counsel of record.

*/s/ Collin D. Hansen*