IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DBRAND, INC., a Canadian Corporation, | ) | Case No. 24 C 01919 |
| Plaintiff, | ) | |
| v. | ) | |
| CASETAGRAM LIMITED, *et al.*, | ) | Chicago, Illinois |
| | ) | July 23, 2025 |
| Defendants. | ) | 10:33 a.m. |

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE MARIA VALDEZ, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: WORKMAN NYDEGGER P.C.
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
BY: MR. RYAN C. MORRIS
MR. KENNETH J. DYER
MR. COLLIN HANSEN

For the Defendants: UB GREENSFELDER LLP
200 West Madison Street, Suite 3300
Chicago, Illinois 60606
BY: MS. KARA E. CENAR
MR. BRETT J. GRESCHKE
MS. SUSAN MEYER
MR. PATRICK S. McKEY

FAILURE TO SPEAK DIRECTLY INTO MICROPHONE
RESULTS IN INAUDIBLE PROCEEDINGS AS NOTED.

Transcriber: KRISTEN J. CARANNANTE, RPR, RMR, FCRR
Court Reporter
10 Montgomery Place, #1D
Brooklyn, New York 11215
848.459.3124

kjcarannante@gmail.com

* * * * *

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURT: All right. Let's get appearances, please.

MR. MORRIS: Ryan Morris, for plaintiff DBrand, M-O-R-R-I-S. I am here with my colleague Collin Hansen, H-A-N-S-E-N.

I will be addressing the motion for sanctions, and he will —— he is prepared to discuss the motion to compel and the motion for additional interrogatories.

THE COURT: Well, he can come up because I am going to talk about the motion for sanctions and the motion to compel as kind of a common issue problem.

And you are Mr. Hansen?

MR. HANSEN: Correct, your Honor.

THE COURT: All right.

MR. HANSEN: Thank you.

MS. CENAR: Good morning, your Honor. Kara Cenar, on behalf of Casetagram --

THE COURT: Ms. Cenar.

MS. CENAR: -- Westside Labs, and Westrock. Westrock is not part of any of the motion practice here. And with me is Susan Meyer, Brett Geschke, and Patrick McKey, all representing those three separate defendants.

THE COURT: All right. You can go ahead and have a seat.

All right. We are here on three matters. We are here

on plaintiff's motion for sanctions, plaintiff's motion to compel, and defendants' motion for leave to serve additional interrogatories.

Let me address the plaintiff's motion for sanctions. It was filed before me, but let me ask Mr. Morris, in your motion you are asking for relief that includes an adverse —— I think an adverse instruction and/or a default. So a --

MR. MORRIS: Correct.

THE COURT: -- determination that the case is over. And, you know, while I have power, I don't have all of that power.

MR. MORRIS: Yes.

THE COURT: So the issue for me to address is, I would not be able to rule if that is what you are requesting in this case. That would have to be ruled upon by Judge Pacold.

Now, I could do a report and recommendation, but it is an incredible waste of judicial time and resources, since whoever would lose that matter would be taking it up anyway. So I can't deal with that.

Because I can't deal with that, I then look at your motion to compel. And the motion to compel, in my view, does a couple of things. It basically says, you do have enough —— a different remedy for all of the ills, or partly all of the ills, but it also could lead to an inconsistent ruling if I rule on the motion to compel this way and Judge Pacold rules

on the motion for sanctions a different way.

So my concern is I don't think I can rule on the motion to compel while the motion for sanctions is pending.

I would like to get your thoughts on that.

MR. MORRIS: If I may, your Honor.

So the relief sought in the motion for sanctions and the relief sought in the motion to compel are distinct. There are certain categories of documents that were withheld knowingly --

THE COURT: But your ultimate relief that is sought in the motion for sanctions is that the case goes away, so there would be no need for any documents. That's what you get. And you have an adverse inference instruction, I believe, that you would be asking for.

Do the documents relate to the adverse inference instructions?

MR. MORRIS: So the documents ——

THE COURT: I thought that they were basically what would lead to —— if they don't produce —— if they never produce those documents, it would lead to a possible adverse inference --

MR. MORRIS: So --

THE COURT: -- instruction.

MR. MORRIS: -- the documents withheld subject to the motion for sanctions are different from the documents that are

requested in the motion to compel.

THE COURT: So let me go back to what I just said, and I want to make sure we are all on the same page.

So the documents you are asking for in the motion to compel, if you never got those because they never provided them, you would not use that as a basis for the requested relief in the motion for sanctions. Is that what you are telling me?

MR. MORRIS: I apologize. I'm not sure I understand.

THE COURT: Yes. It has been a weird morning.

You are asking for —— let's presume that the motion for leave —— the motion to compel is granted and then they just never respond to it. "I'm not going to give you anything, nothing." Let's presume that. Would that action be related to your requested relief for an adverse instruction?

MR. MORRIS: I think there would —— there may be a separate request at that point if they were —— but, no, your Honor. The requested information from the motion to compel is not related to the requested relief from the motion for sanctions.

THE COURT: And the motion to compel, the documents provide you some remedy, but you are also asking for the default as a remedy. That's my —— see, the problem I am having is, if you are right on the default remedy, the motion to compel is going to be meaningless because you win on that.

MR. MORRIS: And if I may, your Honor, I believe even if the motion to compel were granted for default judgment or an adverse inference —— I apologize, if the motion --

THE COURT: The motion for sanctions.

MR. MORRIS: -- for sanctions were granted for default judgment or adverse inference, we would still want the documents because --

THE COURT: Well, why would I give them to you if you get a default?

MR. MORRIS: I believe they are relevant to the calculation of damages and, in particular, the alter ego relationship between the defendants and establishing ——

THE COURT: Well, you could get that after, right?

MR. MORRIS: After?

THE COURT: After you get your default, now we get damages.

MR. MORRIS: Correct, your Honor. I think these documents being requested would be relevant to that, and so I think they would be relevant in either event, whether the motion for sanctions was granted or not.

THE COURT: All right.

Let me hear from you, Ms. Cenar, about this issue.

MS. CENAR: Yes, your Honor.

As we put forth --

THE COURT: If you could move the microphone, because

I know your voice is ——

MS. CENAR: Yes, I'm sorry.

THE COURT: That's fine.

MS. CENAR: I will --

THE COURT: You don't have to apologize. Go ahead.

MS. CENAR: We agree with your assessment on the motion for sanctions being intertwined with the motion to compel.

THE COURT: But counsel says the motion to compel documents is not the basis for seeking the adverse instruction at this time. Obviously, it would not be the basis for the default, but it could be relevant to damages once default is given, if that is what Judge Pacold eventually agrees to do.

MS. CENAR: Well, I disagree with that, because the documents that they are asking for don't relate to damages, and several of them are documents that were never requested during discovery. So —— and we run into the same problem that we had with the prior hearing, that they didn't bring this until after the close of discovery.

We also have a wrinkle in this whole case in that they filed an amended complaint and added a new party, and you have asked us to provide a discovery schedule, right, in view of the amended complaint. And the amended complaint -- that's why you have our motion for leave to serve interrogatories. The amended complaint advanced new alter ego theories and new ——

you know, for example, this motion for additional interrogatories was for Westside. Westside has been alleged to be now a new alter ego of the new party that was added. And so the whole thing is incredibly intertwined, and I do think it results in inconsistent rulings.

I don't think either motion should be granted at this time. You know, I agree with your assessment, and I have seen it in other cases, that you would have to do a whole report and recommendation. There is a question of whether an evidentiary hearing would have to be held. We have asked for depositions of their expert. I just think that the whole —— the motions were ill-timed and are asking this Court to do what this Court doesn't have an authority to do.

I also agree with the Court's assessment that the analysis —— the motion to compel is seeking some curative measures, and that would run contrary to the Court's ruling as to whether any of those are available under the motion for sanctions. So I do not agree with their assessment that they are two separate, independent motions. I think they are incredibly intertwined and they are going to lead to grave inconsistent rulings.

THE COURT: Mr. Morris, I just want to get your position on the record.

I do not believe that I would have the authority to provide you relief on the motion for sanctions. And the only

way I would be able to do any work would be through a report and recommendation.

Would you agree to that?

MR. MORRIS: For —— yes, for --

THE COURT: Okay.

MR. MORRIS: -- the default judgment and the adverse inference, we would agree with that.

THE COURT: And once you ask for that, like, even though you might have other issues within that motion for sanctions, you know, I still have to do an R & R, I can't ——

MR. MORRIS: Understood.

THE COURT: All right.

So, because of that, while I am always willing to help the district court judge, because of the complexity——and obviously whoever, again, does not win that motion is going to appeal from any R & R I might issue——I have made a determination it is just a waste of resources.

So Judge Pacold will be dealing with that. Judge Pacold will make the decision on an evidentiary hearing, if that's what she wants or if she wants to base it on the current record. It would be completely up to her.

Now, stepping back on the motion to compel, the better argument that it does not relate to damages and, if you could, Mr. Hansen, give me your run-through as to why it does.

MR. HANSEN: Thank you, your Honor.

So there are really two categories of documents that we are seeking. Some relate to the accused works themselves, and the other half relate to the alter ego relationship between the defendants.

So the alter ego relationship between the defendants is necessary for us to establish joint and several liability, and that one defendant's acts ——

THE COURT: It would appear, though, what you are asking for is —— well, first of all, the alter ego was the reason why you wanted an additional party, right? It was because of alter ego.

MR. HANSEN: In part. There were already two defendants. We had alleged an alter ego relationship between them from the start.

THE COURT: But you thought a third entity was an alter ego.

MR. HANSEN: A third entity, disclosed late in discovery, your Honor.

THE COURT: Okay. But you wanted to add that entity because of the theory of alter ego.

MR. HANSEN: I --

THE COURT: That was the reason why Judge Pacold gave you the leave to do so.

MR. HANSEN: Correct, your Honor.

THE COURT: Okay. So the interrogatories —— and we

are kind of jumping around like we were in the other case, but I get it, we are trying to figure this out.

The interrogatories that -- the defendants' motion for leave to serve the additional interrogatories, do they deal with the alter ego issue only or with other issues?

MS. CENAR: So, your Honor, it was filed by Westside, which is only one defendant of the three, and it is filed for the alter ego issues——in our reply brief, we broke them down into it precisely, the new allegations——and it does ask for what damages I, as Westside, are -- you know, identify the damages against me per work——"me" being Westside——and in the number of DMCA violations per work. And we attached, for reference, your Honor, the jury verdict form in the *GC2* case, which is a DMCA case, to show that the jury is going to have to decide damages and DMCA violations on a per-defendant, per-work basis.

We raised throughout the case that their initial disclosures were deficient in that manner. They never broke it out per defendant, per work. So Westside has been asked to file specific interrogatories that say "what is your basis for saying I am an alter ego of this new party that you added," which has a separate parent, a separate —— they are not a parent or subsidiary, right so ——

THE COURT: It seems, though, you are asking for things beyond the status of alter ego, like, "What information

can you provide with respect to alter ego?" You are asking for everything that, my guess is, you asked for the original plaintiffs from, information from the original plaintiffs. Is that correct?

MS. CENAR: Well --

THE COURT: Information relating to this, you know, subject to the dispute here, copyright issues.

MS. CENAR: I am confused by your question, so let me see if I can clarify for the Court.

Westside is an original defendant. In the amended complaint, they added a new defendant.

THE COURT: Yes.

MS. CENAR: In that new --

THE COURT: Are you asking for 90 interrogatories?

MS. CENAR: They are broken out by --

THE COURT: Right.

MS. CENAR: -- separate --

THE COURT: So there is one new party.

MS. CENAR: Right, and --

THE COURT: —— that was brought in under a theory of alter ego.

MS. CENAR: For 32 separate counts --

THE COURT: Right.

MS. CENAR: -- related to 32 different theories ——

THE COURT: This is why, when I look at an alter ego,

the basis, I am looking at, you get to ask questions relating to argue an alter ego or are you not an alter ego. You don't usually get discovery on the underlying subject matter of the litigation that you would have gotten from the original plaintiffs. Right? Everything about copyright infringement, everything like that.

So I am asking, why do you need all of that other information other than are you an alter ego, information relating to alter ego status?

MS. CENAR: So our ——

THE COURT: And maybe because I misunderstood what Judge Pacold ruled, and I have looked at her ruling, and she thought, well, this was not going to be that much more work for everybody because it is only about alter ego.

MS. CENAR: Right. So our reply brief that we filed actually categorized things for the Court, would be —— I'm sorry, I have to get the right one --

THE COURT: That's fine.

MS. CENAR: -- so just give me one moment.

So remember, now there are 32 separate counts that were all pushed into one count in the original complaint, so they have now broken it out to 32 separate counts.

So on page four of our reply, we lay out why Interrogatories 9 through 16 ask for what the copyright management information is on each of the devices in the 32

counts.

We point out, on page six, how that is not discernible from the images itself.

On page seven through —— we -- we talk about how an active defendant is required and that they have alleged a new theory of liability in the amended complaint that Casetagram is secondarily liable for the act of Westside. So that is a brand new theory that is in the amended complaint.

They also have a brand new theory in the amended complaint that Westside is somehow an alter ego of this new party, and they continue on with their theory of Westside is an alter ego of Casetagram.

So with respect to the alter ego allegations we addressed with the Court, Interrogatories 1 through 8, "Provide your complete factual basis for contending Westside was incorporated to perpetrate a fraud, avoid personal liability, or circumvent the law with respect to the device series." And they are clumped in, 1 through 4, because those all relate to the same device series.

In Interrogatories No. 49 through 55, "Under your theory of alter ego liability for the allegedly infringing (insert the device series and the count), identify all of the facts and documents, individuals with knowledge regarding how Westside is an alter ego with Casetagram."

And then Interrogatories 56 through 64 is how Westside

is an alter ego of Westrock.

And then if you go to page 12, we say, under Interrogatories No. 41 through 49, "Other than alter ego, what is your factual basis for alleging that Westside, as opposed to any other defendant, has committed a 1202(a) or 1202(b) violation?" And, again, we have clumped them by the 32 counts, in groupings of four, because they relate to the same device theory.

THE COURT: You are saying plaintiff has a theory in the new complaint that it is not just —— Westside is not just an alter ego, but is a standalone entity also liable and responsible.

MS. CENAR: Yes. But what they are saying in the new allegation of the complaint, your Honor, is that Casetagram is secondarily liable for an act of Westside. And so this interrogatory is asking them, "Other than alter ego, what is the act of Westside that supports that secondary liability claim?" Right? And those are brand new claims and brand new counts that are in the amended complaint, and that is why Westside served —— or asked this Court for permission to serve these interrogatories.

THE COURT: How many interrogatories did you serve upon the original plaintiffs?

MR. MORRIS: A number.

MS. CENAR: Well, the limit of the ——

THE COURT: 25.

MS. CENAR: Yes.

THE COURT: But you need 90 here --

MS. CENAR: Right. We --

THE COURT: -- because of your view that you have to deal with all of the individual. Okay.

MS. CENAR: Correct. And --

THE COURT: All right. Go ahead.

MS. CENAR: Also, they shoved all 32 separate counts into two counts, and they didn't break it up by device series. So the original interrogatories, you know, I don't believe that they had a fair opportunity to do it by device series because of the way they pled it.

THE COURT: Okay.

MS. CENAR: And when they asked the Court to allow them to file an amended complaint to break it out to 32 separate counts, they affirmatively said in the motion to amend it was to provide better notice.

THE COURT: Who wants to deal with this defendants' motion to --

MR. HANSEN: I will, your Honor.

THE COURT: Okay. Go ahead.

MR. HANSEN: Mr. Hansen. Thank you.

I believe, just commenting on the last remark of providing better notice, I believe those were Casetify's words

that we were referring to in the motion. Casetify asked us to provide better notice because they argued that the original two counts in the original complaint improperly included all of the accused works in those two counts——one for falsification of CMI and one for removal of CMI.

We included a string cite of cases in both our motion and our reply brief that say you don't have to do that. You don't have to break out into separate counts for an accused work. That leads to a situation where you unnecessarily have redundant information repeated dozens of times, which is ultimately what happened here. But we did that as a procedural move just to moot the issue.

Your Honor already reviewed the amended complaint months ago. Judge Pacold already reviewed the amended complaint and said that there is nothing new here, it is just a "rearranging or repleading of legal theories." Casetify and West —— Casetagram and Westside already served a 20 —— well, we counted 30, but they counted 25 interrogatories each. We responded to those, and we responded to them for each accused work. We explained the alter ego theory of liability, and we explained why we believe that Westside is both directly liable on its own for its participation and also under alter ego theory of liability.

I will add, it is 96 interrogatories that they are seeking——three for each of the 32 counts. Only 16 of those

counts are even asserted against Westside. That was addressed in our opposition motion. And then, in reply, they said that, well, we should still get the other 16 because it is alleging acts —— they are alleged against Casetagram for acts committed by Westside. But, again, those counts are not asserted against Casetagram. Those direct liability counts are asserted against Casetagram, Westside, and Westrock; and, in the alternative, if they are not alter egos, then Casetagram is still liable for the acts committed by Westside and Westrock. So . . .

THE COURT: All right.

MR. HANSEN: Thank you.

THE COURT: Thank you.

Well, thank you. I am going to take it under advisement. I will issue a written order.

But I do want to make it clear to you the order on the sanctions is going to be -- Judge Pacold will be making that determination.

Are there any settlement discussions going on?

MR. HANSEN: Yes, your Honor. There have been settlement discussions going on.

THE COURT: It is a great way to take control over everything instead of letting two judges, who probably know the least amount of your case, make those decisions.

All right. Thank you very much.

MR. HANSEN: Thank you.

If I could clarify, so you are —— you are ruling on the motion to compel or that is also going before ——

THE COURT: I am going to issue a ruling on the three motions, but you do know that the ruling on the sanctions is: It's not for me to rule upon.

MR. HANSEN: Understood.

THE COURT: All right.

MR. HANSEN: Thank you, your Honor. I appreciate it.

MS. CENAR: Your Honor, you had asked us previously to submit a case scheduling order, and do you still want us to ——

THE COURT: I will let you know in the order that I will be issuing. Thank you.

MS. CENAR: Thank you, your Honor.

MR. HANSEN: Thank you, your Honor.

(Concluded at 10:57 a.m.)

* * * * *

I certify that the foregoing is a correct transcript of the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital recording system.

_/s/ Kristen J. Carannante_
August 26, 2025
Kristen J. Carannante, RPR, RMR, FCRR
Court Reporter/Transcriber