**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DBRAND INC., a Canadian Corporation, | |
| | |
| *Plaintiff/Counterclaim Defendant*, | |
| | CASE NO. 24-cv-1919-MMP-MV |
| v. | |
| | |
| CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, and WESTSIDE LAB, INC., a California corporation, and WESTROCK SERVICES (WHOLESALE), INC. | **JURY TRIAL DEMANDED** |
| | **District Judge Martha M. Pacold** |
| | **Magistrate Judge Maria Valdez** |
| *Defendants/Counterclaimants*. | |

## <u>DBRAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   LEGAL STANDARDS............................................................................................ 1

    A.   Choice of Law ............................................................................................... 1

        1.   Alter Ego Law in California, Wyoming, and Illinois................................... 2

        2.   There Is No Conflict of Laws ..................................................................... 3

    B.   Summary Judgment ....................................................................................... 4

    C.   Alter Ego........................................................................................................ 4

        1.   Unity of Interest and Ownership.................................................................. 5

        2.   Inequitable Results...................................................................................... 6

III.  BACKGROUND ................................................................................................... 7

IV.  ARGUMENT.......................................................................................................... 8

    A.   Unity of Interest and Ownership .................................................................... 8

              ███████████████████████████████................................................ 8

        2.   Defendants Have Overlapping Executives ................................................... 9

        3.   Defendants Routinely Share Contracts, Personnel, Intellectual Property, and Corporate Identity ........................................................................................................ 9

        4.   Defendants Have Overlapping Finances...................................................... 14

        5.   Defendants Have the Same Attorneys and Litigation Strategy..................... 17

        6.   Defendants are Commonly Controlled ........................................................ 17

        7.   The Evidence Establishes a Unity of Interest and Ownership...................... 22

    B.   Inequitable Results ........................................................................................ 23

        1.   Escaping Liability in This Case and Others.................................................. 24

        2.   Unnecessarily Litigating, and Re-litigating, This Case ................................ 24

        3.   Reopening of Casetagram's Counterclaims.................................................. 25

V.   CONCLUSION.................................................................................................................... 25

Case: 1:24-cv-01919 Document #: 274 Filed: 06/09/26 Page 3 of 34 PageID #:15685

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*,
  2018 WL 1157752, (C.D. Cal. Mar. 2, 2018)..............................................................................5

*APT Elecs. v. SMTC Corp.*,
  2026 WL 967447 (C.D. Cal. Apr. 6, 2026) ...................................................................5, 7, 22

*ASI, Inc. v. Aquawood, LLC*,
  2022 WL 980398 (D. Minn. Mar. 31, 2022) ...........................................................................3

*BioD, LLC v. Amnio Tech., LLC*,
  2014 WL 11515617 (D. Ariz. 2014)........................................................................................1

*Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*,
  908 F.3d 290 (7th Cir. 2018) ..................................................................................................4

*Cent. States, Se. & Sw. Areas Pension Fund v. MS Warehouse Corp.*,
  853 F. Supp. 1053 (N.D. Ill. 1994) .....................................................................................1, 24

*Chatz v. World Wide Wagering, Inc.*,
  413 F. Supp. 3d 742 (N.D. Ill. 2019) .............................................................................2, 3, 4, 6

*City of Chicago v. Equte LLC*,
  693 F. Supp. 3d 879 (N.D. Ill. 2023) ......................................................................................4

*Coldwell Banker Real Est., LLC v. Brian Moses Realty, Inc.*,
  752 F. Supp. 2d 148 (D.N.H. 2010).........................................................................................1

*Fontana v Midland Credt Mgmt., Inc.*,
  840 N.E.2d 778 ........................................................................................................................5

*Fontana v. TLD Builders, Inc.*,
  840 N.E.2d 767, 778 (Ill. App. Ct. 2005) .......................................................................5, 6, 17

*Fuller v. Midland Credit Mgmt. Inc.*,
  2014 WL 883757 (N.D. Ill. Mar. 6, 2014)............................................................................1, 2

*Godinez v. Episcope Companies, LLC*,
  2025 WL 1591311 (N.D. Ill. June 5, 2025) .............................................................................5

*GreenHunter Energy, Inc. v. W. Ecosys. Inc.*,
  337 P.3d 454, 458 (Wyo. 2014).......................................................................................5, 6, 23

*Haas Automation, Inc. v. Denny*,
  2014 WL 2966989, (C.D. Cal. July 1, 2014)...........................................................................5

*Hernandez v. Wells Fargo & Co.*,
2019 WL 3017657 (N.D. Cal. July 10, 2019)..................................................................6, 17

*Holt v. Ford Motor Credit Co.*,
275 F. App'x 553 (7th Cir. 2008) .........................................................................................4

*Int'l Space Optics v. Hamasaki*,
2012 WL 6219044 (Cal. Ct. App. 2012) ............................................................................22

*Johnke v. Espinal-Quiroz*,
2018 WL 3361888 (N.D. Ill. July 9, 2018).........................................................................4

*Judson Atkinson Candies, Inc. v. Latini-Hohberger*,
476 F. Supp. 2d 913 (N.D. Ill. 2007) ..................................................................................1

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal. App. 3d 1220, 1251 (1991) ...................................................................................5

*LiquidX Inc. v. Brooklawn Cap., LLC*,
254 F. Supp. 3d 609 (S.D.N.Y. 2017)..................................................................................3

*Macready v. TCI Trans Commodities, A.G.*,
2011 WL 4835829 (E.D. Pa. Oct. 12, 2011).......................................................................3

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985) ............................................................................................2, 4, 6, 7

*Miles v. CEC Homes, Inc.*,
753 P.2d 1021, 1024 (Wyo. 1988).......................................................................................5

*Misik v. D'Arco*,
197 Cal. App. 4th 1065, 1073 (2011) ..................................................................................5

*Montgomery v. Am. Airlines, Inc.*,
626 F.3d 382 (7th Cir. 2010) ...............................................................................................4

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
2025 WL 445801, (N.D. Cal. Feb. 10, 2025). .....................................................................5

*Nicks v. Koch Meat Co.*,
260 F. Supp. 3d 942, 962 (N.D. Ill. 2017);......................................................................5, 6

*Ortiz v. Werner Enters., Inc.*,
834 F.3d 760 (7th Cir. 2016) ...............................................................................................4

*PanAm. Min. Servs., Inc. v. KLS Enviro Res., Inc.*,
916 P.2d 986, 991 (Wyo. 1996)...........................................................................................5

iv

*Plumbers' Pension Fund, Loc. 130, U.A. v. Republic Piping Sys., Inc.*,
  2025 WL 1547416 (N.D. Ill. 2025) ..................................................................................22

*Purtue v. Wisconsin Dep't of Corr.*,
  963 F.3d 598 (7th Cir. 2020) .............................................................................................4

*In re Rest. Dev. Grp., Inc.*,
  394 BR. 171 (Bankr. N.D. Ill. 2008) ............................................................................5, 22

*Ry. Exp. Agency, Inc. v. Super Scale Models, Ltd.*,
  934 F.2d 135 (7th Cir. 1991) .........................................................................................1, 3

*Scott/Hubbard Co. v. Sika Chem. Corp.*,
  708 F. Supp. 945 (N.D. Ill. 1989) .....................................................................................3

*Smith v. Severn*,
  129 F.3d 419 (7th Cir. 1997) .............................................................................................4

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,
  2 F. Supp. 2d 1058, 1062-62 (N.D. Ill. 1998) ..................................................................5

*Teamsters Loc. Union No. 727 Pension Fund v. Cap. Parking, LLC*,
  2019 WL 6210955, at *2 (N.D. Ill. Nov. 21, 2019); .......................................................5

*Thompson v. Protective Ins. Co.*,
  2013 WL 11834242, at *4 (D. Wyo. Apr. 24, 2013)........................................................5

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*,
  217 Cal. App. 4th 1096, 1109 (2013) ...............................................................................5

*UMG Recordings, Inc. v. BCD Music Grp., Inc.*,
  2011 WL 798901 (C.D. Cal. Feb. 25, 2011), *aff'd*, 509 F. App'x 661 (9th Cir.
  2013); ..............................................................................................................................5, 6

*VIPshop Int'l Holdings, Ltd. v. Transpacific Trade Ctr. LLC*,
  2022 WL 4119787 (N.D. Ill. 2022) ...................................................................................6

*Wachovia Sec., LLC v. Jahelka*,
  586 F. Supp. 2d 972, 1007-10 (N.D. Ill. 2008), *aff'd* 674 F.3d 743 (7th Cir.
  2012) ...................................................................................................................................5

*Western Ecosystems Tech., Inc. v. Greenhunter Energy, Inc.*,
  2013 WL 8719179, (Wyo. Dist. Dec. 10, 2013)................................................................5

*Wong Chau Wan v. Inc. Owners of Nos. 11-12 Canal Rd.*,
  [2015] H.K.D.C. 412, ¶¶ 26-27..........................................................................................3

*Yost v. Harpel Oil Co.*,
   674 P.2d 712 (Wyo. 1983).................................................................................2, 4, 5, 6

**Statutes**

17 U.S.C. §§ 1202(a)(2) and (b)(2).................................................................................24

**Other Authorities**

Rule 30(b)(6).................................................................................8, 9, 18

Plaintiff dbrand inc. ("dbrand") respectfully moves for partial summary judgment (the "Motion") establishing that Defendants Westside, Inc. ("Westside") and Westrock Services (Wholesale), Inc. ("Westrock") are alter egos of Defendant Casetagram Limited ("Casetagram").

## I.  INTRODUCTION

This Court awarded default judgment against Casetagram. *See* [261]. The Court subsequently permitted dbrand to move for partial summary judgment, "limited to the question of whether Westside and Westrock are liable to plaintiff as alter egos of Casetagram." *See* [265]. The undisputed evidence establishes that Westside and Westrock are, indeed, alter egos of Casetagram. Westrock and Westside, therefore, are jointly liable with Casetagram to dbrand. *See Cent. States, Se. & Sw. Areas Pension Fund v. MS Warehouse Corp.*, 853 F. Supp. 1053, 1059 (N.D. Ill. 1994). ("An alter ego's liability is the same as the liability of the alleged corporation.").

## II.  LEGAL STANDARDS

### A.  Choice of Law

In permitting the Motion, the Court directed the parties to address any "related choice-of-law issues." *See* [265]. "The applicable state law to evaluate piercing the corporate veil is the state of incorporation whose veil is sought to be pierced." *Fuller v. Midland Credit Mgmt. Inc.*, 2014 WL 883757, at *6 (N.D. Ill. Mar. 6, 2014) (applying state alter ego law in a federal question case); *Judson Atkinson Candies, Inc. v. Latini-Hohberger*, 476 F. Supp. 2d 913, 927 (N.D. Ill. 2007).

Furthermore, "[w]here the law … is essentially the same, we apply the law of the forum state." *Ry. Exp. Agency, Inc. v. Super Scale Models, Ltd*., 934 F.2d 135, 139 (7th Cir. 1991). Courts apply this principle even where the forum state is not one of the jurisdictions at issue. *See, e.g., BioD, LLC v. Amnio Tech., LLC*, 2014 WL 11515617, at *4 (D. Ariz. 2014) (applying forum law after finding it "essentially the same" as the jurisdictions at issue); *Coldwell Banker Real Est., LLC v. Brian Moses Realty, Inc*., 752 F. Supp. 2d 148, 169 (D.N.H. 2010) (same).

1

In this case, California and Wyoming alter ego law apply because Westside and Westrock are, respectively, incorporated in those states.[1] Moreover, because California, Wyoming, and Illinois apply materially identical alter ego standards, the Court may also apply Illinois law as the law of the forum. Under any of these bodies of law, the standards—and result—are the same.

### 1. Alter Ego Law in California, Wyoming, and Illinois

To establish alter ego liability under California law, "two general requirements" must be satisfied: (1) a "unity of interest and ownership" such that "the separate personalities" of the corporations "no longer exist," and (2) "that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985).

Wyoming employs a substantially identical two-part test requiring: (1) "a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased," and (2) "the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." *Yost v. Harpel Oil Co.*, 674 P.2d 712, 717 (Wyo. 1983) (internal citations omitted).

Illinois has substantially the same two-part test for alter ego liability: (1) "such unity of interest and ownership that the separate personalities" of the entities "no longer exist"; and (2) "circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *Chatz v. World Wide Wagering, Inc.*, 413 F. Supp. 3d 742, 756 (N.D. Ill. 2019).

---

[1] Because dbrand seeks to pierce the veils of Westside and Westrock—not Casetagram, which is incorporated in Hong Kong—Hong Kong law is not implicated. *See Fuller*, 2014 WL 883757, at *6 (the relevant jurisdiction is that of the entity "whose veil is sought to be pierced."). In any event, Casetagram's alter ego status has already been established through the Court's default judgment sanction. *See* [273]; [263] at 3:24–25.

2

## 2. There Is No Conflict of Laws

"The first step in any choice-of-law dispute is to determine whether the laws of the subject jurisdictions are actually in conflict." *Scott/Hubbard Co. v. Sika Chem. Corp.*, 708 F. Supp. 945, 946 (N.D. Ill. 1989). This analysis requires considering if "actual conflict among the law of the states at issue" exists, *LiquidX Inc. v. Brooklawn Cap., LLC*, 254 F. Supp. 3d 609, 616 (S.D.N.Y. 2017), and whether there are "relevant differences between the laws." *Macready v. TCI Trans Commodities, A.G.*, 2011 WL 4835829, at *3 (E.D. Pa. Oct. 12, 2011) (internal citation omitted).

"When there is no actual conflict between the laws of the jurisdictions involved" the court need not determine "which law to apply because the application of either jurisdiction's law would provide the same result." *LiquidX*, 254 F. Supp. 3d at 616 (internal quotation omitted); *see also Macready*, 2011 WL 4835829, at *8 (explaining that the court need not "move to the deeper choice-of-law analysis" after finding no conflict exists).

The alter ego laws of California, Wyoming, and Illinois do not conflict. Each jurisdiction employs a substantially identical two-part test requiring: (1) a unity of interest and ownership such that separation between entities does not exist, and (2) that inequity or injustice will result if the entities are considered separately. Because the tests contain no relevant differences, the Court can apply California law, Wyoming law, and/or Illinois law as the law of the forum.[2] *See Ry. Exp. Agency, Inc*, 934 F.2d 135, 139 (7th Cir. 1991).

---

[2] Notably, even if the Court did consider Hong Kong law, it is "broadly similar" to the tests employed by Illinois, California, and Wyoming, and would yield the same result. *See Chatz*, 413 F. Supp. 3d at 756 (finding no conflict where three jurisdictions' standards "have some differences between them, but are broadly similar"). Under Hong Kong law, the "general requirements for lifting the corporate veil are (1) the corporate form is being used for the purposes of fraud or as a device to evade a contractual or other legal obligation, and (2) the defendant controls the corporation." *ASI, Inc. v. Aquawood, LLC*, 2022 WL 980398, at *11 (D. Minn. Mar. 31, 2022) (citing *Wong Chau Wan v. Inc. Owners of Nos. 11–12 Canal Rd.*, [2015] H.K.D.C. 412, ¶¶ 26–27).

3

### B. Summary Judgment

A movant is entitled to summary judgment when "there is no genuine dispute of material fact." *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 295 (7th Cir. 2018). "If no reasonable jury could find for the non-moving party, then there is no 'genuine' dispute." *Holt v. Ford Motor Credit Co.*, 275 F. App'x 553, 554 (7th Cir. 2008).

To preclude summary judgment, "[t]he nonmoving party … must identify specific facts to establish that there is a genuine triable issue." *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). "[D]isputed facts that are not outcome-determinative," however, "are not material and will not preclude summary judgment." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

Furthermore, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (the court should "survey[] the whole picture" on summary judgment).

"Courts routinely consider motions for summary judgment that address whether one company can be treated as the alter ego of another." *Johnke v. Espinal-Quiroz*, 2018 WL 3361888, at *8 (N.D. Ill. July 9, 2018) (collecting cases and rejecting defendant's argument that alter ego liability cannot be decided on summary judgment); *see also City of Chicago v. Equte LLC*, 693 F. Supp. 3d 879, 892 (N.D. Ill. 2023) (same).

### C. Alter Ego

To establish that an entity is an alter ego of another, the laws of Illinois, Wyoming, and California require: (1) a unity of interest and ownership such that the individuality of the entities does not exist; and (2) adhering to corporate separateness would result in injustice or inequity. *See Chatz*, 413 F. Supp. 3d at 756; *Yost*, 674 P.2d at 717; *Mesler*, 39 Cal. 3d at 300.

### 1.   Unity of Interest and Ownership

For the first element of the alter ego analysis, Illinois, Wyoming, and California courts consider several non-exhaustive factors, including:

**Common ownership.** *See Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1109 (2013); *Haas Automation, Inc. v. Denny*, 2014 WL 2966989, at \*4–5 (C.D. Cal. July 1, 2014); *Western Ecosystems Tech., Inc. v. Greenhunter Energy, Inc.*, 2013 WL 8719179, at \*5 (Wyo. Dist. Dec. 10, 2013).

**Overlapping executives and employees.** *See Toho-Towa*, 217 Cal. App. 4th at 1109; *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1251 (1991); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 962 (N.D. Ill. 2017); *GreenHunter Energy, Inc. v. W. Ecosys. Inc.*, 337 P.3d 454, 458 (Wyo. 2014).

**Nonfunctioning corporate officers.** *See Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005); *Yost v. Harpel Oil Co.*, 674 P.2d 712, 715 (Wyo. 1983); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, 2018 WL 1157752, at \*22 (C.D. Cal. Mar. 2, 2018).

**Absence of corporate records.** *See Fontana v*, 840 N.E.2d at 778; *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1073 (2011); *Miles v. CEC Homes, Inc*., 753 P.2d 1021, 1024 (Wyo. 1988).

**Shared attorneys and litigation strategy.** *See Wachovia Sec., LLC v. Jahelka*, 586 F. Supp. 2d 972, 1007–10 (N.D. Ill. 2008), aff'd in relevant part, 674 F.3d 743 (7th Cir. 2012); *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, 2025 WL 445801, at \*4 (N.D. Cal. Feb. 10, 2025).

**Overlapping finances and assets.** *See Teamsters Loc. Union No. 727 Pension Fund v. Cap. Parking, LLC*, 2019 WL 6210955, at \*2 (N.D. Ill. Nov. 21, 2019); *PanAm. Min. Servs., Inc. v. KLS Enviro Res*., Inc., 916 P.2d 986, 991 (Wyo. 1996).

**Disregard of legal formalities and failure to maintain arm's length relationships.** *See UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2011 WL 798901, at \*4 (C.D. Cal. Feb. 25, 2011), *aff'd*, 509 F. App'x 661 (9th Cir. 2013); *Nicks*, 260 F. Supp. 3d at 962; *GreenHunter Energy*, 337 P.3d at 458.

**Common control.** *See Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2 F. Supp. 2d 1058, 1062–62 (N.D. Ill. 1998); *Godinez v. Episcope Companies, LLC*, 2025 WL 1591311 (N.D. Ill. June 5, 2025)); *Thompson v. Protective Ins. Co.*, 2013 WL 11834242, at \*4 (D. Wyo. Apr. 24, 2013).

When analyzing these factors, "courts consider the totality of the circumstances." *APT Elecs. v. SMTC Corp*., 2026 WL 967447, at \*4 (C.D. Cal. Apr. 6, 2026); *In re Rest. Dev. Grp., Inc*.,

394 BR. 171, 183 (Bankr. N.D. Ill. 2008) (the court "will look at the totality of the circumstances"); *GreenHunter Energy, Inc. v. Western Ecosystems Technology, Inc.*, 337 P.3d 454, 470 (Wyo. 2014) (affirming alter ego finding "[b]ased upon the totality of the circumstances").

While no single factor is determinative, "[i]t is clear that the key factor" in the alter ego analysis is "the element of control or influence exercised" by the primary entity. *Fontana*, 840 N.E.2d at 777; *see also Hernandez v. Wells Fargo & Co.*, 2019 WL 3017657, at *2 (N.D. Cal. July 10, 2019) ("[T]he level of control … is a key factor in the unity of interests analysis.").

Moreover, merely following corporate formalities does not insulate an entity from an alter ego finding. *See UMG Recordings*, 2011 WL 798901, at *4 ("maintenance of separate bank accounts and separate corporate formalities does not vitiate the alter ego function"); *VIPshop Int'l Holdings, Ltd. v. Transpacific Trade Ctr. LLC*, 2022 WL 4119787, at *4 (N.D. Ill. 2022) ("filing all the necessary paperwork does not, by itself, undermine a unity of purpose"); *GreenHunter Energy*, 337 P.3d at 466 (Wyo. 2014) (rejecting the argument that the court should "focus solely" on whether the entities had separate bank accounts, accounts payable, and accounts receivable).

### 2. Inequitable Results

After determining whether a unity of interest and ownership exists, courts next consider whether respecting corporate separateness would produce an inequitable result. *See Chatz*, 413 F. Supp. 3d at 756; *Yost*, 674 P.2d at 717; *Mesler*, 39 Cal. 3d at 300.

Courts in Illinois, California, and Wyoming have found that inequitable results occur in various situations, including: where "allowing an entity to escape will result in the avoidance of a legal obligation," *UMG Recordings*, 2011 WL 798901, at *5 (internal citation omitted); the entities "utilize[] a fictional corporate structure with multiple separate registered subsidiaries in order to limit their liability," *Nicks*, 260 F. Supp. 3d at 962; or the entities "improperly manipulate the situation to avoid paying." *GreenHunter Energy*, 337 P.3d at 470.

6

While piercing the corporate veil is a fact-intensive determination, ultimately, the "alter ego doctrine's essence is that justice be done." *APT Electronics*, 2026 WL 967447, at *6 (quoting *Mesler*, 39 Cal. at 301) (cleaned up).

## III.    BACKGROUND

Casetagram, a Hong Kong limited company, ███████████████████████████████. *See* Statements of Undisputed Material Fact ("SOF") ¶¶ 1, 74. Casetagram designed and manufactured the products at issue in this case (the "Accused Products"). *See* SOF ¶ 4. Westrock, the entity that Casetagram █████████████████████████████████ is a Wyoming corporation. *See* SOF ¶¶ 2, 5, 75. Westrock nominally sold the Accused Products wholesale to Best Buy in the United States. *See* SOF ¶ 5. Westside is a California corporation that ████████████████████████████████████████████████████

*See* SOF ¶¶ 3, 6. ████████████████████████████████████

████. *See* SOF ¶ 7. Both Westside and Westrock distribute and sell exclusively CASETIFY-branded products. *See* SOF ¶¶ 9, 10. As addressed in greater detail below, all three Defendants ████████████████████████████████████████████████████

█████████████████████. *See* SOF ¶¶ 15–17, 20.

Wesley Ng and Ronald Yeung are the co-founders of Casetagram and are also executives of Casetagram, Westside, Westrock, and ████████████. *See* SOF ¶¶ 11–13, 18. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. *See* SOF ¶¶ 6, 7, 82,

83. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████. *See* SOF ¶¶ 33–35.

## IV.   ARGUMENT

The undisputed record shows that Westside and Westrock did not operate as independent businesses separate from Casetagram. Rather, they shared common ownership, executives, employees, assets, vendors, contracts, finances, insurance, accounting treatment, and litigation strategy, while Casetagram directed and controlled their business and finances from its headquarters in Hong Kong. Taken together, these undisputed facts far establish that Westside and Westrock are alter egos of Casetagram and that dbrand is entitled to judgment as a matter of law.

### A.  Unity of Interest and Ownership

The first element of the alter ego analysis is whether a unity of interest and ownership exists such that the entities' separate identities cease to exist. Here, the undisputed evidence establishes that Westside and Westrock are merely extensions of Casetagram and not independent businesses.



███████████████████████████████████ *See* SOF ¶¶ 15–17, 20. Ronald Yeung was designated as a Rule 30(b)(6) witness to testify regarding, *inter alia*, the Defendants' "overlapping corporate structures." *See* SOF ¶ 22. During his deposition, Mr. Yeung testified that ████████████████████████████████ ██████████ *See* SOF ¶ 17 (citing [Yeung Dep.] at 167:8–168:14); *see also* SOF ¶ 15 (████████████████████████). Mr. Yeung likewise could not recall whether ███████ ███████████████████████ *See* SOF ¶ 17 (citing [Yeung Dep.] at 184:23– 185:20). After Mr. Yeung's deposition, however, Westside ████████████████ ██████████████████████ *See* SOF ¶ 17.

Following a motion to compel, Defendants produced documents identifying ████████ ███████████████████████████████████. *See* SOF

¶ 16. This same evidence also expressly identifies ███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See* SOF ¶¶ 15–17, 20.

### 2. Defendants Have Overlapping Executives

Wesley Ng and Ronald Yeung are the co-founders of Casetagram. *See* SOF ¶ 11. Wesley Ng and Ronald Yeung are also executives for Casetagram, Westside, and Westrock. *See* SOF ¶¶ 12, 13. ████████████████████████████████████████ *See* SOF ¶ 14.

████████████████████████████████████████████████████████████████████

████████████████████████████ *See* SOF ¶ 18.

In Ronald Yeung's deposition—as a Rule 30(b)(6) witness for Defendants' "shared operations," "shared executives," and "overlapping corporate structures"—he claimed not to know that ████████████████████████████ *See* SOF ¶ 22. Similarly, in Welsey Ng's deposition, he claimed not to know that ████████████████ *See* SOF ¶ 23.

Mike (Xiaopeng) Jia, a Casetagram employee, was also previously an executive of both Westrock and Westside. *See* SOF ¶ 24. But when questioned in his deposition, Mr. Jia was also ████████████████████████████████████ *See* SOF ¶ 25–27.

### 3. Defendants Routinely Share Contracts, Personnel, Intellectual Property, and Corporate Identity

On paper, Westrock was the entity ████████████████████████████████

████████████████████████████ *See* SOF ¶¶ 5, 37–42. In practice, however, the

████████████████████████████████████████████████████████████████████

████████████████████████████████████ *See* SOF ¶¶ 37–51.

9

For  example, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *See* SOF ¶¶ 38, 44, 46.

Subsequently, █████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████. *See* SOF ¶¶ 24, 45.

At his deposition, Mr. Jia testified that, ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████*See* SOF ¶ 26.

Casetagram personnel in Hong Kong, ████████████████

████████████████████████████████████████████. *See*

10

SOF ¶ 48. ██████████████████████████████████████████████

████████████████████████ *See* SOF ¶ 50. ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ *See* SOF ¶¶ 48, 50–51 (emphasis added). ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ *See* SOF ¶ 49.

Casetagram personnel in Hong Kong, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

In Casetagram's employment agreements, ████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

Casetagram employment agreements expressly ██████ ██████ ██ ████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████

Casetagram's employment agreements further state that ██████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

Casetagram and Westside also ████████████████████████████

12

Similarly, in a Statement of ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

### 4. Defendants Have Overlapping Finances

The same lack of separation appears in the Defendants' finances. For example, ████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

A similar arrangement occurred between ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

14

In some instances, ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

It was also Casetagram personnel ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

15



Even more telling than the limited financial documents Defendants did produce is the absence of financial records that would ordinarily be expected if Casetagram, Westside, and Westrock were operating at arm's-length. For example, Defendants did not produce intercompany agreements governing the flow of products between Casetagram, Westside, and Westrock. *See* SOF ¶ 106. Nor did Defendants produce intercompany purchase orders, invoices, or similar transactional records reflecting the movement of products ultimately sold to Best Buy. *See* SOF ¶ 107. Operating without such documents indicates that the Defendants did not transact as truly separate entities and underscores the lack of meaningful separation between them. Indeed, as Ronald Yeung testified, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮t. *See* SOF ¶ 108.

16

### 5.  Defendants Have the Same Attorneys and Litigation Strategy

Defendants' litigation conduct also demonstrates a unity of interest and purpose. Casetagram, Westside, and Westrock are all represented by the same counsel in this case. *See* SOF ¶ 102. Furthermore, before Westrock was added through amendment, Casetagram and Westside served eight iterations of joint answers, counterclaims, and discovery responses under the shared name "Casetify." *See* SOF ¶ 103. These included dozens of joint admissions, denials, and interrogatory responses without any distinction between the parties. *See* SOF ¶ 104. Even after Westside started serving separate discovery responses, they continued to be certified by Casetagram's Hong Kong General Counsel, Edith Lam. *See* SOF ¶ 105. This evidence demonstrates not only that the three Defendants share litigation counsel and a unified litigation strategy, but also that Edith Lam, Casetagram's Hong Kong General Counsel, exercised authority to verify and submit litigation positions on behalf of both Casetagram and Westside.

### 6.  Defendants are Commonly Controlled

"It is clear that the key factor" in the alter ego analysis is "the element of control or influence exercised" by the primary entity. *Fontana v*, 840 N.E.2d at 777; *see also Hernandez*, 2019 WL 3017657, at *2 ("[T]he level of control … is a key factor in the unity of interests analysis."). Even apart from overlapping ownership, executives, contracts, personnel, assets, finances, corporate identity, and litigation strategy, the undisputed evidence shows that Casetagram exercises near absolute control over Westside and Westrock.

Aside from being a co-founder of Casetagram and an executive of all three Defendants,

17







### 7. The Evidence Establishes a Unity of Interest and Ownership

As discussed in Section II(C)(1), *supra*, courts in California, Wyoming, and Illinois consider numerous factors in the alter ego analysis. These factors are non-exhaustive. *See Plumbers' Pension Fund, Loc. 130, U.A. v. Republic Piping Sys., Inc.*, 2025 WL 1547416, at *9 (N.D. Ill. 2025) ("Courts look at a variety of non-exhaustive factors."); *Int'l Space Optics v. Hamasaki,* 2012 WL 6219044, at *17 (Cal. Ct. App. 2012) ("any list of applicable factors is necessarily nonexhaustive"). No single factor is dispositive and the Court should consider the totality of the circumstances. *See APT Elecs.*, 2026 WL 967447, at *4; *In re Rest. Dev. Grp., Inc.*,

394 B.R. at 183; *GreenHunter Energy*, 337 P.3d at 470. For ease of reference, below is a table summary of the Statements of Fact and argument sections applicable to each factor at issue here:

| Factor | Statements of Undisputed Material Fact and Relevant Argument Sections |
|---|---|
| Common ownership. | *Supra* at Section at IV(A)(1) <br> Westrock: SOF ¶¶ 14–17, 20 <br> Westside: SOF ¶¶ 14, 16, 17, 20 |
| Overlapping executives and employees. | *Supra* at Section at IV(A)(2), (3) <br> Westrock: SOF ¶¶ 11–14, 17, 18, 56–66 <br> Westside: SOF ¶¶ 11–14, 17, 18, 56–66 |
| Nonfunctioning corporate officers. | *Supra* at Section at IV(A)(2), (3), (6) <br> Westrock: SOF ¶¶ 22, 25, 26, 28–30 <br> Westside: SOF ¶¶ 22, 23, 25, 27–30 |
| Absence of corporate records. | *Supra* at Section at IV(A)(4), (6) <br> Westrock: SOF ¶¶ 91–101, 106–108 <br> Westside: SOF ¶¶ 91–101, 106, 107 |
| Shared attorneys and litigation strategy. | *Supra* at Section at IV(A)(5) <br> Westrock: SOF ¶¶ 43, 102 <br> Westside: SOF ¶¶ 43, 102–105 |
| Overlapping finances and assets. | *Supra* at Section at IV(A)(4), (6) <br> Westrock: SOF ¶¶ 4–10, 35, 36, 40–42, 48, 50, 52–57, 62–68, 72, 73, 78, 81, 86, 88, 91–101 <br> Westside: SOF ¶¶ 4–10, 56–57, 62–66, 88, 91–101 |
| Disregard of legal formalities and failure to maintain arm's length relationships. | *Supra* at Section at IV(A)(2)–(4), (6) <br> Westrock: SOF ¶¶ 22, 25, 26, 28–86, 88, 91–101 <br> Westside: SOF ¶¶ 22, 23, 25, 27–31, 43–47, 56–66, 82–86, 88, 91–101 |
| Common control. | *Supra* at Section at IV(A)(1)–(6) <br> Westrock: SOF ¶¶ 4–7, 11–21, 24–102, 106, 107 <br> Westside: SOF ¶¶ 4–7, 11–21, 24, 25, 27–35, 43–46, 56–66, 82–86, 88, 89, 91–107 |

### B. Inequitable Results

The second alter ego factor is whether respecting corporate separateness would produce an inequitable result. Here, it plainly would. Allowing Westside and Westrock to rely on their nominal corporate forms would permit them to avoid liability, relitigate matters already resolved by the

23

Court, and revive claims that Casetagram already abandoned or forfeited. These are precisely the types of inequitable consequences that the alter ego doctrine exists to prevent.

### 1. Escaping Liability in This Case and Others

Absent an alter ego finding, Westside and Westrock would escape liability despite being the entities through which the Accused Products entered and were distributed in the U.S. *See* SOF ¶¶ 5–7, 82–85. The conduct giving rise to dbrand's DMCA claims—including the removal and falsification of CMI, as well as the requisite knowledge and intent—was carried out by Casetagram personnel in Hong Kong. *See* SOF ¶¶ 1, 4. Yet the U.S. distribution necessary to establish liability under 17 U.S.C. §§ 1202(a)(2) and (b)(2) was performed through Westside and Westrock. *See* SOF ¶¶ 5–7, 82–85. Without an alter ego finding, the knowledge and intent would remain with Casetagram, while the relevant U.S. acts would remain with Westside and Westrock, allowing Westside and Westrock to disclaim responsibility for their participation in the misconduct.

That is precisely the type of inequitable result the alter ego doctrine exists to prevent: dividing a single course of conduct among affiliated entities so that no one entity can be held fully accountable. It would also set a precedent in other cases of permitting foreign actors to evade DMCA liability by routing U.S. distribution through affiliated companies.

### 2. Unnecessarily Litigating, and Re-litigating, This Case

Furthermore, absent an alter ego finding, dbrand would be forced to continue litigating the case even though the Court already awarded default judgment against Casetagram. Because alter egos share liability, *see Cent. States*, 853 F. Supp. at 1059 ("An alter ego's liability is the same as the liability of the alleged corporation."), permitting Westside and Westrock to avoid that judgment merely because they operated through separate corporate forms would create a substantial inequity, requiring dbrand to expend significant additional resources litigating issues that have already been resolved as to the entity that directed and controlled the underlying conduct.

24

The inequity is particularly acute here because Westrock was added after the close of fact discovery. *See* [112]. Absent an alter ego finding, dbrand would be forced to relitigate, with respect to Westrock, essentially everything already completed over the past two years—pleadings, motion practice, and fact discovery—notwithstanding the extensive evidence that Westside, Westrock, and Casetagram operated as a single enterprise. Indeed, this is precisely what Defendants propose doing. *See* [264] at 16–34. This would be extremely inefficient for both the parties and the Court.

### 3. Reopening of Casetagram's Counterclaims

Relatedly, absent an alter ego finding, Westrock could pursue counterclaims that overlap entirely with the proposed counterclaims and third-party claims (since stricken) of Casetagram.[4] *See* [146], [152], [156], [262]. Indeed, this is precisely what Defendants propose doing. *See* [264] at 16–17. Those claims were either expressly abandoned by Casetagram or impermissibly dilatory—not asserted until years into the litigation and after the close of fact discovery. *See* [174] at 8–21. If Westrock is not found to be Casetagram's alter ego, then Defendants would effectively receive a second opportunity to pursue those claims. Allowing affiliated entities to revive claims that have already been abandoned or foreclosed would create precisely the type of inequitable result that the alter ego doctrine is intended to prevent.

## V. CONCLUSION

The record contains overwhelming evidence demonstrating that Westrock and Westside lacked any meaningful corporate existence separate from Casetagram. Because the undisputed facts establish both a unity of interest and ownership and the inequitable consequences that would result from respecting the Defendants' nominal corporate forms, the Court should grant dbrand's Motion and hold that Westrock and Westside are alter egos of Casetagram.

---

[4] Westside did not propose any counterclaims or third-party claims. *See* [146], [149]

DATED: June 9, 2026.

Respectfully submitted,

By: /s/ *Collin D. Hansen*
Collin D. Hansen (ARDC#: 6335991)
Email: chansen@wnlaw.com
**WORKMAN NYDEGGER**
840 S Northwest Hwy, Suite 10
Barrington, IL 60010
(801) 533-9800 (Telephone)

Brian N. Platt (*pro hac vice*)
Email: bplatt@wnlaw.com
Chad E. Nydegger *(pro hac vice)*
Email: cnydegger@wnlaw.com
Kenneth J. Dyer *(pro hac vice)*
Email: kdyer@wnlaw.com
Ryan C. Morris *(pro hac vice)*
Email: rmorris@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
(801) 533-9800 (Telephone)

*Attorneys for Plaintiff dbrand inc.*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the June 9, 2026, I filed the foregoing with the Court using its

CM/ECF system, which will serve a copy of the foregoing electronically on all counsel of record.

*/s/* Collin D. Hansen