**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DBRAND INC., a Canadian Corporation,<br><br>*Plaintiff/Counterclaim Defendant*,<br><br>v.<br><br>CASETAGRAM LIMITED *dba* CASETIFY, a Hong Kong limited liability company, WESTSIDE LAB, INC., a California corporation, and WESTROCK SERVICES (WHOLESALE), INC.<br><br>*Defendants/Counterclaimants*. | CASE NO. 24-cv-1919-MMP-MV<br><br>**District Judge Martha M. Pacold**<br>**Magistrate Judge Maria Valdez** |

**DBRAND'S REPLY IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

dbrand hereby replies in support of its Motion for Partial Summary Judgment (the "Motion"). The oppositions of Westside and Westrock ("Defendants") do not create a genuine dispute. Despite their volume, Defendants' responses evade rather than controvert dbrand's evidence. And even construed in the light most favorable to Defendants, their own statements do not avoid summary judgment. Nor do Defendants' choice-of-law arguments change the result.

## I. Defendants' Objections Are Meritless and Do Not Exclude dbrand's Evidence

Defendants' objections and responses combine for nearly 700 pages—about 45 pages for every one page of dbrand's statements—and assert thousands of objections, often 10, 15, or even 20 to a single piece of evidence. dbrand addresses the principal recurring objections below.

### A. Objections to Form Over Content

Defendants object to almost all of dbrand's exhibits as lacking a sponsoring witness, foundation, or authentication under Rules 601–603, 901, and 902.[1] But at summary judgment, "[t]he evidence need not be admissible in form, but must be admissible in content." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016) (citation omitted). Rule 56(c)(2) likewise governs whether the material can be presented "in a form that ***would*** be admissible in evidence." Defendants dispute the present form—not whether it can be authenticated at trial.

These objections are especially weak because most challenged documents were produced by Defendants, are Bates numbered, were discussed in depositions, and can be authenticated through witnesses or FRE 901(b)(4). *See Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003) ("documents produced by an opponent during discovery may be treated as authentic") (affirmed).

Similarly, there is no categorical "sponsoring witness" or other requirement for foundation

[1] *See* WR/WS Resp. to DB-SOF, objections to DB-Exs. 1–5, 9–11, 14, 15, 17, 19, 25, 26, 28, 29, 32–52, 54, 56–59, 61–75, 77, 78, 80–87, 91, 92, 120–124.

as Defendants suggest.[2] Indeed, "no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). dbrand can establish admissibility at trial through the authors, recipients, custodians, deposition witnesses, or Rules 901 and 902. Defendants do not claim the exhibits are false; they merely attack their present form. That is not a legitimate objection. *See Rao v. Gondi*, 2017 WL 2445131, at *5 (N.D. Ill. 2017) ("courts routinely consider unauthenticated documents on motions for summary judgment," particularly where "such documents are capable of reduction to admissible, authenticated form").

**B. Objections to Relevance**

Defendants also object to nearly every exhibit as irrelevant under Rules 401–403, mostly without explanation.[3] Defendants' bases for these objections are unclear; the documents directly support dbrand's statements, which are addressed in the Motion—they are clearly relevant.

Defendants also object that some documents predate the relevant period.[4] But dbrand sought discovery from this period, and these are the documents Defendants produced. Moreover, the documents—employment agreements, business formation records, IP agreements, third-party contracts, etc.—are not irrelevant merely because they originated earlier. *See Chi. Reg'l Counc. of Carpenters v. Carlson Const. Corp.*, 2022 WL 874608, at *10 (N.D. Ill. 2022) ("The court will also consider evidence … that pre-dates (but is still relevant to) the relationship during the [Relevant] Period."). Defendants speculate these documents could have been "superseded," but identify no superseding documents or other evidence that they were not operative in 2023.[5]

---

[2] *See id.*, objections to DB-Exs. 1–5, 9–11, 14, 15, 17, 19, 25, 26, 28, 29, 32–52, 54, 56–59, 61–75, 77, 78, 85–87, 91, 92, 120–124.
[3] *See id.*, objections to DB-Exs. 1, 2, 4, 6–11, 15, 17, 19, 24–52, 54–71, 74–92, 97–103, 105–124.
[4] *See id.*, objections to DB-Exs. 1–3, 5, 17, 24, 29, 59–61, 80–92.
[5] There is a distinction between documents originating *before* the relevant period versus after. *See*

### C. Objections to Hearsay

Defendants made at least one hearsay objection for almost every statement of fact.[6] These objections sweep in dozens of discovery responses, deposition testimony, and employee communications that are opposing-party statements—and thus not hearsay at all. *See* FRE 801(d)(2)(A). This rule is "extraordinarily broad" and requires only that "a statement was made by a party, and the statement was offered against that party"; it "need not be inculpatory or against interests" and "personal knowledge is not required." *Jordan v. Binns*, 712 F.3d 1123, 1128–29 (7th Cir. 2013). That alone eliminates almost all of Defendants' hearsay objections. Employee statements made within the scope of employment are likewise not hearsay. *See* FRE 801(d)(2)(D).

Furthermore, many challenged statements are not offered for their truth. Corporate instruments—including the VMA, VPA, MDF, employment, and IP agreements—are nonhearsay "verbal acts" defining legal rights and obligations. *See Schindler v. Seiler*, 474 F.3d 1008, 1011 (7th Cir. 2007) (such documents "are not hearsay because they are not offered for their truth."). Likewise, dbrand relied on instructions and approvals between the defendants to show who was in control, not that the statements therein are truthful. Similarly, communications with Best Buy and others—including Casetagram's identification of Westrock as "[redacted]" and directions on [redacted]—are used to show the entities' course of dealing and how Casetagram referred to the Defendants, not the truth of the statements.

Defendants' objections to numerous business records are equally misplaced.[7] FRE 803(6) excepts from hearsay records made and kept in the regular course of business. Here, the challenged

---

*Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) (discounting post-period evidence not "corroborated by contemporaneous … evidence"). Defendants rely extensively on the latter. *See* DB Resp. to WS-SOF ¶¶ 1, 12, 19, 21–23 and WR-SOF ¶¶ 12, 15, 16.

[6] *See* WR/WS Resp. to DB-SOF ¶¶ 1–3, 5–9, 11, 16–43, 45, 48–63, 68–90, 103–108.

[7] *See id.*, objections to DB-Exs. 32–52, 56–59, 63–74, 77–81, 85–88, 92–97.

evidence includes routine emails, invoices, shipping, accounting, and tax records. The rule also encompasses third-party records—like the Best Buy and other third-party records here—that a party "integrated … into its records and relied upon … in its day-to-day operations." *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1021 (N.D. Ill. 2010).

Defendants' boilerplate "hearsay within hearsay" objections fail for the same reasons.[8] FRE 805 permits nested statements where each layer is independently admissible. *See Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). Here, the relevant layers qualify as party statements, employee statements, business records, verbal acts, instructions or requests, and/or statements offered for context, notice, or their effect on the recipient—rather than for their truth.

**D. Other Objections**

Every time dbrand cites to the complaints, Defendants object that dbrand cannot rely on its pleadings at summary judgment.[9] But dbrand cites the complaints only where the defendants' corresponding answers do not restate the allegations as needed to identify the admissions. Nor were the relevant pleadings "superseded": Westrock filed only one answer, while Casetagram's and Westside's proposed amended answers were stricken. *See* [262]. Regardless, even admissions in superseded pleadings remain admissible. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) ("An amended pleading does not operate as a judicial *tabula rasa*"; "a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein.").

Defendants repeatedly argue that a document, statement, or deposition that came from one Defendant is impermissible hearsay—or is irrelevant—against another.[10] But once "deemed sufficiently reliable," even hearsay "may be used for any purpose, including as substantive

---

[8] *See id.*, objections to DB-Exs. 2, 6, 15, 32–35, 43, 46, 52, 56, 57, 63–67, 75, 80–87, 112–123.
[9] *See id.* ¶¶ 1, 3, 8, 9, 24, 68.
[10] *See id.* ¶¶ 4, 7, 9, 17, 20–22, 31–42, 45–68, 74–90, 108.

evidence of a co-defendant's guilt." *U.S. v. Volpendesto*, 746 F.3d 273, 288 (7th Cir. 2014). And in the alter ego context, courts necessarily consider evidence among affiliated entities. *See Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1311–12 (7th Cir. 1993) (considering evidence of commingling of funds, shared operations, and disregard of corporate formalities among affiliates).

Relatedly, Defendants make dozens of meritless Rule 32 objections.[11] Their arguments that Casetagram's deposition testimony does not bind the Defendants and lacks foundation merely repackage objections addressed above. For most Rule 32 objections, Westrock also argues that depositions predating its joinder cannot be used at all. But "at the summary judgment stage," "depositions can be the equivalent of affidavits, and are therefore admissible"—"even if Rule 32(a)(8)'s requirements are not met." *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978–79 (7th Cir. 2014). The testimony dbrand relies on here is sworn, based on personal knowledge, from competent witnesses, sets out facts that would be admissible at trial, and is part of the record; thus, it can be relied on as the equivalent of an affidavit or declaration. *Id.*

Defendants also invoke FRE 407 against evidence of post-claim "remedial measures," concerning the return of the Accused Products.[12] But FRE 407 covers only measures that "would have made an earlier injury or harm less likely to occur." *See* Fed. R. Evid. 407. Regardless, dbrand uses this evidence to show that Casetagram directed, financed, and controlled those operations—not culpability—and FRE 407 excepts evidence used to prove "ownership [or] control." *Id.*

## II. Defendants' Responses are Improper and Do Not Create Genuine Factual Disputes

Defendants cannot manufacture a dispute merely by stating "Disputed" before a lengthy list of objections and extraneous facts. Defendants' responses deliberately obscure, rather than

[11] *See id.* ¶¶ 5–8, 11, 17, 22–33, 43, 87, 108.
[12] *See id.*, objections to DB-Exs. 8, 10, 11, 32, 49, 50, 54, 75–84, 88–92.

identify, genuine disputes; they should be disregarded and the undisputed facts deemed admitted.

### A. Noncompliant Responses Do Not Create Genuine Disputes

Local Rule 56.1 requires each response to address "the ***asserted*** fact," identify the portion admitted, avoid new facts "not fairly responsive," and "***concisely*** explain" how any cited evidence controverts the fact. LR 56.1(e)(2)–(3) (emphasis added). Thus, "evasive denials" or citations that "support legal argument rather than controvert material facts" are insufficient. *See Bordelon v. Chi. Sch. Reform*., 233 F.3d 524, 528 (7th Cir. 2000). Likewise, extraneous or argumentative responses "will not constitute a proper denial of the fact, and the fact is admitted." *See Jones v. City of Chi.*, 673 F. Supp. 3d 926, 933 (N.D. Ill. 2023). Courts also disregard attempts to "smuggle [in] new facts." *See Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 744 (N.D. Ill. 2011).

The same rules govern partial disputes. Where a response disputes an entire statement but its evidence "only contradicts a part," the remainder is "deem[ed] admitted." *Henderson v. Wilkie*, 2020 WL 2494648, at *1 n.1 (N.D. Ill. 2020). And where a purported dispute fails to comply with Local Rule 56.1, the consequence is the same. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (for statements that do not align with LR 56.1, "***those facts are deemed admitted*** for purposes of the motion.") (emphasis added); *Prewitt v. U.S.*, 2012 WL 5381281, at *1 (N.D. Ill. 2012) ("When a nonmovant fails to adhere to Local Rule 56.1(b), the Court may admit the movant's Rule 56.1 Statement and ***disregard the nonmovant's submissions***.") (emphasis added).

Finally, while a record may be "awash in facts and controversies," "[n]ot all disputed facts … are relevant and material." *Johnson v. Adv. Health & Hosp.*, 892 F.3d 887, 893 (7th Cir. 2018). Defendants cannot use nearly 700 pages of clutter to shift the burden to the Court to decipher what, if anything, they dispute. *See Bordelon*, 233 F.3d at 528 ("It is not the Court's job to wade through improper denials and legal argument in search of a genuinely disputed fact."); *Johnson*, 892 F.3d

at 898 ("[J]udges are not like pigs, hunting for truffles buried in the record.") (quotation omitted). The noncompliant denials should be disregarded and the uncontroverted facts deemed admitted.

**B. Defendants' Noncompliant Responses Render dbrand's Facts Admitted**

Of dbrand's 108 SOFs, Defendants admitted 11. The remainder were either nominally "disputed" (33) or "disputed in part" (64). Yet despite combining for nearly 700 pages of objections and responses, Defendants do not seriously dispute most of the facts supporting alter ego. Indeed, for 80 SOFs nominally "disputed" or "disputed in part," Defendants addressed only extraneous facts—manufacturing straw man arguments rather than confronting the issues.[13] And for 53 SOFs, Defendants "disputed" some limited aspects but left the majority unaddressed.[14]

For example, DB-SOFs ¶¶ 16–17 stated that Defendants [redacted] Defendants admitted that Westrock Capital "is a British Virgin Islands corporation," but otherwise responded with collateral points: Defendants have different "*direct* Parent Compan[ies]," exercise "independent decision making," their executives wear "separate hats," and the "presumption of corporate separateness applies." *See* WR/WS Resp. to DB-SOF ¶¶ 16–17. Defendants completely avoided whether they [redacted]

Similarly, for DB-SOFs ¶¶ 24–30, dbrand cited Mike Jia's testimony that, despite being an executive for both Defendants, he was [redacted]. Defendants responded with "disputes" concerning Mr. Jia's health, that he left Casetagram a few days later, and other unrelated activities. *See* WR/WS Resp. to DB-SOF ¶¶ 24–30. Defendants never disputed dbrand's facts.

---

[13] *See* WR/WS Resp. to DB-SOF ¶¶ 4–6, 9, 12–14, 16–22, 24–42, 45, 46, 48–66, 70–72, 74–81, 83, 85–89, 92, 93, 98–105.

[14] *See id.* ¶¶ 4, 6, 17–21, 24, 41, 46, 49–62, 70–90, 92, 98–101, 105–108.

Compounding these problems, for at least 15 statements "disputed in part," Defendants made more collateral arguments but did not identify what was *undisputed*.[15] And for at least 41 more, Defendants' "admission" only acknowledged that a cited document or statement existed.[16]

For example, in response to DB-SOF ¶ 98, which discussed how Casetagram [redacted] Defendants merely responded, "Undisputed in Part. Exhibit 97 must be read in its entirety." *See* WR/WS Resp. to DB-SOF ¶ 98. Similarly, in response to DB-SOF ¶ 18—that Wes Ng and Ronald Yeung are founders and directors of Westrock Capital—Defendants admitted only that the documents "reflect what they reflect," then pivoted to legal "disputes" concerning corporate separateness rather than admit the fact itself. *See id*. ¶ 18.

Overall, Defendants' responses reflect the same strategy employed throughout their pleadings and discovery: resist admitting anything harmful, even when the facts are indisputable. *See* [263] at 28:7–24; 31:22–32:9; 34:1–17. The result is a muddied record that deliberately obscures, rather than clarifies, the issues genuinely in dispute. For the foregoing reasons, at least DB-SOF ¶¶ 4–7, 9, 12–14, and 16–107, should be deemed admitted. *See* Section II(A), *supra*.

**C. The Expressly Admitted and Unaddressed Facts, Alone, Establish Alter Ego**

Even ignoring the limited portions "disputed," Defendants still admitted the majority of facts in dbrand's statements, either as expressly "undisputed" or by failing to address them entirely.

Among many other facts that Defendants either expressly admitted or left unaddressed are: [redacted]; [redacted]; Casetagram's ownership of CASETIFY products exclusively sold by Westrock and distributed by Westside; Casetagram's control over and financing of [redacted]

[15] *See id.* ¶¶ 16, 25, 36, 38–42, 49, 50, 84, 88, 89, 98, 99, 103.
[16] *See id.* ¶¶ 7, 9, 18, 20, 21, 24, 44–46, 48, 51–69, 71–81, 90.

[redacted]; Westrock Capital's control over [redacted] Casetagram's control of all aspects of [redacted]; Casetagram's retention, authorization, and compensation of third-party [redacted]; Casetagram's guarantee of [redacted]; shared [redacted] collapsing corporate distinctions in [redacted]; Casetagram's control over [redacted]; the three defendants' shared attorneys and litigation conduct; and the absence of any [redacted][17]

The foregoing are facts Defendants expressly admitted or failed to address. Even alone, these provide overwhelming alter-ego evidence—***and this is only the floor***. As discussed *supra*, Defendants' defective "disputes" yield even more facts deemed admitted. Even without them, however, the expressly undisputed and unaddressed record overwhelmingly establishes alter ego.

### D. Defendants' Other Responses Do Not Establish Genuine Disputes

Defendants' remaining responses do not create genuine disputes. Instead, Defendants raise straw men, immaterial typos, testimony supplied by counsel, and misrepresentations of the record.

For example, two of Defendants' primary disputes concern two small typos: "Westside, Inc." and "Cities Marketing Studios."[18] dbrand concedes the typos, but responses are meant to identify "genuine material factual disputes," and "a quibble over an obvious typographical error" is not one. *Ezell v. Bass*, 2012 WL 379744, at *2 (N.D. Ill. Feb. 1, 2012). Defendants invoked these typos against dozens of statements,[19] and for several, identified no other dispute at all.[20] These only compound Defendants' clutter obscuring any genuine disputes. *See id.* at *2, n.4 (such a

[17] *See id.* ¶¶ 1–13, 16–68, 71–82, 85–87, 90–107.
[18] *See id.* ¶¶ 3, 6, 7, 9, 14, 23–25, 27, 28, 32–35, 37, 40–42, 44, 49, 63, 81, 82, 85, 86, 88, 89, 92, 93, 98–100, 102–106.
[19] *See id.*
[20] *See id.* ¶¶ 3, 93, 98, 105.

dispute "serves only to waste the court's, and the litigants', time").

Defendants' responses also rely heavily on testimony elicited through leading questions.[21] FRE 611(c) prohibits such leading examination of a friendly witness and courts exclude testimony supplied by counsel. *See Oberlin v. Marlin Am. Corp*., 596 F.2d 1322, 1329 (7th Cir. 1979) (finding that the district court properly "excluded … leading questions and the responses"). Here, for example, counsel elicited from Harvey Mok that records concerning Westside's involvement could have been "mistakes"; from Mike Jia that certain documents would have refreshed his recollection; and from Ronald Yeung virtually Defendants' entire corporate-separateness theory.[22] Such testimony does not create a genuine factual dispute and should be disregarded. *See id.*

Defendants also falsely claim that, in a meet and confer, dbrand "substantially revised" the Rule 30(b)(6) notice to withdraw all Westrock-related topics and "substantially modified" Topic 2 to eliminate "shared operations," "shared executives," and "overlapping corporate structures."[23] Tellingly, although there is a transcript of that meet and confer, Defendants provide no support for their position and it never happened.[24] To the contrary, the parties agreed on the meaning of Topic 2's existing terms and Defendants' counsel considered formalizing its understanding in writing but never did. Regardless, Yeung's inability to answer basic questions about his own positions and the entities he purportedly led remains compelling alter-ego evidence, irrespective of Rule 30(b)(6).

Defendants also purport to dispute Westside's and Amro Louis's involvement based on counsel-supplied testimony that their identification across five separate distribution records was a

---

[21] *See id.* ¶¶ 4–7, 12, 13, 16–22, 25–30, 85, 86, 88, and 92.
[22] *See id.* ¶¶ 6, 7, 12, 13, 16–22, 25–30, 88; *see also* DB-Ex. 7 at 200:5–18, 218:1–17, 221:15–224:9, 224:16–225:3, 226:3–227:21, 229:18–232:15, 234:16–236:17, 237:17–22, 238:4–239:2; DB-Ex. 8 at 148:18–149:12; DB-Ex. 31 at 166:2–13.
[23] *See* WR/WS Resp. to DB-SOF ¶¶ 22 and 30.
[24] LR 56.1 provides no mechanism for dbrand to submit new exhibits in reply to Defendants' responses to its SOFs. At the Court's request, dbrand can provide the meet-and-confer transcript.

"mistake." *See*, *e.g.*, WR/WS Resp. to DB-SOF ¶ 6. But despite disputing these records, Defendants do not dispute the other evidence showing the same thing, including that Mr. Louis, a Westside employee, "[redacted]" and [redacted]. *See id.* ¶¶ 7, 82–85. Defendants also fail to dispute—beyond arguments concerning the definition of "Westside" and "Accused Products"—that the warehouse the products were shipped to and from is [redacted]. *See id.* ¶ 88.

### III. Defendants' Own Statements of Fact Do Not Create a Genuine Factual Dispute

Defendants suggest that raising a modicum of evidence precludes summary judgment. *See* [290] at 20; [300] at 22. But if that were the case, summary judgment on alter ego—or virtually anything else—would be effectively impossible. The actual standard asks whether there is a "***genuine*** dispute of ***material*** fact," and "[i]f no reasonable jury could find for the non-moving party, then there is no 'genuine' dispute." *Holt*, 275 F. App'x at 554.

Overall, even drawing all inferences in Defendants' favor, their statements establish only compliance with a handful of paperwork formalities. That does not defeat summary judgment. *See Kolson v. Vembu*, 869 F. Supp. 1315, 1324 (N.D. Ill. 1994) (granting summary judgment despite paperwork compliance, because "those documents, even if regularly prepared, reflected mere form more than reality"); *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 598 (N.D. Cal. 2012) (granting summary judgment under California law, even where entity "was somewhat more careful about respecting the corporate form," given other substantial alter ego evidence); *Universitas Educ., LLC v. Avon Cap., LLC*, 2020 WL 8768520, at *16–23 (W.D. Okla. 2020) (granting summary judgment under Wyoming law, despite separate incorporation, managers, addresses, bank accounts and other formalities, because "as a whole, no rational juror could find otherwise").

dbrand already addresses Defendants' statements in its responses. One recurring argument

warrants mention here: that because Best Buy [redacted]. *See* [290] at 22; WR-SOF ¶¶ 27–29. But that provision *reinforces* that [redacted]. Regardless, it does not change the fact that Casetagram [redacted][25] Defendants confirm these facts in their own statements.[26]

Finally, Defendants end their submissions with numerous facts, exhibits, and a technical declaration wholly unrelated to the issues at hand,[27] injecting collateral accusations and arguments calculated to cast dbrand in a bad light and attempt to beguile the Court. Defendants transparently do so assuming that, even when disregarded, the statements have served their purpose. That is an abuse of Local Rule 56.1. Combined with Defendants' systematically evasive responses, reliance on extraneous facts, and other violations, the Court may disregard Defendants' submissions altogether. *Bordelon*, 233 F.3d at 528–29 (affirming striking response "so full of argument, evasion, and improper denials" that it defeated the rule's purpose); *Prewitt*, 2012 WL 5381281, at *1 ("the Court may … disregard the nonmovant's submissions" for noncompliance with LR 56.1).

## IV. Defendants' Choice-of-Law Theory Is Wrong

Defendants devote 42 of their 50 opposition pages—and three foreign-law declarations—to one argument: before Westside or Westrock can be considered Casetagram's alter ego, dbrand must pierce every foreign entity up the ownership chain and back down again. Defendants cite no authority for that extraordinary premise and it fails at the threshold.

### A. California and Wyoming Law Govern the Only Veils at Issue

The choice-of-law rule is straightforward: "veil-piercing claims are governed by the law of

---

[25] *See* DB-SOF ¶¶ 31–42, 45, 48–49, 69, 71–90.
[26] *See* WS-SOF ¶¶ 38–40; WR-SOF ¶¶ 26, 31, 39, 40.
[27] *See* WS-SOF ¶¶ 44–54; WR-SOF ¶¶ 41, 42, 45–57.

the state of the corporation whose veil is sought to be pierced." *On Command Video v. Roti*, 705 F.3d 267, 272 (7th Cir. 2013). Those corporations are Westside and Westrock, incorporated in California and Wyoming. dbrand seeks no judgment against, nor piercing of, any foreign entity.

Nor would a ruling here disregard any foreign entities. Alter ego asks whether separateness should be disregarded "in the particular case presented and for the purposes of such case." *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 511–12 (2010); *see also GreenHunter Energy, Inc. v. W. Ecosys. Tech., Inc.*, 337 P.3d 454, 463 (Wyo. 2014) (misuse "in this transaction" under "these particular circumstances"). "For all purposes other than that for which the hole was drilled, the wall still stands." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985). A ruling here does not otherwise affect even Westside's and Westrock's separateness—much less that of foreign entities elsewhere in their corporate chains. *See id.*

**B. Neither California Nor Wyoming Requires Sequential Piercing**

Defendants' proposed up-and-down procedure is sometimes called sequential piercing. Some jurisdictions apply it in limited circumstances; California and Wyoming do not.

Both California and Wyoming look to equitable, not actual, ownership. *See*, *e.g.*, *Arnold v. Browne*, 27 Cal. App. 3d 386, 395 (Ct. App. 1972) ("identical ***equitable*** ownership" and "***equitable*** owners" with "domination and control") (emphasis added); *PanAmerican Min. Servs., Inc. v. KLS Enviro Res., Inc.*, 916 P.2d 986, 990 (Wyo. 1996) (same, adopting these California factors). Under this doctrine, courts disregard formal ownership where the defendant is the equitable owner.

The keystone of equitable ownership is control. *See Buckley v. Abuzir*, 2014 IL App (1st) 130469, 8 N.E.3d 1166, 1176–77 (given substantial control, "equitable ownership may satisfy" because veil piercing "looks to substance over form"); *In re Schwarzkopf*, 626 F.3d 1032, 1038–39 (9th Cir. 2010) (in California, "equitable ownership is sufficient" where the primary entity

"dominated and controlled"); *PanAmerican*, 916 P.2d at 989 (in Wyoming, reversing finding of no alter ego between sister entities where the district court had found that "Defendants have taken control").[28] This doctrine independently forecloses Defendants' sequential veil piercing premise.

Furthermore, under California's "single enterprise theory," alter ego extends to "sister or affiliated companies." *Cam-Carson, LLC v. Carson Recl. Auth.*, 82 Cal. App. 5th 535, 550 (2022). This applies the same two-part test—unity and inequity—where affiliates "operate with integrated resources in pursuit of a single business purpose." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013). Wyoming likewise applies alter ego between "we are clear, a sister corporation," without sequential veil piercing. *PanAmerican*, 916 P.2d at 990.

Defendants' principal Wyoming case, *Mantle v. North Star Energy & Const. LLC*, also confirms that sequential veil piercing is unnecessary. 437 P.3d 758, 801–02 (Wyo. 2019). There, the plaintiff sought to hold WyoDak liable even where it held no ownership of North Star. *Id.* Critically, lack of ownership did not end the inquiry. Instead, the court analyzed caselaw holding that ownership "is not a necessary prerequisite" where a nonowner exercises "a high degree of control." *Id.* (citation omitted). The court rejected liability only after finding no "ownership interest ***or*** control." *Id*. (emphasis added). Thus, consistent with the Wyoming Supreme Court holding in *PanAmerican* and its longtime adoption of the equitable ownership standard, *Mantle* recognizes that alter ego may rest on control, even without any formal ownership—the opposite of Defendants' contention that liability must follow the ownership chain link-by-link.

Defendants' rigid theory also conflicts with veil piercing's equitable nature. Alter ego "is not made to depend upon prior decisions involving factual situations which appear to be similar,"

---

[28] While *PanAmerican* was in the personal jurisdiction context, "Wyoming courts apply the same standards for piercing the corporate veil as are applied under that doctrine outside the personal jurisdiction context." *Medina v. Four Winds Int'l*, 111 F. Supp. 2d 1164, 1168 (D. Wyo. 2000).

but "var[ies] according to the circumstances of each case." *Greenspan*, 191 Cal. App. 4th at 512; *GreenHunter*, 337 P.3d at 463 (the test is "fact-driven and flexible," with "[n]o rigid formula").

### C. Defendants' Theory Would Defeat Veil Piercing Altogether

Defendants' rule would create an impenetrable shield to liability. Companies could separate conduct from assets simply by inserting an intermediary in, say, the British Virgin Islands where, according to Defendants' expert, alter ego does not exist and veil piercing is virtually impossible.

Courts confronting Defendants' theory have rejected it for this reason. *See Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 166 (Ky. 2012) ("To do otherwise would render the equitable piercing doctrine hopelessly inadequate, if not meaningless in some cases, based on the sheer number of business entities involved."); *Burnett v. Conseco Life Ins.*, 2020 WL 4788012, at *15 (S.D. Ind. 2020) ("it is not necessary … to pierce every layer of the corporate structure"); *In re Buckhead Am. Corp.*, 178 B.R. 956, 975 (D. Del. 1994) (otherwise, parties could "insulate from liability by using corporate intermediaries and other complex business structures").

## V. Denying Alter Ego Would Produce an Inequitable Result

Defendants give short shrift to the inequitable results of denying alter ego. *See* [290] at 18; [300] at 20. They gloss over that both Defendants would escape liability—the classic alter-ego inequity. *See Toho-Towa*, 217 Cal. App. 4th at 1110; *GreenHunter*, 337 P.3d at 470. That result is no more attributable to dbrand's pleading choices than in any alter-ego case. Defendants also barely address the remaining inequities: forcing dbrand and the Court to relitigate liability already established, while Defendants seek a wholesale reopening of the case to pursue abandoned claims.

## VI. Conclusion

Based on the undisputed facts and for the reasons set forth herein and in dbrand's opening brief, dbrand's Motion should be granted.

DATED: August 28, 2026.

Respectfully submitted,

By: /s/ *Collin D. Hansen*
Collin D. Hansen (ARDC#: 6335991)
Email: chansen@wnlaw.com
**WORKMAN NYDEGGER**
840 S Northwest Hwy, Suite 10
Barrington, IL 60010
(801) 533-9800 (Telephone)

Brian N. Platt (*pro hac vice*)
Email: bplatt@wnlaw.com
Chad E. Nydegger *(pro hac vice)*
Email: cnydegger@wnlaw.com
Kenneth J. Dyer *(pro hac vice)*
Email: kdyer@wnlaw.com
Ryan C. Morris *(pro hac vice)*
Email: rmorris@wnlaw.com
**WORKMAN NYDEGGER**
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
(801) 533-9800 (Telephone)

*Attorneys for Plaintiff dbrand inc.*